# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civ. A. No. 4:20-00005-ELR |
| v. | |
| MOHAWK INDUSTRIES, INC., and JEFFREY S. LORBERBAUM, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................... iii

I.   INTRODUCTION ......................................................................1

II.  FACTUAL BACKGROUND.........................................................5

III. ARGUMENT AND CITATION TO AUTHORITY ......................8

    A.   The CC Fails to Satisfy the Heightened Pleading Standards That Govern a Motion to Dismiss a Shareholder Securities Class Action. ....................................................................8

    B.   The CC Should be Dismissed Because It Fails to Plead an Actionable Misstatement or Omission. .............................10

        i.    The CC Does Not Adequately Allege Mohawk's Historical Statements Were False Or Misleading....................11

        ii.   The CC Fails to Allege Omissions Regarding the Purported "Saturday Scheme" With the Requisite Particularity. .............................................................14

        iii.  Corporate Puffery is Non-Actionable. ......................19

        iv.   Conclusory Allegations Warrant Dismissal.............................21

    C.   The CC Fails to Plead The Essential Element of Scienter and Should Be Dismissed. ..........................................................21

        i.    The Scienter Allegations, Considered Collectively, Fail to Support A Strong Inference of Scienter................................22

    D.   The CC Fails to Allege Loss Causation. ...........................................31

    E.   The Section 20(a) Claim Against Mr. Lorberbaum Fails. .................34

IV.    CONCLUSION..............................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Barr v. Matria Healthcare, Inc.*,
    324 F. Supp. 2d 1369 (N.D. Ga. 2004)....................................................24, 31, 33

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................................10

*Brophy v. Jiangbo Pharms., Inc.*,
    781 F.3d 1296 (11th Cir. 2015) ..........................................................9, 22, 25, 28

*Carter v. Furniture Brands Int'l, Inc.*,
    No. 4:13CV1600 HEA, 2015 U.S. Dist. LEXIS 9016 (E.D. Mo.
    Jan. 27, 2015)......................................................................................................15

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ....................................................................11, 19

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ..............................................................................19

*City of Pontiac Gen. Emps. Ret. Sys. v Schweitzer-Mauduit Int'l, Inc.*,
    806 F Supp. 2d 1267 (N.D. Ga. 2011)................................................................16

*City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
    865 F. Supp. 2d 811 (W.D. Mich. 2012) ...........................................................14

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012)..............................................................20

*Druskin v. Answerthink, Inc.*,
    299 F. Supp. 2d 1307 (S.D. Fla. 2004)...............................................................13

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................9

*Durgin v. Mon*,
    415 F. App'x 161 (11th Cir. 2011).....................................................................26

iii

*Durham v. Whitney Info. Network, Inc*.,
   No. 06-CV-00687, 2009 U.S. Dist. LEXIS 113757 (M.D. Fla. Nov.
   10, 2009) .................................................................................................32, 33

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) .........................................................13

*Garfield v. NDC Health Corp*.,
   466 F.3d 1255 (11th Cir. 2006) .................................................passim

*Gavish v. Revlon, Inc.*,
   No. 00 Civ. 7291 (SHS), 2004 U.S. Dist. LEXIS 19771 (S.D.N.Y.
   Sept. 29, 2004) .............................................................................4, 12

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   625 F. Supp. 2d 1267 (S.D. Fla. 2008) ..............................................29

*In re AFC Enters. Sec. Litig.*,
   348 F. Supp. 2d 1363 (N.D. Ga. 2004)...............................................28

*In re Coca-Cola Enterprises Inc. Securities Litigation*,
   510 F. Supp. 2d 1187 (N.D. Ga. 2007)..................................18, 19, 27

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005)..............................................26

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW, 2009 U.S. Dist. LEXIS 25007 (C.D. Cal.
   Mar. 18, 2009)....................................................................................24

*In re Flowers Foods, Inc. Sec. Litig*.,
   No. 7:16-CV-222 (WLS), 2018 U.S. Dist. LEXIS 48048 (M.D. Ga.
   Mar. 23, 2018).....................................................................................13

*In re Galectin Therapeutics, Inc.*,
   843 F.3d 1257 (11th Cir. 2016) ...........................................3, 9, 10, 34

*In re Hutchinson Tech., Inc. Sec. Litig*.,
   536 F.3d 952 (8th Cir. 2008) ..............................................................13

*In re Intel Corp. Sec. Litig.*,
  No. 18-cv-00507-YGR, 2019 U.S. Dist. LEXIS 54615 (N.D. Cal.
  Mar. 29, 2019) ............................................................................................ 20

*In re KLX, Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017) ................................................. 12, 26, 28

*In re NDCHealth Corp. Securities Litigation*,
  No. 1:04-cv-0970-WSD, 2005 U.S. Dist. LEXIS 43860 (N.D. Ga.
  July 27, 2005) ...................................................................................... 17, 18, 21

*In re Peritus Software Servs., Inc.*,
  52 F. Supp. 2d 211 (D. Mass. 1999) ................................................................. 20

*In re S1 Corp. Sec. Litig.*,
  173 F. Supp. 2d 1334 (N.D. Ga. 2001) ............................................................. 10

*In re Spectrum Brands, Inc. Sec. Litig.*,
  461 F. Supp. 2d 1297 (N.D. Ga. 2006) .................................................... passim

*In re TransDigm Grp., Inc. Sec. Litig.*,
  440 F. Supp. 3d 740 (N.D. Ohio 2020) ............................................................. 20

*In re Watchguard Sec. Litig.*,
  No. C05-678JLR, 2006 U.S. Dist. LEXIS 27217 (W.D. Wash. Apr.
  21, 2006) ............................................................................................................. 4

*In re Witness Sys.*,
  No. 1:06-CV-1894, 2008 U.S. Dist. LEXIS 109174 (N.D. Ga. Mar.
  31, 2008) ........................................................................................................... 31

*Ind. State Dist. Council of Laborers & Hod Carriers Pension &
  Welfare Fund v. Omnicare, Inc.*,
  583 F.3d 945 (6th Cir. 2009) ........................................................................... 13

*Jones v. Perez*,
  550 F. App'x 24 (2d Cir. 2013) ........................................................................ 24

*Kadel v. Flood*,
  427 F. App'x 778 (11th Cir. 2011) ..................................................................... 3

*Kinnett v. Strayer Educ., Inc.*,
    501 F. App'x 890 (11th Cir. 2012) .......................................................33

*McDonald v. Kinder-Morgan, Inc.*,
    287 F.3d 992 (10th Cir. 2002) ............................................................13

*Metro. Transp. Auth. Defined Ben. Pension Plan Master Tr. v.*
    *Welbilt, Inc.*,
    No. 8:18-cv-3007-T-30AEP, 2020 U.S. Dist. LEXIS 33664 (M.D.
    Fla. Feb. 6, 2020) ................................................................25, 26, 28

