**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civ. A. No. 4:20-00005-ELR |
| v. | |
| MOHAWK INDUSTRIES, INC., and JEFFREY S. LORBERBAUM, | |
| Defendants. | |

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS
<u>OF THE FEDERAL SECURITIES LAWS</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT AND CITATION TO AUTHORITY ......................................3

    A.    The CC Fails to Plead an Actionable Misstatement or
          Omission............................................................................3

          1.    The CC's Saturday Scheme Allegations Were Not
               Pleaded with Particularity. ......................................4

          2.    The CC Fails to Adequately Allege that Mohawk's
               Historical Statements Were False or Misleading......................7

          3.    The CC's Allegations Concerning Statements About
               LVT Sales Are Not Actionable..................................8

    B.    The CC Fails to Plead Scienter. ...........................................9

          1.    Non-Defendant Former Employee Mr. Carson's Alleged
               Knowledge Cannot Be Imputed to Mohawk. ..........................10

          2.    The CC's Collective Allegations Fail to Support a Strong
               Inference of Scienter. .........................................12

          3.    The Failure to Plead Scienter Mandates Dismissal. ................15

    C.    The CC Fails to Plead Loss Causation......................................16

          1.    The CC's Purported Disclosures Do Not Relate to the
               Alleged Fraud..................................................17

          2.    The CC Does Not Allege Loss Causation Through
               Materialization of the Risk.....................................18

i

3.      The CC's Failure to Plead Loss Causation Mandates
        Dismissal....................................................................................20

III.    CONCLUSION.............................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aldridge v. A.T. Cross Corp.*,
 284 F.3d 72 (1st Cir. 2002).......................................................................2

*Barr v. Matria Healthcare, Inc.*,
 324 F. Supp. 2d 1369 (N.D. Ga. 2004).........................................17, 20

*Brophy v. Jiangbo Pharms., Inc.*,
 781 F.3d 1296 (11th Cir. 2015) ............................................................16

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
 394 F.3d 126 (3rd Cir. 2004) ..................................................................4

*Carter v. Furniture Brands Int'l, Inc.*,
 No. 4:13CV1600 HEA, 2015 U.S. Dist. LEXIS 9016 (E.D. Mo.
 Jan. 27, 2015)..........................................................................................5

*Carvelli v. Ocwen Fin. Corp.*,
 934 F.3d 1307 (11th Cir. 2019) .......................................................1, 3

*Carvelli v. Ocwen Fin. Corp.*,
 No. 9:17-cv-80500-RLR, 2018 U.S. Dist. LEXIS 73597 (S.D. Fla.
 Apr. 27, 2018) .........................................................................................9

*City of Pontiac Gen. Emps. Ret. Sys. v Schweitzer-Mauduit Int'l, Inc.*,
 806 F Supp. 2d 1267 (N.D. Ga. 2011)..................................................4

*Durham v. Whitney Info. Network, Inc.*,
 No. 06-CV-00687, 2009 U.S. Dist. LEXIS 113757 (M.D. Fla. Nov.
 10, 2009) ...............................................................................................17

*Gavish v. Revlon, Inc.*,
 No. 00 Civ. 7291 (SHS), 2004 U.S. Dist. LEXIS 19771 (S.D.N.Y.
 Sept. 29, 2004) ........................................................................................7

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ........................................................................18

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007) ..............................................................19

*In re Coca-Cola Enters. Inc. Sec. Litig.*,
  510 F. Supp. 2d 1187 (N.D. Ga. 2007)............................................................6, 9

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019)............................................................10

*In re Faro Techs. Sec. Litig.*,
  534 F. Supp. 2d 1248 (M.D. Fla. 2007)............................................................6

*In re Flowers Foods, Inc. Securities Litigation*,
  No. 7:16-CV-222 (WLS), 2018 U.S. Dist. LEXIS 48048 (M.D. Ga.
  Mar. 23, 2018)..............................................................................................13, 18

*In re Focus Enhancements, Inc. Sec. Litig.*,
  309 F. Supp. 2d 134 (D. Mass. 2001)................................................................2

*In re HD Supply Holdings, Inc. Sec. Litig.*,
  341 F. Supp. 3d 1342 (N.D. Ga. 2018)..........................................................8, 17

*In re Initial Pub. Offering Sec. Litig.*,
  399 F. Supp. 2d 261 (S.D.N.Y. 2005) ..............................................................19

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008)............................................................2