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................30

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .......................................................2, 32

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ..................................................passim

*Mogensen v. Body Cent. Corp.*,
    15 F. Supp. 3d 1191 (M.D. Fla. 2014)...........................................19, 27

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ...........................................................8

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) ..............................................................16

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977)...........................................................................24

*Sapssov v. Health Mgmt. Assocs.*,
    608 F. App'x 855 (11th Cir. 2015) ....................................................31

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................5, 30

*Unschuld v. Tri-S Sec. Corp.*,
    No. 1:06-CV-02931-JEC, 2007 U.S. Dist. LEXIS 68513 (N.D. Ga.
    Sept. 14, 2007) ....................................................................................3

*Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*,
    No. 1:08-CV-2270-TWT, 2009 U.S. Dist. LEXIS 112839 (N.D.
    Ga. Dec. 3, 2009) ................................................................................26

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................9

17 C.F.R. § 240.10b-5 .................................................................9, 10, 22

**STATUTES**

15 U.S.C. § 78t(a) ...................................................................5, 9, 22, 34

15 U.S.C. § 78u-4(b) ......................................................................passim

## CITATION CONVENTIONS

"CC": Plaintiff's Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 37)

"Class Period": the putative class period, April 28, 2017 through July 25, 2019

"Decl.": Declaration of Robert R. Long filed concurrently herewith

"Defendants": Defendant Mohawk Industries, Inc. and Defendant Jeffrey S. Lorberbaum

"Exchange Act": The Securities Exchange Act of 1934

"Ex.": Exhibit to the Decl.

"FE": former employee confidential witness

"FNA": Mohawk's Flooring North America division

"GAAP": Generally Accepted Accounting Principles

"IVC": IVC Group

"LVT": luxury vinyl tile

"Mohawk" or the "Company": Defendant Mohawk Industries, Inc.

"Mr. Carson": Brian Carson, former Mohawk President of Flooring North America

"Mr. Lorberbaum": Defendant Jeffrey S. Lorberbaum

"Plaintiff": Plaintiff Public Employees' Retirement System of Mississippi

"PSLRA": Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, *et seq.*

"SEC": United States Securities and Exchange Commission

Defendants submit this memorandum of law in support of their Motion to Dismiss Plaintiff's CC (cited herein as "¶ _").

## I.   INTRODUCTION

The CC has not and cannot state a claim for securities fraud.  Despite all of the ink spilled penning the CC—416 paragraphs across nearly 200 pages—the CC offers nothing more than half-baked conspiracy theories and innuendo.  Cobbling together vague allegations by unnamed former Mohawk employees and concluding there must have been securities fraud is just not enough.  A close look reveals gaps in logic and holes in the narrative that compel dismissal of this lawsuit.

The CC's basic premise is that Mohawk, the largest flooring company in the world, engaged in a secret accounting fraud scheme masterminded by the president of one (of three) of its business segments in order to inflate the Company's stock by: (1) improperly recognizing some unstated amount of revenue by feigning deliveries and forcing customers to accept products they did not want or order; (2) inexplicably producing more than it could sell of just two products out of more than fifteen total Company product categories in order to inflate its margins; and (3) failing to disclose that its new domestically-manufactured LVT, which represented just a tiny portion of Mohawk's overall revenue, was not performing perfectly from the start.

1

In support of this theory, the CC relies on purported statements from 14 unnamed FEs in a company with more than 41,000 employees.  Not one of those employees was a corporate-level executive, and, even though the CC's theory is based on allegedly fraudulent accounting, none had any visibility into Mohawk's corporate accounting function.  This explains all the CC's gaps and holes.

Indeed, far more important than what the CC alleges is what the CC does not allege. The CC does not allege that the Company's financials reported during the Class Period were inaccurate or require restatement.  It does not allege the amount of the supposed misstated revenues and inflated margins.  It does not allege that any of the FEs were knowledgeable about the Company's accounting or corporate finances.  It does not allege that Mr. Lorberbaum had any plausible motive to engage in the alleged schemes.  And, finally, it does not allege how the purported fraud-induced inflation could have been subsequently removed from the Company's stock price when the purported schemes were never "revealed" to the public.

The Eleventh Circuit is clear: the federal securities laws should not be treated as "a system of investor insurance that reimburses investors for any decline in the value of their investments."[1]  Indeed, the heightened pleading requirements of the

---

[1] *Meyer v. Greene,* 710 F.3d 1189, 1196 (11th Cir. 2013) (internal quotations omitted).

2

PSLRA, which govern this case, were adopted by Congress in order to "deter or at least quickly dispose of" lawsuits like this one "whose nuisance value outweigh[ ] their merits."[2]   Accordingly, the Eleventh Circuit routinely affirms this Court's decisions dismissing shareholder securities class actions at this stage for failure to meet the stringent requirements of the PSLRA.[3]   The present action should likewise be dismissed for the reasons described below.

First, the CC fails to allege an actionable misstatement or omission under Section 10(b) of the Exchange Act. The CC asserts that Mohawk's operational results during the Class Period were rendered misleading because the Company purportedly failed to disclose alleged "schemes" underlying those results.   Yet Mohawk never restated its Class Period financials and the CC fails to specify what effect the purported fraudulent practices had on those reported financial results.   The allegations about the so-called "Saturday Scheme" are likewise devoid of the requisite detail.   To the contrary, such end-of-quarter or year-end pushes are

---

[2] *Unschuld v. Tri-S Sec. Corp.,* No. 1:06-CV-02931-JEC, 2007 U.S. Dist. LEXIS 68513, at *7-8 (N.D. Ga. Sept. 14, 2007).

[3] *See, e.g.*, *In re Galectin Therapeutics, Inc.*, 843 F.3d 1257, 1269 (11th Cir. 2016); *Kadel v. Flood*, 427 F. App'x 778, 780 (11th Cir. 2011); *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1236-37 (11th Cir. 2008); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

"common practice."[4]   Moreover, the alleged affirmative misstatements regarding Mohawk's LVT are immaterial corporate puffery, at worst, and immune from liability.

Second, even if the CC identified an actionable misstatement or omission—which it does not—the Section 10(b) claims fail because the CC lacks particularized facts supporting a strong inference of scienter.  The CC relies upon "should have known" allegations based on the purported scope of the fraud, Mr. Lorberbaum's position at the Company, his supposed access to information, and allegations by unnamed FEs, none of whom were involved in the Company-wide accounting.  Such allegations do not meet the PSLRA requirements.