*In re NDCHealth Corp. Sec. Litig.*,
  No. 1:04-cv-0970-WSD, 2005 U.S. Dist. LEXIS 43860 (N.D. Ga.
  July 27, 2005)..................................................................................................3

*In re PainCare Holdings Sec. Litig.*,
  541 F. Supp. 2d 1283 (M.D. Fla. 2007)..........................................................14

*In re Spectrum Brands, Inc. Sec. Litig.*,
  461 F. Supp. 2d 1297 (N.D. Ga. 2006)..........................................................5, 6

iv

*In re STEC Inc. Sec. Litig.*,
　No. SACV 09-1304 JVS (MLGx), 2011 U.S. Dist. LEXIS 75093
　(C.D. Cal. June 17, 2011); ..................................................................2

*In re Witness Sys.*,
　No. 1:06-CV-1894, 2008 U.S. Dist. LEXIS 109174 (N.D. Ga. Mar.
　31, 2008) ...........................................................................................20

*Kinnett v. Strayer Educ., Inc.*,
　501 F. App'x 890 (11th Cir. 2012)....................................................18

*Ludlow v. BP, P.L.C.*,
　800 F.3d 674 (5th Cir. 2015) .............................................................18

*Meyer v. Greene*,
　710 F.3d 1189 (11th Cir. 2013) .........................................................16

*Mizzaro v. Home Depot, Inc.*,
　544 F.3d 1230 (11th Cir. 2008) ...................................................passim

*Mizzaro v. Home Depot, Inc.*,
　No. 1:06-CV-1151-ODE, 2007 U.S. Dist. LEXIS 59781 (N.D. Ga.
　July 18, 2007)....................................................................................16

*Mogensen v. Body Cent. Corp.*,
　15 F. Supp. 3d 1191 (M.D. Fla. 2014)................................................9

*Sapssov v. Health Mgmt. Assocs.*,
　608 F. App'x 855 (11th Cir. 2015)....................................................20

*Sapssov v. Health Mgmt. Assocs., Inc.*,
　22 F. Supp. 3d 1210 (M.D. Fla. 2014).........................................19, 20

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
　365 F.3d 353 (5th Cir. 2004) .............................................................10

## RULES

17 C.F.R. § 240.10b-5.........................................................................17

Fed. R. Civ. P. 9(b) ..............................................................................3

**STATUTES**

15 U.S.C. § 78j................................................................................16

15 U.S.C. § 78t-1 .............................................................................16

15 U.S.C. § 78u-4.......................................................................1, 2, 3

## CITATION CONVENTIONS

"CC": Plaintiff's Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 37)

"Class Period": the putative class period, April 28, 2017 through July 25, 2019

"Defendants": Defendant Mohawk Industries, Inc. and Defendant Jeffrey S. Lorberbaum

"FE": former employee confidential witness

"FNA": Mohawk's Flooring North America division

"GAAP": Generally Accepted Accounting Principles

"LVT": luxury vinyl tile

"Mohawk" or the "Company": Defendant Mohawk Industries, Inc.

"Mr. Carson": Brian Carson, former Mohawk President of Flooring North America

"Mr. Lorberbaum": Defendant Jeffrey S. Lorberbaum

"Plaintiff": Plaintiff Public Employees' Retirement System of Mississippi

"Opening Brief" or "OB":  Defendants' Opening Brief in Support of their Motion to Dismiss (ECF No. 54-1)

"Opposition" or "Opp.": Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 56)

"PSLRA": Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, *et seq.*

"SEC": United States Securities and Exchange Commission

Defendants respectfully submit this reply brief in further support of their Motion to Dismiss Plaintiff's CC (cited herein as "¶ _").

## I.   INTRODUCTION

Defendants' Opening Brief demonstrated that the CC fails to state a claim and should be dismissed with prejudice.  The Opposition suffers from the same fatal flaws as the CC—namely, a rote recitation of conclusory statements without the particularized allegations required to plead an actionable misstatement or omission under the PSLRA, along with an inability to show loss causation or scienter.

The Opposition seeks to characterize Defendants' points as mere factual disputes regarding the CC's allegations.  That is incorrect.  While Defendants do dispute the CC's allegations, that is not the point of Defendants' Motion to Dismiss. The point of Defendants' Motion is that the CC suffers from a terminal defect: it does not and cannot meet the "triple-layered pleading standard" applicable to this case. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317–18 (11th Cir. 2019).