Third, the CC does not plead facts supporting the independent element of loss causation.  None of the purported corrective disclosures identified the schemes described or even gestured to the alleged fraud, rather, they were the routine announcements of Mohawk's quarterly earnings.  The CC makes no attempt to disaggregate the stock price decline attributable to these announcements of

---

[4] *Gavish v. Revlon, Inc.,* No. 00 Civ. 7291 (SHS), 2004 U.S. Dist. LEXIS 19771, at *45 (S.D.N.Y. Sept. 29, 2004); *see also In re Watchguard Sec. Litig.*, No. C05-678JLR, 2006 U.S. Dist. LEXIS 27217, at *24-25 (W.D. Wash. Apr. 21, 2006) (confirming there is "nothing wrong" with companies taking steps to "encourage end-of-quarter sales").

disappointing financial results from the decline it alleges resulted from the purported fraud.  Accordingly, the CC fails to allege loss causation.

Finally, the Section 20(a) claim for control-person liability fails because no primary predicate violation of the securities laws is alleged.

For these reasons, the CC should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Mohawk is the world's largest flooring company.[5]  It manufactures and distributes a wide range of products including carpet, rugs, ceramic tile, laminate, wood, stone, LVT, and sheet vinyl flooring.  *Id*. at 3.  Mohawk sells its products to distributors, builders, and retailers worldwide, including some of the most recognizable names in home improvement.  ¶ 46.  Mohawk exports products to more than 170 countries and maintains operations all over the world.  Decl. Ex. A at 4.

Mr. Lorberbaum has helmed the Company since he became the Chief Executive Officer in 2001, and has served as Chairman of the Mohawk Board of Directors since 2004.  ¶ 39.  The Company is divided into three distinct business segments, each encompassing its own unique brands and products.  Decl. Ex. A at

---

[5] *See* Mohawk Form 10-K, dated Feb. 28, 2020, at 3, attached as Ex. A to the Decl. filed concurrently herewith.  On a motion to dismiss, the Court may consider the full text of documents incorporated into the CC by reference and matters of which the Court may take judicial notice, such as public filings and other public statements. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

3.   The Global Ceramic segment is the largest manufacturer, distributor, and marketer of ceramic tile and natural stone in the world.  *Id*. at 9.  The Flooring Rest of the World segment manufactures, sources, and distributes a range of flooring products, roofing panels, and insulation boards for Mohawk's customers outside of North America.  *Id*. at 26.  FNA, the only business segment implicated in the CC, was responsible for just over one-third of Mohawk's net sales in 2019.  *Id*. at 3. Although the CC's allegations relate only to the Company's carpet and LVT products, Mohawk's FNA business spans numerous other robust product lines including carpet tile, rugs, mats, carpet pad, laminate, fiberboard, wood flooring, and sheet vinyl.  *Id*.

Beginning in 2014, the global flooring market shifted dramatically in response to an unprecedented increase in demand for LVT worldwide.  ¶¶ 55-57.  LVT's overnight success is attributable to the fact that LVT provides the look of traditional wood or stone flooring at a lower cost.  ¶ 8.  The impact of the introduction of LVT on the flooring market was profound.  From 2014 to 2016 alone, LVT sales volume

6

increased nearly 50%.  ¶ 58.  The LVT boom reduced demand for non-LVT flooring products and negatively affected those categories.[6]

To capitalize on the growing demand for LVT, Mohawk purchased IVC in 2015.  ¶ 62.  IVC, a leading LVT manufacturer, maintained an established LVT plant in Belgium and was in the process of constructing a domestic LVT plant in Dalton, Georgia.[7]  This acquisition positioned Mohawk as a major participant in the fast growing LVT category and allowed it to manufacture LVT domestically, capitalizing on IVC's expertise.  Decl. Ex. C at 1.  The acquisition also differentiated Mohawk from its competitors who lacked domestic LVT manufacturing and had to rely solely on imported product.   ¶¶ 10, 61. In the years following the IVC acquisition, Mohawk continued to improve its domestic LVT manufacturing capabilities.[8]  In 2019, the Company's LVT production lines operated at a speed on par with IVC's more established Belgian operations.  Decl. Ex. D.   Presently,

---

[6] Letter to Shareholders, Mohawk 2018 Annual Report, http://www.corporatereport.com/mohawk/2018/ar/Mohawk_2018_Annual_Report. pdf. (Decl. Ex. B).

[7] Mohawk Press Release, Mohawk Industries Inc. Announces Purchase of IVC Group dated Jan. 13, 2015. (Decl. Ex. C).

[8] Letter to Shareholders, Mohawk 2019 Annual Report, https://ir.mohawkind.com/static-files/250e3467-50b7-4c7c-8397-67d515deb533. (Decl. Ex. D).

Mohawk is one of the largest manufacturers and distributors of LVT in the United States.  Decl. Ex. A at 9.

Throughout the Class Period, the Company kept investors informed regarding management's expectations, the headwinds the Company faced, and its performance.  For instance, Mohawk timely disclosed its financial results when the second and third quarters of 2018 fell short of the Company's forecasts.  ¶¶ 238-39. Mohawk's stock price declined following each of these quarterly announcements. ¶¶ 242, 249.  In the second quarter of 2019, Mohawk likewise disclosed challenges facing the Company, and announced lower quarterly sales in its FNA segment. ¶ 253.  Again, on the news, Mohawk's stock price decreased.  ¶ 254.

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A.   <u>The CC Fails to Satisfy the Heightened Pleading Standards That Govern a Motion to Dismiss a Shareholder Securities Class Action.</u>

A 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted. To survive this challenge, the CC "must not simply make bare assertions of legal conclusions."  *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1305-06 (N.D. Ga. 2006).  While the Court must accept as true well-pleaded facts alleged in the CC, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

8

In order to state a claim under Section 10(b) and corresponding Rule 10b-5, 17 C.F.R. § 240.10b-5, the CC must sufficiently allege six distinct elements: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro*, 544 F.3d at 1236-37 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  The failure to plead even one of these elements properly mandates dismissal.  *See, e.g.*, *Brophy v. Jiangbo Pharms., Inc*., 781 F.3d 1296, 1307-08 (11th Cir. 2015) (holding where scienter was inadequately alleged, the court "need not address the other elements of a Section 10(b) violation or the corollary Section 20(a) claim").

Moreover, the CC must satisfy both the special fraud pleading requirements of Fed. R. Civ. P. 9(b) and the heightened pleading standards of the PSLRA. *Galectin Therapeutics,* 843 F.3d at 1269.  This requires "more than the alleging of a reasonable hypothesis of fraud"—it "requires specific facts to show a fraud occurred through particular statements or omissions made with the intent to mislead." *Spectrum Brands*, 461 F. Supp. 2d at 1306 (citing 15 U.S.C. § 78u-4(b)).  Where these exacting standards are not met, "the Court *must* dismiss the complaint." *Id.*

(emphasis added); *see also Galectin Therapeutics,* 843 F.3d at 1270 ("If these PSLRA pleading requirements are not satisfied, the court 'shall' dismiss the complaint.").