First, the CC fails to plead an actionable misstatement or omission with particularity.  Specifically, as explained in Defendants' Opening Brief, the CC fails to plead the so-called "Saturday Scheme" allegations with the required level of specificity, relying on allegations from FEs without providing any basis for their supposed knowledge.   OB at 15-16.   Moreover, the alleged affirmative

1

misstatements regarding Mohawk's LVT are improperly pleaded.  OB at 19-21.  The Opposition does not meaningfully address these arguments, relying on non-binding authority from other jurisdictions that is inapplicable in certain instances and out-of-date in others.[1]

Second, the CC fails to allege a strong inference of scienter.  OB at 21-31.  The Opposition argues that the knowledge of Mr. Carson—who left the Company in the middle of the Class Period—should be imputed to Mohawk.  The Opposition fails, however, to link any actionable information purportedly furnished by Mr. Carson to Mohawk's alleged misstatements or omissions, thereby severing the link required to plead corporate scienter in this Circuit.  The Opposition also seeks to employ a "gestalt pleading" tactic, arguing that the sheer mass of the CC's conclusory scienter allegations should make up for the gaps and holes in their factual substance.  That fails the PSLRA requirements.

Third, the CC's loss causation allegations fall short.  The CC does not allege that the purported schemes were ever disclosed by the Company; as such, the CC

---

[1] *See, e.g., In re STEC Inc. Sec. Litig.*, No. SACV 09-1304 JVS (MLGx), 2011 U.S. Dist. LEXIS 75093 (C.D. Cal. June 17, 2011); *In re Focus Enhancements, Inc. Sec. Litig.*, 309 F. Supp. 2d 134 (D. Mass. 2001); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230 (N.D. Cal. 2008); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002).

lacks the requisite loss causation allegations.  OB at 31-33.  The Opposition argues that loss causation is properly pleaded because the alleged disclosures related to the same "subject matter" as the purported fraud, and because loss causation may be alleged through a materialization of the risk theory.  These arguments fail here.

For these reasons, and as explained further below, the CC should be dismissed with prejudice.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    The CC Fails to Plead an Actionable Misstatement or Omission.

To comply with Rule 9(b) in the securities fraud context, Plaintiff must "allege specifically (1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or in the case of omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud."  *Carvelli*, 934 F.3d at 1318.  In addition, the PSLRA requires Plaintiff to identify the "specific statements or omissions alleged to be misleading," and to "articulate the reasons why each statement or omission was misleading."  *In re NDCHealth Corp. Sec. Litig.*, No. 1:04-cv-0970-WSD, 2005 U.S. Dist. LEXIS 43860, at *36 (N.D. Ga. July 27, 2005).  The CC has failed to carry its burden in this regard, and the Opposition furnishes no credible arguments to the contrary.

3

### 1.    The CC's Saturday Scheme Allegations Were Not Pleaded with Particularity.

As Defendants' Opening Brief demonstrates, the CC's allegations concerning the "Saturday Scheme" suffer from fatal gaps.  OB at 14-19.  These allegations are premised on vague and speculative allegations by FEs, but the CC fails to "unambiguously provide[] in a cognizable and detailed way the basis of [their] knowledge."  C*ity of Pontiac Gen. Emps. Ret. Sys. v Schweitzer-Mauduit Int'l, Inc.*, 806 F Supp. 2d 1267, 1296-97 (N.D. Ga. 2011).

Instead of addressing this deficiency, the Opposition devotes several pages of argument to restating the FE allegations.  But restating the CC's description of the vague and speculative FE allegations cannot save the Saturday Scheme allegations.  The Opposition does not identify allegations sufficient to "determine whether the [confidential witness] has reliable first-hand knowledge or whether his statements are based on [] hearsay or gossip." *Id*.  The most obvious example is the CC's failure to explain how FEs without any connection to Mohawk's accounting department would have been aware of supposed ongoing GAAP violations.  OB at 15-16.  Without this information, the FE allegations concerning the Saturday Scheme are conclusory and must be disregarded. *See, e.g., Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 148 (3rd Cir. 2004) (affirming dismissal of claims where

4

allegations did not identify when, where, or how the confidential witness gained access to the purported information provided).

The Opposition argues that confidential sources need not be named.  Opp. at 21-22.  That is irrelevant—Defendants have not argued that the FEs must be identified by name.  Nor have Defendants asked the court to weigh the credibility of the confidential witness allegations, as the Opposition argues.  Opp. at 22.  Instead, Defendants showed how the FE allegations have critical holes in the requisite factual allegations regarding "how the [confidential witnesses] had knowledge as to when, how, and if revenue was recognized," and the CC's "allegations to that effect fail to meet the [PSLRA's] heightened pleading standard" as a result.  *Carter v. Furniture Brands Int'l, Inc.*, No. 4:13CV1600 HEA, 2015 U.S. Dist. LEXIS 9016, at *21 (E.D. Mo. Jan. 27, 2015).  OB at 15-16.