Here, the CC should be dismissed with prejudice because it fails to plead an actionable misstatement or omission, fails to plead scienter, and fails to plead loss causation.

## B. **The CC Should be Dismissed Because It Fails to Plead an Actionable Misstatement or Omission.**

The threshold requirement to state a Section 10(b) claim is the identification of a materially false or misleading statement or omission.  15 U.S.C. § 78u-4(b)(1).  To comply with the PSLRA and avoid dismissal, a complaint must specify (1) "each statement alleged to have been misleading" and (2) "the reason or reasons why the statement is misleading," stating "with particularity all facts on which that belief is formed."  *Garfield*, 466 F.3d at 1262.  For omissions, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."  *Galectin Therapeutics*, 843 F.3d at 1274 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)).  Thus, for omissions, "the question is not simply whether the defendants omitted information potentially of interest to investors," rather, "[t]o be actionable, the omission must render the statements actually made misleading."  *In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334, 1350 n.12 (N.D. Ga. 2001).

10

Here, the CC is premised on a sweeping omissions theory positing that nearly every earnings call, press release, quarterly and annual SEC filing for nine quarters was rendered false and misleading because Defendants purportedly concealed "the true reasons"—*i.e.* the various alleged schemes purportedly masterminded by Mr. Carson—"for Mohawk's reported record-breaking quarterly sales and margins, rising inventory, and slowing turnover." *See, e.g.*, ¶¶ 237, 259-61, 263.[9] What the CC does not explain, however, is *why* the omission of the alleged schemes made those statements misleading.   Because the CC fails to plead an actionable misstatement or omission, it must be dismissed regardless of the allegations concerning the remaining elements of a Section 10(b) claim. *Carvelli*, 934 F.3d at 1329 (affirming dismissal for failure to state a misstatement or omission).

> ### i.   The CC Does Not Adequately Allege Mohawk's Historical Statements Were False Or Misleading.

The CC alleges Mohawk's reported operational results, including quarterly sales, inventory figures, days-in-inventory metrics,[10] and quarterly margins, were

---

[9] The CC also alleges an affirmative misstatement from the Company's first quarter 2017 Earnings Call. ¶¶ 94-95, 262, 273. As explained in greater detail below, the challenged statement is immaterial puffery and thus inactionable. *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019).

[10] The fact that the Company disclosed that days-in-inventory were rising, when, as the CC concedes, "a high [days-in-inventory] may indicate slowing sales or poor

11

misleading because Mohawk failed to disclose the purported schemes underlying those results.[11]  But aside from vague and conclusory assertions that quarterly sales and margins were "artificially inflated" by some unspecified amount, the CC does not dispute that Mohawk's financial results were accurate and does not challenge the "legitimate factors" to which Mohawk attributed those results.

"Absent more particularized allegations of knowingly fraudulent conduct" the CC "plead[s] little more than neutral facts which happen to be consistent with plaintiffs' theory of how [Mohawk] fraudulently overstated its sales" yet "a general allegation that the practices at issue resulted in a false report of company sales is not a sufficiently particular claim of misrepresentation." *Gavish,* 2004 U.S. Dist. LEXIS 19771, at *45-46 (internal quotations omitted).  In fact, the CC even fails to allege the purportedly inflated revenues and margins were *material* in terms of the Company's overall reported financials.  This is insufficient to support a claim.  *Id.*

---

inventory management" and "a low [days-in-inventory calculation] is preferred" (¶ 97), actually cuts *against* an inference of fraud.  *See, e.g., In re KLX, Inc. Sec. Litig.,* 232 F. Supp. 3d 1269, 1282 (S.D. Fla. 2017) (holding that "disclosure of negative information. . . contradicts the [complaint's] theory").

[11] *See* ¶¶ 259-61, 263 (enumerating alleged omissions).

at *47-48 (explaining that a complaint must "demonstrate the materiality of the alleged overstatements in light of the defendant's total financial picture").

Indeed, Mohawk has not restated its Class Period financial results, nor does the CC allege such restatement is required.   The absence of any restatement undermines plaintiffs' claims of falsity.  *See Druskin v. Answerthink, Inc*., 299 F. Supp. 2d 1307, 1323 (S.D. Fla. 2004) (finding "significant lack of indicia of fraud" was based in part on lack of restatements); *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc*., 583 F.3d 945 (6th Cir. 2009) (noting alleged accounting violation was "substantially undercut . . . by the lack of any financial restatements"); *In re Hutchinson Tech., Inc. Sec. Litig*., 536 F.3d 952, 959-60 (8th Cir. 2008) (holding "allegations that earnings were overstated fail[ed] under the PSLRA" where defendant "never restated its financials.").

Moreover, accurately reported financial information is not rendered misleading by a failure to disclose conditions that ***might*** make future results less favorable.  *See In re Flowers Foods, Inc. Sec. Litig*., No. 7:16-CV-222 (WLS), 2018 U.S. Dist. LEXIS 48048, at *27 (M.D. Ga. Mar. 23, 2018) ("The Eleventh Circuit has already held that '[f]actual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b).'") (quoting *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1306 (11th Cir. 2011)); *see also McDonald*

13

*v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) ("It is well-established that the accurate reporting of historic successes does not give rise to a duty to further disclose contingencies that might alter the revenue picture in the future."). The CC does not specifically allege that the Company's failure to disclose the purported schemes rendered Mohawk's financial results inaccurate, and, accordingly, fails to allege Mohawk had a duty to make further affirmative disclosures about those alleged practices. *City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 823-24 (W.D. Mich. 2012).

      ii.    **The CC Fails to Allege Omissions Regarding the Purported "Saturday Scheme" With the Requisite Particularity.**

Not only does the CC fail to adequately allege why the Company's reported financials were misleading as required under the PSLRA, the allegations regarding the so-called "Saturday Scheme"[12] in particular lack the necessary specificity to support a claim. The CC does nothing more than "present a number of generalized conclusory allegations, supplement them with a few averments of specific fact, and, from that mix, offer their conclusion that securities fraud occurred[,]" but this Court

---

[12] The CC alleges a "Saturday Scheme" whereby at the end of certain financial quarters, Mohawk employees were instructed to load Company trucks on Fridays and "pretend" to deliver goods on Saturdays to customers they knew were closed in order to inappropriately recognize revenue. *See* ¶¶ 2, 109-56. This terminology is used for clarity only; Defendants do not concede the existence of any such scheme.

14

has held that the PSLRA "requires more than a reasonable hypothesis drawn mostly from general observations." *Spectrum Brands,* 461 F. Supp. 2d at 1307.

The CC describes purportedly ill-advised Saturday deliveries and unwanted shipments of products at the end of certain fiscal quarters during the Class Period and summarily concludes such practices "contravened the Company's stated sales revenue-recognition policies, as well as GAAP."   ¶ 151.   There are two fatal deficiencies in the CC's Saturday Scheme allegations.