Even apart from the FE deficiencies, the Opening Brief makes clear that the Saturday Scheme allegations are insufficient because they do not quantify the financial impact of any alleged fraud.  OB at 17-19.  The Opposition overlooks the robust authority from this Circuit holding that allegations concerning improper revenue recognition must be pleaded with particularity.  This includes, at minimum, the requirement that the CC demonstrate some quantifiable estimate of the impact of the Saturday Scheme on Mohawk's overall financial picture.  *In re Spectrum*

*Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1310-11 (N.D. Ga. 2006).  Alleged channel-stuffing violations may only support a securities fraud claim if they show "whether the alleged channel-stuffing practices were widespread or anecdotal" and "whether they involved hundreds rather than millions of dollars' worth of product." *Id*.

        In fact, the Eleventh Circuit has held that a complaint must "show that the amount of sales or revenue improperly recognized is material in relation to the size of the company's operations." *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1196 (N.D. Ga. 2007).  The cases the Opposition cites in response to this argument are inapposite, as they stand for the proposition that an exact dollar-for-dollar quantification of the financial impact is not required.  *See, e.g., In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1260 (M.D. Fla. 2007) (explaining that "quantify[ing] the falsity *to the penny*" is not required) (emphasis added).  This is not in dispute.  Simply alleging that "four to five million pounds of product" (¶ 133) were impacted, however, without providing any corresponding estimate of the financial impact of the Saturday Scheme does not come close to the level of specificity required to show materiality.

### 2. The CC Fails to Adequately Allege that Mohawk's Historical Statements Were False or Misleading.

The Opposition asserts that despite the accuracy of Mohawk's reported financial results, the CC survives because it challenges the "reasons" for Mohawk's "record margins," along with the "reasons… offered to excuse Mohawk's increasing inventory and lengthening turnover . . . ." Opp. at 15-16. That is wrong. The CC still fails to allege that the Company's statements were material because it lacks allegations as to the amount of the supposed misstated revenues and inflated margins. *See Gavish v. Revlon, Inc.*, No. 00 Civ. 7291 (SHS), 2004 U.S. Dist. LEXIS 19771, at *45-46 (S.D.N.Y. Sept. 29, 2004) (dismissing channel-stuffing allegations for failing to aggregate amounts and financial impact). The Opposition quotes a single, general statement by an analyst as support for a finding of materiality, but that analyst statement concerns Mohawk's margin performance, which the Opposition claims in the same breath that it does not dispute. Opp. at 15.

The CC cannot have it both ways. If, as the Opposition concedes, the reported financials are undisputed, then the CC must set forth allegations showing the disputed statements were material. It has not, and, accordingly, the lack of allegations that Mohawk's historical statements were false or misleading warrant dismissal.

### 3.     The CC's Allegations Concerning Statements About LVT Sales Are Not Actionable.

For the reasons explained in Defendants' Opening Brief, the CC does not plead facts showing the statement that Mohawk was "selling all of the [LVT it] could have" (¶¶ 260, 297-98) was false or misleading.  The Opposition mischaracterizes Defendants' argument that this statement is true based on the fact that certain Mohawk LVT was "unsalable" or "not to be sold"—which the CC itself alleges— as a "caveat" that Defendants "wish was included."  Opp. at 11.  Instead, accepting the CC's allegations that much of Mohawk's U.S. manufactured LVT was "unsalable" and marked "not to be sold" as true, the Company's statement that Mohawk was selling all of the LVT it "could have" would not be false or misleading.  OB at 21.  This statement is not actionable as a result.

Moreover, the statement that "[w]ith their superior design and performance, our flexible, rigid and commercial LVT collections are being well accepted across all channels" (¶¶ 94, 262, 273) is puffery for the reasons explained in Defendants' Opening Brief.  The Opposition ignores authority describing comparable statements concerning inventory and demand as mere puffery.  OB at 19-20.