The first fatal deficiency is that the unnamed FEs upon whose testimony these allegations are based are not alleged to have participated in either Mohawk's accounting or preparation of its quarterly financial reports.  For example, FEs 3, 4, and 7, a manager of a single distribution center manager, a regional operations manager, and a distribution and plant manager, respectively, are not alleged to have been involved in revenue recognition for quarter-end sales, nor is a foundation for their knowledge of the same set forth in the CC.  This does not satisfy the PSLRA requirements. *See Carter v. Furniture Brands Int'l, Inc*., No. 4:13CV1600 HEA, 2015 U.S. Dist. LEXIS 9016, at *20-21 (E.D. Mo. Jan. 27, 2015) ("[W]ithout factual allegations building a foundation for how the [confidential employee witness] had knowledge as to when, how, and if revenue was recognized for the inventory loaded

15

on the trailers [at quarter-end], Plaintiffs' allegations to that effect fail to meet the [PSLRA's] heightened pleading standard.")

There are also no allegations explaining how FE5, a sales manager, would have any insight into Mohawk's accounting practices. Thus, the allegations based on FE5's observations should be disregarded. *See City of Pontiac Gen. Emps. Ret. Sys. v Schweitzer-Mauduit Int'l, Inc*., 806 F Supp. 2d 1267, 1296-97 (N.D. Ga. 2011) ("[R]eliance on confidential witnesses [in a securities case] is permissible only so long as the complaint unambiguously provides in a cognizable and detailed way the basis of the whistleblower's knowledge."). Further, FE6, a Logistics Business Analyst from "January 2019 until April 2020"[13] was present for only one quarter during the Class Period and therefore would have limited knowledge of Mohawk's quarter-end practices. In any event, the allegations attributed to FE6 are improperly conclusory. *See Rahman v. Kid Brands, Inc*., 736 F.3d 237, 245 (3d Cir. 2013) (discrediting allegations based on a confidential witness who spent five years reviewing company internal financial information but who "offer[ed] little more than generalized allegations with few specifics and even less concrete support").

---

[13] ¶ 121.

The second fatal deficiency of the Saturday Scheme allegations is the CC makes no attempt to **quantify** the purportedly improperly recognized revenue from these transactions.  Instead, the CC relies on the guesswork of non-executive-level former employees that "the amount of product the Company pretended to deliver on the last Saturday of each quarter" was approximately "four to five million pounds of product."  ¶ 133.

The CC does not allege (i) the estimated value of those products, (ii) the revenue recognized on those product sales, or (iii) the resulting impact on Mohawk's overall reported financials.  This is not enough.  *See, e.g., Spectrum Brands,* 461 F. Supp. 2d at 1310-11 (dismissing complaint without "facts sufficient to show whether the alleged channel-stuffing practices were widespread or anecdotal, whether they involved hundreds rather than millions of dollars worth of product").

For instance, in *In re NDCHealth Corp. Securities Litigation*,[14] this Court considered analogous allegations regarding improper revenue recognition practices that "purportedly inflated the Company's earnings and caused [the Company's] financial reporting throughout the Class Period to be materially false and misleading."  Judge Duffey explained that, as here, "[t]he absence of allegations

---

[14] No. 1:04-cv-0970-WSD, 2005 U.S. Dist. LEXIS 43860, at *44 (N.D. Ga. July 27, 2005).

17

about these transactions [was] striking" and found plaintiff had "not satisfied its obligation to plead a detailed factual basis for its allegations of fraud." *Id*. Judge Duffey further explained:

> [H]ow often these transactions occurred or the economic impact of them does not provide any basis to show whether the practices were anecdotal or widespread, involved hundreds or millions of dollars, or involved small or large groups of employees. Plaintiff necessarily has to rely on speculative conclusions, which are inadequate to meet the fundamental pleading requirement in this case.

*Id*.

Likewise, in *In re Coca-Cola Enterprises Inc. Securities Litigation*[15] Judge Thrash dismissed similar allegations of improper revenue recognition for failing to meet the particularity requirements of the PSLRA.   Judge Thrash explained a complaint "must state sufficient facts to give the Court confidence that the plaintiff can relate ***specific transactions*** to ***specific misstatements in sales projections or financial statements***" which requires plaintiff to "allege facts that show that ***the amount of sales or revenue improperly recognized is material*** in relation to the size of the company's operations." *Id.* at 1197-98 (dismissing complaint based on former employees' observations where plaintiff failed to "allege the amount of revenue that

---

[15] 510 F. Supp. 2d 1187, 1196 (N.D. Ga. 2007).

was improperly recognized as a result of these transactions" and the "the date of any specific transaction.") (emphasis added).

Just like in this Court's prior decisions, in the present case, the "crucial element missing" from the Saturday Scheme allegations "is any indication of the amount of revenue that was improperly recognized." *Id.* Accordingly, the allegations regarding the Saturday Scheme fail.

### iii.    Corporate Puffery is Non-Actionable.

Not only are the omissions set forth in the CC unavailing, but the purported affirmative misstatement also misses the mark. *See* ¶¶ 94-95, 262, 273 (alleging statement "[w]ith their superior design and performance, our flexible, rigid and commercial LVT collections are being well accepted across all channels" was an actionable misstatement). This contested statement is exactly the sort of "generalized, vague, nonquantifiable statements of corporate optimism" that the Eleventh Circuit has previously found inactionable. *Carvelli*, 934 F.3d at 1318; *see also Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1211 (M.D. Fla. 2014) (explaining "courts both within and outside of this circuit have agreed that such statements are immaterial as a matter of law and therefore inactionable."). Numerous courts have held nearly identical statements were immaterial corporate puffery. *See, e.g., City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d

651, 670-71 (6th Cir. 2005) ("[S]tatements describing a product in terms of 'quality' or 'best' . . . are too squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision."); *In re Peritus Software Servs., Inc.*, 52 F. Supp. 2d 211, 220 (D. Mass. 1999) (statement that company's product was enjoying "unprecedented market demand" was non-actionable puffery); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc*., 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (dismissing immaterial statements about company's "strong demand metrics"); *In re Intel Corp. Sec. Litig*., No. 18-cv-00507-YGR, 2019 U.S. Dist. LEXIS 54615, at *33 (N.D. Cal. Mar. 29, 2019) (statements about "outstanding performance" of product were vague and immaterial as a matter of law); *In re TransDigm Grp., Inc. Sec. Litig*., 440 F. Supp. 3d 740, 763 (N.D. Ohio 2020) (statements regarding the "'strength' and 'quality' of [the company's] products" were immaterial puffery).

Moreover, the CC offers no corresponding explanation *why* this specific statement was false at the time it was made beyond repeating the same laundry list of allegations about the Company's LVT based on anecdotal observations of former employee confidential witnesses. This fails to pass muster under the PSLRA.