The Opposition's suggestion that puffery may only be identified by the trier of fact, *see* (Opp. at 13-14), ignores authority from this Circuit identifying and dismissing puffery on the pleadings.  *See, e.g., In re HD Supply Holdings, Inc. Sec.*

8

*Litig.,* 341 F. Supp. 3d 1342, 1360 (N.D. Ga. 2018) (explaining that puffery can be dismissed "as a matter of law" when it "is so exaggerated or so vague that a reasonable investor would not rely on it in considering the 'total mix' of facts available"); *Carvelli v. Ocwen Fin. Corp.*, No. 9:17-cv-80500-RLR, 2018 U.S. Dist. LEXIS 73597, at *13 (S.D. Fla. Apr. 27, 2018); *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1213 (M.D. Fla. 2014).  Finally, the Opposition fails to address Defendants' argument that the CC does not demonstrate *why* this statement was false at the time it was made.  OB at 20.

### B.  The CC Fails to Plead Scienter.

The CC fails to satisfy the PSLRA's stringent scienter requirement, which the Eleventh Circuit has characterized as "not insurmountable" but "difficult to meet." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1257 (11th Cir. 2008).  This is in part because the scienter "inference must be cogent and at least as compelling as any opposing inference."  *Id*.  Moreover, in this Circuit, "[s]cienter must be found with respect to *each* defendant and with respect to *each* alleged" misstatement or omission.  *Coca-Cola Enters. Inc. Sec. Litig.,* 510 F. Supp. 2d at 1199 (emphasis added).  The CC fails to allege scienter for each defendant with respect to each alleged misstatement or omission, and the Court should dismiss it for this reason alone.

### 1. Non-Defendant Former Employee Mr. Carson's Alleged Knowledge Cannot Be Imputed to Mohawk.

The Opposition argues that Mr. Carson, an individual not named as a defendant in this action and who was separated from Mohawk eight months before the end of the Class Period, had knowledge of the CC's alleged "fraudulent schemes" and that his knowledge is imputed to Mohawk. Opp. at 24. Because "[c]orporations… have no state of mind of their own…. [t]he scienter of their agents" may be imputed to them in limited circumstances. *Mizzaro,* 544 F.3d at 1254. But for his knowledge to be imputed to a corporation, the CC must create a strong inference not only that Mr. Carson had the requisite state of mind, but that he was "responsible" for the allegedly false statements made to investors. *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). The CC fails on its face to satisfy this pleading requirement, and the Opposition presents no credible arguments to the contrary.[2]

---

[2] The Opposition argues that *Equifax* supports a finding of corporate scienter. Opp. at 25 (citing *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189 (N.D. Ga. 2019). Not true. There, the court held that scienter had been adequately pleaded as to an individual defendant. *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d at 1234. Here, the CC fails to plead scienter as to the only individual defendant in this case, Mr. Lorberbaum. OB at 21-31. Also, *Equifax* was premised on a determination that individuals with actual knowledge that the company's statements were false "had a role in crafting many of the [misleading] statements made by the company." 357 F. Supp. 3d at 1247. There are no such allegations in the CC as to Mr. Carson.

The CC alleges in a conclusory fashion that Mr. Carson "furnished information regarding Floor North America" that was provided to investors. ¶¶ 358, 361. The CC does not, however, identify with particularity what this "information" included, or how any such "information" furnished by Mr. Carson was misleading. Nor does the CC attempt to identify which, if any, of the alleged misstatements included this allegedly incorporated "information" from Mr. Carson, or how such statements incorporated the "information." Without such particularized allegations, Mr. Carson's state of mind cannot support an inference of scienter as to Mohawk itself. *Mizzaro,* 544 F.3d at 1254-55 (affirming dismissal where complaint failed to "create [an] inference" that individuals not named as defendants were "responsible for issuing the allegedly false public statements").

The only category of information arguably attributable to Mr. Carson is FNA's financials, but even these allegations fail to support an imputation to the Company. The CC alleges that Mr. Carson "personally certified the accuracy of the financials" for FNA, that he "furnished financial information… that was incorporated into the Company's SEC filings and other public statements to investors," and that he "personally presented the financial information" for FNA to Mohawk executives. ¶¶ 358, 378. Scienter cannot be imputed to Mohawk on this basis because the CC does not allege that Mohawk's financials were false.

11

In fact, the Opposition explicitly states that the CC "challenges the Defendants' misleading descriptions of the reasons for their record margins—***not*** the reported margins themselves." Opp. at 15 (emphasis in original). Doubling down on this argument, the Opposition states with respect to alleged misstatements concerning Mohawk's inventory that the CC "challenges the ***reasons*** Defendants offered to excuse Mohawk's increased inventory and lengthening turnover—***not*** the reported numbers themselves." *Id*. at 16 (emphasis in original). Thus, the only "information" attributed to Mr. Carson as being "furnished" for distribution to investors—the accuracy of FNA's financials—is the very information that the Opposition emphatically asserts the CC does not dispute.[3] Accordingly, the Opposition's corporate scienter arguments fail.