20

### iv.   Conclusory Allegations Warrant Dismissal.

The CC additionally takes issue with the statement from the third quarter 2017 earnings call that Mohawk was "selling all of [LVT] we could have" [sic].  ¶¶ 260, 297-98.  But the allegedly omitted information— (i) a glut of "scrap LVT . . . marked not to be sold," (ii) the characterization of Mohawk's U.S. LVT as "unsalable," and (iii) high rates of returns of LVT product—do not contradict this statement.  Even accepting as true the CC's allegations that much of Mohawk's U.S.-manufactured LVT was "unsalable" and marked "not to be sold," the Company's statement that Mohawk was selling all of the LVT it "could have"—*i.e.* the portion of LVT that was "salable"—would not be false.  This statement is therefore not actionable. *NDCHealth Corp*., 2005 U.S. Dist. LEXIS 43860, at *39 ("If a complaint fails to plead facts that, if true, would constitute a misrepresentation, and does nothing more than offer the legal conclusion that a representation was somehow misleading, dismissal of plaintiffs' claims is appropriate.") (internal citation omitted).

### C. <u>The CC Fails to Plead The Essential Element of Scienter and Should Be Dismissed.</u>

Because the CC fails to allege an actionable misstatement or omission, the analysis is complete and the CC should be dismissed.  Nevertheless, the CC warrants dismissal for the separate and independent reason that the scienter allegations fall far short of the PSLRA's heightened pleading requirements.

21

The PSLRA requires that "the complaint shall, with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2). Thus, the CC cannot "plead the requisite scienter element generally[,]" rather, "[i]n this Circuit, [Section] 10(b) and Rule 10b-5 require a showing of either an 'intent to deceive, manipulate, or defraud', or 'severe recklessness.'"  *Brophy*, 781 F.3d at 1302.  Moreover, the Eleventh Circuit has recognized that, as is the case here, "scienter is diluted to the extent it is drawn from multiple predicate inferences that are each based on the same allegations." *Id.* at 1304; *see also Garfield*, 466 F.3d at 1265.  Where the CC fails to adequately allege a strong inference of scienter, the Court "need not address the other elements of a Section 10(b) violation or the corollary Section 20(a) claim." *Brophy*, 781 F.3d at 1307-08.

### i.    The Scienter Allegations, Considered Collectively, Fail to Support A Strong Inference of Scienter.

The CC takes a kitchen-sink approach to scienter, throwing all manner of allegations at the wall hoping some will stick. Considering these allegations holistically, as the law requires, they do not add up to a strong inference of scienter. The sum of many zeroes is still zero.

***Anecdotal Allegations By Confidential Former Employee Witnesses Do Not Support Scienter***.  As previously described, the fraudulent schemes alleged in the

22

CC hinge on purported statements by 14 unnamed FEs, none of whom were corporate-level executives or had any involvement in either the Company's accounting or the preparation of its public filings.[16]   Accordingly, at best, their allegations about the Company's accounting practices would require "speculation and conjecture, precisely that which the PSLRA seeks to avoid." *Spectrum Brands*, 461 F. Supp. 2d at 1310-12.

Moreover, the allegations by the FEs about (i) the purpose of the alleged Saturday quarter-end pushes and corresponding effect on revenue, (ii) the ramifications of the alleged quality issues with the U.S. LVT, and (iii) the perceived overproduction of certain products on the Company's financials are impermissibly

---

[16] The only FE alleged to have any accounting role is FE2, who is relegated to a single paragraph regarding Mr. Carson's Sarbanes-Oxley Act of 2002 ("SOX") certifications.  ¶ 45.  Notably, no other accounting-related allegations are attributed to him.  Considering the vast fraudulent accounting schemes described in the CC, one would expect the sole FE purportedly knowledgeable of Mohawk's accounting would be the source of more of the substantive allegations.  In fact, none of the other FEs are plausibly alleged to have insight into the Company's accounting practices given their lower-level and operational positions and lack of involvement in the preparation of the Company's public statements.  The knowledge of FEs 1-7 is addressed in greater detail herein.  *See supra* pp. 15, 16, and *infra* pp. 29-31.  FEs 8-14 are alleged to have held non-senior positions in distribution operations, claims and customer care, product development, sales, and at the warehouse level. ¶¶ 138, 143, 169, 172, 202, 207, and 209.  Any assertion that they can speak with authority about Mohawk's accounting practices and senior management's knowledge defies common sense.

conclusory.  *See, e.g., In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 U.S. Dist. LEXIS 25007, at *37-38 (C.D. Cal. Mar. 18, 2009) (statements by 13 confidential witnesses held insufficient to establish scienter where they were "vague and conclusory" and "based on hearsay, rumor or speculation"); *Jones v. Perez*, 550 F. App'x 24, 28 (2d Cir. 2013) (confidential witness' assertions about Company's financial state found insufficient "because none of the confidential witnesses assert[ed] direct knowledge that this view was held by defendants").  At most, the FE allegations support a corporate mismanagement theory,[17] which cannot be the basis for a securities claim.  *Barr v. Matria Healthcare, Inc*., 324 F. Supp. 2d 1369, 1383-84 (N.D. Ga. 2004) ("The securities laws regulate disclosure of information, not the management or mismanagement of a company.") (citing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977)).

**_The Alleged Magnitude of the Purported Fraud Does Not Support A Strong Inference of Scienter._**  The CC further alleges that the "sheer breadth, magnitude, number of people involved, and scope of the [Saturday Scheme] provides . . . support from which to infer Defendants' scienter" and the "size and scope of Mohawk's 'scrap' LVT buildup supports a strong inference of scienter."  ¶¶ 353, 363-65. These

---

[17] Defendants do not concede any corporate mismanagement occurred.

allegations fail because the CC is silent as to the financial impact of the purported schemes.[18]  As the Circuit Court explained, "[w]ithout more specifics, the investors cannot persuasively allude to the magnitude of the fraud as a basis for a strong inference" of fraud.  *Brophy*, 781 F.3d at 1304-05 (claim "fraud was too large for [the CFO defendant] not to have noticed [was] unpersuasive"); *see also Mizzaro*, 544 F.3d at 1251 (declining to "infer[ ] from the dollar amount [of the fraud] the knowledge of senior management").

*Mr. Carson's Alleged Scienter Cannot Be Imputed to Mr. Lorberbaum, Nor Does Mr. Carson's Separation Support Scienter.*  The CC must allege facts supporting a strong inference of scienter "*for each defendant* with respect to *each violation*." *Id.* at 1238 (emphasis added).  Accordingly, scienter allegations regarding Mr. Carson[19]—who is not named as a defendant in the present action— have no bearing on Mr. Lorberbaum's state of mind.  Moreover, the CC asserts that Mr. Carson's separation from Mohawk "strengthens the scienter inference," *see* ¶

---

[18] S*ee* above Section III(B).