> **2.   The CC's Collective Allegations Fail to Support a Strong Inference of Scienter.**

As explained in Defendants' Opening Brief, even when considered

---

[3] Moreover, the notion that Mr. Carson "furnished information" that was "included" in the allegedly false statements is incompatible with the allegation that he was the mastermind of a scheme to "conceal from investors" the "true reasons" for Company's sales and margins, inventory levels, and alleged manufacturing product. ¶ 5. Put another way, the CC's allegations that Mr. Carson spearheaded a secret scheme that was hidden even from Mr. Lorberbaum until late in the Class Period are squarely at odds with the Opposition's attempt to impute Mr. Carson's scienter to Mohawk.

holistically, the CC's allegations fail to support a strong inference of scienter against each Defendant.  OB at 22-31.  The Opposition's arguments to the contrary do not demonstrate otherwise.

For example, the Opposition asserts that the scope of the supposed Saturday Scheme supports a finding of scienter, citing *In re Flowers Foods, Inc. Securities Litigation*[4] for the proposition that "core business" allegations strengthen the inference.  But in that case, the allegedly fraudulent activity was the basis for more than 84% of the company's business.  *Id*. at *47.  Here, in contrast, the CC's allegations concern one of Mohawk's three business segments, and just two of FNA's many product lines.  Similarly, the Opposition argues in conclusory fashion that Mr. Lorberbaum's receipt of certain reports and SEC filings supports a finding of scienter.  Opp. at 28-29.  As Defendants explained in their Opening Brief, it is well-established that alleged access to these types of reports fails to establish scienter.  OB at 27.  Otherwise, courts would reach the absurd result that every executive with access to financial reporting holds securities fraud scienter.  The CC does not plead with specificity *how* the content of these supposed reports contradicted Mohawk's reported financials or rendered its statements false or misleading, and the Opposition does not meaningfully address this failure.

---

[4] No. 7:16-CV-222 (WLS), 2018 U.S. Dist. LEXIS 48048 (M.D. Ga. Mar. 23, 2018).

The CC's scienter allegations cannot be squared with the allegation that Mr. Lorberbaum was not made aware of the purported fraudulent schemes until a September 2018 meeting in which he was supposedly confronted about the purported improprieties.  The CC goes so far as to allege that Mr. Lorberbaum had to "look into" the accusations by FE1 and commence an investigation in order to substantiate the report from FE1, *see* ¶¶ 224, 356, which confirms he lacked knowledge of the alleged schemes before that alleged meeting and, at a minimum, demonstrates that Mr. Lorberbaum lacked scienter.

In addition, the CC's allegation that Mr. Lorberbaum said he "d[idn't] know how [he] missed" the alleged fraudulent schemes further supports a lack of scienter. ¶ 356.  The Opposition claims that this statement supports a finding of "recklessness" and cites *In re PainCare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1293 (M.D. Fla. 2007), a case in which a company conducted a massive financial restatement following GAAP accounting errors.  The CC does not, of course, allege that Mohawk conducted any such restatement (OB at 13), nor could it, and there is no analogous basis for a finding that Mr. Lorberbaum was reckless.  Such an inference is certainly not as "compelling as any opposing inference." *Mizzaro*, 544 F.3d at 1257.

Again, the Opposition's concession that the "reasons" for Mohawk's financials, and not the financials themselves, were improper undercuts a plausible

scienter inference.  Even assuming the FE1 confrontation allegations are sufficient to create an inference of scienter (and they are not),[5] the CC alleges that Mr. Lorberbaum became aware of the supposed reasons for Mohawk's allegedly inflated numbers in September 2018 at the earliest.  If Mr. Lorberbaum was not made aware of the reasons for Mohawk's margins and inventory numbers until September 2018, as the CC alleges, he cannot have had scienter with respect to the statements made before that time.  The Opposition does not adequately address this.