[19] *See, e.g.* ¶¶ 45, 358-61, 366-68, 374, 378. For example, the CC alleges Mr. Carson certified the Company's financials in accordance with the SOX requirements.  ¶¶ 45, 358.  Not only do these allegations have nothing to do with Mr. Lorberbaum, they are insufficient to demonstrate scienter in any event.  *See Garfield*, 466 F.3d at 1267; *Metro. Transp. Auth. Defined Ben. Pension Plan Master Tr. v. Welbilt, Inc.,* No. 8:18-cv-3007-T-30AEP, 2020 U.S. Dist. LEXIS 33664, at *12-13 (M.D. Fla. Feb. 6, 2020).

356, but "notable departures are not in and of themselves evidence of scienter" given that most "stock losses are often accompanied by management departures." *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005).

*Vague "Role and Responsibility" Allegations Fail to Support Scienter.* The CC further alleges that Mr. Lorberbaum's role as Chief Executive Officer and Chairman of the Board and position of leadership within Mohawk support scienter. ¶ 376. These allegations are plainly insufficient. *See, e.g., Durgin v. Mon*, 415 F. App'x 161, 165 (11th Cir. 2011) (allegations about defendants' positions in the company did not support scienter); *Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*, No. 1:08-CV-2270-TWT, 2009 U.S. Dist. LEXIS 112839, at *22 (N.D. Ga. Dec. 3, 2009) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient" for scienter); *Welbilt*, 2020 U.S. Dist. LEXIS 33664, at *12-13 ("That a defendant held a senior officer position alone does not give rise to a strong inference of scienter"); *KLX, Inc.*, 232 F. Supp. 3d at 1281-82 (allegations defendants were "hands-on managers" with extensive experience failed to support a strong inference of scienter.").

***Alleged Access to Company Reports Is Insufficient to Establish Scienter.***
The CC asserts that Mr. Lorberbaum's "access to reports and data," including the internal "RoadNet" database, and attendance at meetings support a strong inference of scienter. *See* ¶¶ 366-68. But "[u]nder the [PSLRA], Plaintiff must allege specific facts demonstrating that on or about a certain date, Defendants were directly confronted with specific information that actually contradicted—or cast serious doubt upon—their public statements." *Mogensen*, 15 F. Supp. 3d at 1120-21. Here, the CC describes the content of reports Mr. Lorberbaum allegedly received but lacks specific allegations about how that content contradicted the reported financials or rendered such statements false or misleading. This is not enough. *See Coca-Cola Enters. Inc.,* 510 F. Supp. 2d at 1201 (rejecting similar "conclusory allegations that the Defendants had access to the 'true facts'" as probative of scienter); *see also Garfield*, 466 F.3d at 1264.

***The "Core Business" Allegations Fail.*** The CC alleges because LVT was an area of focus for the Company and FNA was "the Company's most important business segment," scienter is established. ¶ 371. Stated differently, the CC suggests that because FNA was significant to the Company's operations and its bottom line, it should be assumed Mr. Lorberbaum was so attuned to that business that he would have known the statements related to FNA were false. However,

27

within this Circuit, "such an inference is disfavored." *KLX, Inc.*, 232 F. Supp. 3d at 1282.

**The Lack of Allegations that Mr. Lorberbaum Had Any Plausible Personal Motive to Engage in the Purported Schemes Undermines Scienter.**  Notably, the CC does not allege Mr. Lorberbaum was the beneficiary of any financial windfall or otherwise personally benefited financially from the purported fraud beyond receiving his standard compensation.[20]  This undercuts any inference of scienter. *Brophy,* 781 F.3d at 1306 (no strong inference of scienter where there was "no allegation that [the CFO defendant] sold [company] stock during the class period or otherwise profited from the alleged fraud beyond receiving a salary"); *Mizzaro*, 544 F.3d at 1253 (same); *Welbilt*, 2020 U.S. Dist. LEXIS 33664, at *12-13 (same). Further, this Court has held "standard incentive compensation" is insufficient to demonstrate scienter.  *In re AFC Enters. Sec. Litig.,* 348 F. Supp. 2d 1363, 1374 (N.D. Ga. 2004) (absent allegations "showing that the Defendants' compensation

---

[20] Mr. Lorberbaum is alleged to have received "substantial performance-based compensation" in 2017, *see* ¶¶ 374-75, but the CC lacks allegations that this compensation arrangement deviated from either Mr. Lorberbaum's historical compensation or the standard compensation for similarly situated executives.  The CC is otherwise silent as to any financial incentive Mr. Lorberbaum had to temporarily inflate the Mohawk stock price to the ultimate detriment of the Company and his own sizeable investment in it.

28

deviates from the incentive packages normally afforded corporate officers, their allegations of incentive compensation do not support an inference of scienter").

***Allegations Regarding Mohawk's Pre-Class Period SEC Filings Add Nothing To The Scienter Analysis.*** The CC asserts the Company's amendment of its 2015 annual report—before the beginning of the Class Period—supports scienter. ¶ 379. It does not. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1290 (S.D. Fla. 2008) (rejecting similar attempt to "use circumstances . . . prior to the Class Period to argue that each of the [d]efendants engaged in a broad course of fraudulent conduct during the Class Period").

***Outlying Allegations About FE1's September 2018 Revelation of the Purported Schemes Are Not Enough to Establish Scienter***. The CC relies on allegations by a single unnamed source, FE1, about an "emotional September 2018 meeting" with Mr. Lorberbaum, to demonstrate scienter. ¶ 355. During this encounter, FE1 purportedly "told [Mr. ]Lorberbaum that [Mr. ]Carson was 'destroying your company and screwing with your finances.'" ¶ 219. These vague allegations do not support a strong inference of scienter.

First, these allegations from a confidential FE—standing alone—cannot meet the scienter burden in light of the overall weakness of the scienter allegations in the CC. The "directive that a complaint must be read in its entirety cuts both ways."

29

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1069 (9th Cir. 2008).  Thus, "a plaintiff cannot *avoid* dismissal by reliance on an isolated statement that stands in contrast to a host of other insufficient allegations."  *Id*. (emphasis in the original).  As the Ninth Circuit Court of Appeals in *Metzler* explained, "In light of the [Supreme] Court's guidance in *Tellabs* and PSLRA's heightened standards for plaintiffs' securities fraud cases generally," one such allegation is "not so indicative of fraudulent intent that it carries the weight of the entire 181-page complaint for purposes of establishing a 'strong inference of scienter.'"  The same is true here.  The allegations about the September 2018 meeting are insufficient to demonstrate a strong inference of scienter given that all the other scienter allegations fail for the reasons previously described.