### 3.    The Failure to Plead Scienter Mandates Dismissal.

In a last-ditch effort to avoid dismissal, and perhaps acknowledging that the CC's allegations cannot survive this Court's scrutiny and analysis at this pleading stage, the Opposition incorrectly argues that questions as to whether scienter is adequately alleged should be reserved for the fact finder, suggesting they are inappropriate for resolution at the motion to dismiss stage.  Opp. at 24.  As the Eleventh Circuit has explained, the PSLRA's heightened scienter requirements were designed by Congress "to open the courthouse doors only to those plaintiffs whose complaints raised a 'strong inference' that the defendants they sought to hold

---

[5] As explained in Defendants' Opening Brief, the allegations concerning this single meeting are insufficient to meet the scienter burden given the overall weakness of the CC's scienter allegations.  OB at 29-30.

responsible for their losses acted with the required bad intent." *Mizzaro*, 544 F.3d at 1257.  Thus, when a pleading fails to adequately allege a strong inference of scienter, the Court "need not address the other elements of a Section 10(b) violation or the corollary Section 20(a) claim."  *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1307-08 (11th Cir. 2015) (affirming dismissal of complaint for failure to plead scienter).  In fact, this Court regularly dismisses complaints where this one element is inadequately alleged.  *See, e.g., Mizzaro v. Home Depot, Inc.*, No. 1:06-CV-1151-ODE, 2007 U.S. Dist. LEXIS 59781, at *27 (N.D. Ga. July 18, 2007) (dismissing "complaint [that] fail[ed] to state a claim on the basis of scienter alone").  Because it fails to allege the essential element of scienter, the CC should be dismissed.

## C.    The CC Fails to Plead Loss Causation.

To satisfy the loss causation requirement of a securities fraud claim, the CC must allege "not only that a fraudulent misrepresentation artificially inflated" Mohawk's stock price at the time of Plaintiff's purchases, "but also that the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price" at the time Plaintiff sold its Mohawk stock.  *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013) (quotations and citation omitted). "As explained by the Eleventh Circuit . . . if the decision to invest is induced by misrepresentations or omissions that are material and were justifiably relied upon by

the claimant, but are not the *proximate cause of his monetary loss*, recovery pursuant to Rule 10b-5 is not permitted." *Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1379-80 (N.D. Ga. 2004) (emphasis added, citation omitted).  The CC fails to meet this burden and should be dismissed.

### 1. The CC's Purported Disclosures Do Not Relate to the Alleged Fraud.

Although disclosures "need not precisely mirror the earlier misrepresentation," *HD Supply*, 341 F. Supp. 3d at 1363, the alleged disclosure must "specifically relate to the issues involved in the alleged fraudulent scheme." *Durham v. Whitney Info. Network, Inc.*, No. 06-CV-00687, 2009 U.S. Dist. LEXIS 113757, at *57 (M.D. Fla. Nov. 10, 2009).  None of the general statements identified by the Opposition as corrective disclosures, including vague references to "manufacturing reductions," "physical mechanical failures," and "software problems," satisfy the Eleventh Circuit's standard for corrective disclosures concerning the alleged fraud.  Opp. at 33.  The Opposition does not attempt to link these purported disclosures to any of the CC's alleged schemes or the Company's purported misstatements or omissions.  Because "nothing in the[se] statements corrects any prior disclosures . . . or reveals any omissions . . . that negatively affected the price of [the Company's] common stock," the CC "has failed to adequately allege loss causation." *Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890,

894 (11th Cir. 2012).[6]

### 2. The CC Does Not Allege Loss Causation Through Materialization of the Risk.

The Opposition's arguments concerning the materialization of the risk theory fail.[7]  "Under the materialization-of-concealed-risk theory, a plaintiff must allege that the loss was foreseeable and that the loss was caused by the materialization of the concealed risk."  *Sapssov v. Health Mgmt. Assocs., Inc.*, 22 F. Supp. 3d 1210, 1231 (M.D. Fla. 2014) (quotation marks and citation omitted).  Thus, "[w]hen

---

[6] The Opposition again calls upon *Flowers Foods* to support its loss causation argument, but its reliance on that case is misplaced.  In *Flowers Foods*, the company was alleged to have incorrectly classified certain of its distributors as "independent contractors" rather than employees.  2018 U.S. Dist. LEXIS 48048 at *59-69.  The court found that statements from analysts, news reports, and the Department of Labor constituted corrective disclosures, because they "revealed that Flowers' prior statements about its classification of distributors were misleading."  *Id*. at *67.  For example, a *Flowers Foods* disclosure specifically discussed that the DOL had announced it intended to conduct a compliance review of its independent contractor classifications, and that it was facing nearly two dozen lawsuits alleging independent contractors were being misclassified.  *Id*. at *64-66.  These statements directly related to the alleged misstatements and omissions concerning improper employee classifications.  The CC, in contrast, does not connect the purported disclosures to their allegations of prior misrepresentations and omissions.