Second, assuming the truth of these allegations would only support scienter *after* this September 2018 meeting when Mr. Lorberbaum was allegedly made aware of the purported improprieties and launched his own investigation.  The CC thus concedes that Mr. Lorberbaum lacked the requisite scienter with regard to any statement prior to September 2018, including the alleged statements from April 2017

30

until September 2018, and therefore those statements warrant dismissal. *See* ¶¶ 264-324 (contested statements prior to the alleged September 2018 meeting).[21]

None of the CC's scienter allegations, considered individually or together, support the strong inference of scienter required by the PSLRA. Accordingly, the CC warrants dismissal.

**D. <u>The CC Fails to Allege Loss Causation.</u>**

Even if the CC adequately alleged both a material misstatement or omission and scienter—which it does not—"dismissal is required because the [CC] fails to adequately plead loss causation." *In re Witness Sys*., No. 1:06-CV-1894, 2008 U.S. Dist. LEXIS 109174, at *32 (N.D. Ga. Mar. 31, 2008); *see also Sapssov v. Health Mgmt. Assocs.,* 608 F. App'x 855, 863 (11th Cir. 2015) (affirming dismissal of securities class action for failure to allege loss causation); *Barr*, 324 F. Supp. 2d at 1380 (holding where plaintiff "fail[ed] to plead loss causation, dismissal of his Exchange Act claims against the Defendants [was] warranted").

---

[21] Indeed, the CC alleges that Mr. Lorberbaum had to "look into" the accusations by FE1 and commence an investigation in order to substantiate the report from FE1, *see* ¶¶ 224, 356, which confirms he lacked knowledge of the alleged schemes before that alleged meeting. The CC goes so far as to quote Mr. Lorberbaum as saying he "d[idn't] know how [he] missed" the alleged fraudulent schemes. ¶ 356. Moreover, this allegation contradicts another of the CC's flawed theories of scienter, namely, that Mr. Lorberbaum "should have known" of the alleged fraud based on his role and responsibilities at Mohawk, which fails in any event as explained further above.

To establish that Plaintiff's investment losses were caused by purported misstatements, the CC must allege "not only that a fraudulent misrepresentation artificially inflated" Mohawk's stock price at the time of Plaintiff's purchases, "but also that the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price" at the time Plaintiff sold its Mohawk stock. *Greene*, 710 F.3d at 1196 (quotations and citation omitted). A complaint must be dismissed if the alleged corrective disclosures "do[ ] not identify, reveal, or correct any prior misstatement, omission or improper accounting practice" or, alternatively, "where the disclosure does not specifically relate to the issues involved in the alleged fraudulent scheme." *Durham v. Whitney Info. Network, Inc.*, No. 06-CV-00687, 2009 U.S. Dist. LEXIS 113757, at *57 (M.D. Fla. Nov. 10, 2009).

In the present case, the CC does not allege that the purported schemes were ever disclosed by the Company. Instead, the CC concedes the declines in Mohawk's stock price followed the announcement of financial results that fell short of guidance, rather than the disclosure of any restatement or revelation of Company-wide schemes. *See* ¶¶ 238-42 (alleging July 26, 2018 announcement disclosed "Disappointing Q2 2018 Earnings"), 245-49 (alleging October 26, 2018 announcement disclosed "Disappointing Q3 2018 Results"), 253-54 (alleging July

26, 2019 announcement disclosed "Disastrous Results for Q2 2019").   "[S]ince nothing in the[se] statements corrects any prior disclosures  . . . or reveals any omissions . . . that negatively affected the price of [the Company's] common stock," the CC "has failed to adequately allege loss causation." *Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890, 894 (11th Cir. 2012); *see also Barr*, 324 F. Supp. 2d at 1380 (holding where disclosure "did not discuss the subject matter of the alleged fraud, as a matter of law, the decline in the company's trading price . . . cannot be considered a reaction to the disclosure of the alleged fraud.") (internal quotations omitted).

In *Durham*, the Court addressed a similar situation where the allegedly corrective disclosures "d[id] not mention, much less relate, to any of plaintiff's theories of securities fraud." 2009 U.S. Dist. LEXIS 113757, at *68.  The Court concluded, "The disconnect between the text of the [alleged corrective disclosures], the theories of fraud, and the allegations of wrongdoing leads to the conclusion that the case is not about securities fraud.  Rather, it is about an attempt to find securities fraud after the Company's stock price fell . . ." *Id*. at *69.  The same is true of the instant case.  Here, as in *Durham*, such allegations "bring[ ] to mind the Latin phrase *post hoc ergo procter hoc*.  Simply because the stock dropped in price does not mean that the drop was the result of securities fraud." *Id*.  Because the CC fails to plead the essential element of loss causation, it should be dismissed in its entirety.

### E.  __The Section 20(a) Claim Against Mr. Lorberbaum Fails.__

In light of the CC's failure to adequately allege a primary predicate violation of Section 10(b), the claim for control-person liability under Section 20(a), 15 U.S.C. § 78t(a), must also be dismissed.  *See Galectin Therapeutics,* 843 F.3d at 1276 ("Control person liability is secondary only and cannot exist in the absence of a primary violation.") (quotation marks and citation omitted); *Mizzaro*, 544 F.3d at 1237 ("Because a primary violation of the securities laws is an essential element of a § 20(a) derivative claim, we have held that a plaintiff adequately pleads a § 20(a) claim only if the primary violation is adequately pleaded.").

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted and that the CC be dismissed with prejudice.

Respectfully submitted this 27th day of October, 2020.

**ALSTON & BIRD LLP**

*/s/ Robert R. Long*
John L. Latham
Georgia Bar No. 438675
Robert R. Long
Georgia Bar No. 141546
Elizabeth Gingold Clark
Georgia Bar No. 917979
Courtney E. Quirós
Georgia Bar No. 527069
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Emails: john.latham@alston.com
        robert.long@alston.com
        elizabeth.clark@alston.com
        courtney.quiros@alston.com

*Counsel for Mohawk Industries, Inc.*

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ William J. Holley*
William J. Holley, II
Georgia Bar No. 362310
Scott E. Zweigel
Georgia Bar No. 786616
303 Peachtree Street N.E.
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Emails: wholley@phrd.com
        szweigel@phrd.com

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC**

Richard D. Weinberg (*Appearing Pro Hac Vice*)
William C. Kinder (*Appearing Pro Hac Vice*)
565 Fifth Avenue
New York, New York 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
Email: rweinberg@maglaw.com
       wkinder@maglaw.com

*Counsel for Jeffrey S. Lorberbaum*

## **LOCAL RULE 7.1D CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1C.

*/s/ Robert R. Long*
Robert R. Long
Georgia Bar No. 141546

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of October, 2020, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record.

This 27th day of October, 2020.


*/s/ Robert R. Long*
Robert R. Long
Georgia Bar No. 141546