[7] The Eleventh Circuit "has never decided whether the materialization-of-concealed-risk theory may be used to prove loss causation in a fraud-on-the-market case."  *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 726 n.25 (11th Cir. 2012).  Other circuits have called into question the validity of the materialization of the risk theory in securities class action cases.  *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 689-91 (5th Cir. 2015).

evaluating the materialization of the risk, a court asks whether the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e. that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  *Id.*

Here, the Opposition argues that the unspecified "risk that Mohawk's inability to produce quality LVT posed to the Company's sales and earnings" materialized when Mohawk missed earnings guidance in the second and third quarters of 2018. Opp. at 34-35.  But it is well-established that the mere fact that earnings were worse than forecasted does not suffice to plead loss causation.  *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) ("The fact that an event – in this case, a failure to meet earnings forecasts or a statement foreshadowing such a failure – disabused the market of that belief does not mean that the event disclosed the alleged scheme to the market."); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 678-79 (S.D.N.Y. 2007) (explaining that it was "not enough" to argue that risk that a company would be unable to meet future revenue projections was concealed because "the mere failure to meet earnings forecasts is insufficient to establish loss causation.").

In short, securities litigation is not to be used as "an insurance policy covering losses" and the mere fact that "the price of [] stock dropped," as the CC alleges, is

"not a materialization of the risk." *Sapssov*, 22 F. Supp. 3d at 1231-32.  Accordingly, the CC fails to plead loss causation through this alternative theory.

### 3. The CC's Failure to Plead Loss Causation Mandates Dismissal.

Grasping at straws, the Opposition again argues that whether loss causation is adequately pleaded is a fact issue that cannot be addressed at motion to dismiss. Opp. at 35.  Courts in this Circuit regularly dismiss securities class actions at the pleading stage for failure to plead loss causation.  *In re Witness Sys.*, No. 1:06-CV-1894, 2008 U.S. Dist. LEXIS 109174, at *32 (N.D. Ga. Mar. 31, 2008) (collecting cases); *Sapssov v. Health Mgmt. Assocs.*, 608 F. App'x 855, 863 (11th Cir. 2015) (affirming dismissal of securities class action for failure to allege loss causation); *Barr,* 324 F. Supp. 2d at 1380 (holding where plaintiff "fail[ed] to plead loss causation, dismissal of his Exchange Act claims against the Defendants [was] warranted").  Because the CC fails to plead loss causation for the foregoing reasons, it warrants dismissal in its entirety.

## III.   CONCLUSION

For each of these reasons, the CC should be dismissed in its entirety.

Respectfully submitted this 27th day of January, 2021.

**ALSTON & BIRD LLP**

/s/ Robert R. Long_____
John L. Latham
Georgia Bar No. 438675
Robert R. Long
Georgia Bar No. 141546
Elizabeth Gingold Clark
Georgia Bar No. 917979
Courtney E. Quirós
Georgia Bar No. 527069
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Emails: john.latham@alston.com
        robert.long@alston.com
        elizabeth.clark@alston.com
        courtney.quiros@alston.com

*Counsel for Mohawk Industries, Inc.*

**PARKER, HUDSON, RAINER & DOBBS LLP**

/s/ William J. Holley, II_____
William J. Holley, II
Georgia Bar No. 362310
Scott E. Zweigel
Georgia Bar No. 786616
303 Peachtree Street N.E.
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Emails: wholley@phrd.com
        szweigel@phrd.com

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC**

Richard D. Weinberg (*Appearing Pro Hac Vice*)
William C. Kinder (*Appearing Pro Hac Vice*)
565 Fifth Avenue
New York, New York 10017
Telephone: (212) 856-9600
Facsimile: (212) 856-9494
Emails: rweinberg@maglaw.com
        wkinder@maglaw.com

*Counsel for Jeffrey S. Lorberbaum*

## **LOCAL RULE 7.1D CERTIFICATION**

By signature below, counsel certifies that the foregoing document was

prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1C.


       */s/ Robert R. Long*_____
       Robert R. Long
       Georgia Bar No. 141546

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 27th day of January, 2021, I electronically filed the foregoing REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record.

This 27th day of January, 2021.


*/s/ Robert R. Long*_____

Robert R. Long
Georgia Bar No. 141546