**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOHAWK INDUSTRIES, INC. and JEFFREY S. LORBERBAUM,<br><br>Defendants. | Civ. A. No. 4:20-cv-00005-VMC |

**LEAD PLAINTIFF'S REPLY IN SUPPORT OF**
**ITS MOTION FOR CLASS CERTIFICATION,**
**APPOINTMENT AS CLASS REPRESENTATIVE,**
**AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

I.    TYPICALITY IS ESTABLISHED ..................................................................1

II.   COMMON ISSUES PREDOMINATE..........................................................5

    A.    Mohawk Stock Traded In An Efficient Market ....................................5

    B.    Defendants Fail To Show A Complete Absence Of Price Impact
        And Thereby Fail To Rebut The Presumption Of Reliance..................8

III.  DEFENDANTS' ATTACKS ON ADEQUACY ARE BASELESS ............11

IV.   CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Allstate Corp. Sec. Litig.*,
  2020 WL 7490280 (N.D. Ill. Dec. 21, 2020) ............................................................................11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................................................4, 9

*Anderson v. Bank of the S., N.A.*,
  118 F.R.D. 136 (M.D. Fla. 1987) ..............................................................................................3

*Beach v. Healthways, Inc.*,
  2009 WL 3245393 (M.D. Tenn. Oct. 5, 2009) ..........................................................................2

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*,
  2016 WL 4098741 (D. Minn. July 28, 2016) .........................................................................2, 4

*Berwecky v. Bear, Sterns & Co.*,
  197 F.R.D. 65 (S.D.N.Y. 2000) .................................................................................................4

*In re Boeing Co. Aircraft Securities Litigation*,
  2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...............................................................12, 13, 15

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  337 F.R.D. 193 (D. Minn. 2020)................................................................................................7

*City of Sunrise Gen. Emps.' Ret. Plan v. FleetCor Techs., Inc.*,
  2019 WL 3449671 (N.D. Ga. July 17, 2019)................................................................1, 2, 3, 14

*Cosby v. KPMG, LLP*,
  2020 WL 3548379 (E.D. Tenn. June 29, 2020)..........................................................................6

*Emps.' Ret. Sys. of the City of Baton Rouge v. Aaron's, Inc.*,
  283 F. Supp. 3d 1348 (N.D. Ga. 2017) ....................................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)....................................................................................................................4

*Feder v. Electronic Data Systems Corp.*,
  429 F.3d 125 (5th Cir. 2005) .....................................................................................................4

*Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017).......................................................................................9

*George v. China Automotive Systems, Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...............................................................................4

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)...............................................................................................................8

*Grace v. Perception Tech. Corp.*,
   128 F.R.D. 165 (D. Mass. 1989)................................................................................................3

*In re Groupon, Inc. Sec. Litig.*,
   2015 WL 1043321 (N.D. Ill. Mar. 5, 2015)..............................................................................8

*In re HealthSouth Corp. Sec. Litig.*,
   213 F.R.D. 447 (N.D. Ala. 2003)..............................................................................................2

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)...........................................................................2

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing &
   Securitization*,
   616 F. Supp. 2d 461 (S.D.N.Y. 2009)..................................................................................14, 15

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   762 F.3d 1248 (11th Cir. 2014) ............................................................................................3, 4

*Luczak v. Nat'l Beverage Corp.*,
   548 F. Supp. 3d 1256 (S.D. Fla. 2021) .....................................................................................3

*In re Merck & Co. Securities, Derivative & "ERISA" Litigation*,
   2016 WL 8674608 (D.N.J. Dec. 23, 2016). .............................................................................13

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
   2010 WL 11507255 (C.D. Cal. Aug. 27, 2010).......................................................................15

*Monroe Cty. Emps.' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019).....................................................................................7, 8, 10

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   2013 WL 4778157 (S.D.N.Y. Sept. 6, 2013)...........................................................................14

*In re Myriad Genetics, Inc. Sec. Litig.*,
   2021 WL 5882259 (D. Utah Dec. 13, 2021)..............................................................................7

*In re Netbank, Inc. Sec. Litig.*,
   259 F.R.D. 656 (N.D. Ga. 2009)...............................................................................................6

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
   455 F. App'x 10 (2d Cir. 2011) ...................................................................................9

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ..................................................................................2

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988)..................................................................................3

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   571 F. Supp. 2d 1315 (N.D. Ga. 2007) .......................................................................4

*Smilovits v. First Solar, Inc.*,
   295 F.R.D. 423 (D. Ariz. 2013) ..................................................................................6

*In re Teva Sec. Litig.*,
   2021 WL 872156 (D. Conn. Mar. 9, 2021) .................................................................6

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   2016 WL 4006661 (S.D. Fla. March 16, 2016)................................................8, 10, 11

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   2018 WL 2958361 (S.D.N.Y. June 13, 2018) .........................................................3, 7

*Willis v. Big Lots, Inc.*,
   2017 WL 1074048 (S.D. Ohio Mar. 17, 2017).............................................................8

**RULES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 23........................................................................................................1, 11

Fed. R. Civ. P. 30.............................................................................................................15

H.R. Rep. No. 104-369 (1995).........................................................................................11

This case, like most securities class actions, readily meets Rule 23's requirements.[1] Defendants' challenges to typicality, predominance, and adequacy should be swiftly rejected, and Plaintiff's Motion should be granted in its entirety.

## I.   **<u>TYPICALITY IS ESTABLISHED</u>**

Plaintiff satisfies Rule 23(a)'s "typicality" requirement.  *See* Mot. 10-11. MissPERS's claims arise from the same alleged misconduct that gives rise to other Class members' claims, are based on the same legal theory, and will be proven by the same set of facts.  *Id.*  Defendants primarily challenge typicality by pointing to a smattering of highly-typical communications between Mohawk and Eagle Capital Management, LLC ("Eagle"), one of MissPERS's four investment managers that transacted in Mohawk stock during the Class Period.  *See* Def. Br. 5-8.

First, and fatal to their argument, Defendants do not and cannot identify a single piece of non-public information that Mohawk told to Eagle that could possibly render MissPERS atypical.  As multiple courts recognize, "private communications are <u>irrelevant</u> where no material, non-public information is exchanged."  *City of Sunrise Gen. Emps.' Ret. Plan v. FleetCor Techs., Inc.*, 2019 WL 3449671, at \*5

---

[1] "Motion" or "Mot." refers to Plaintiff's opening brief (ECF No. 78) and "Pl. Ex." refers to the exhibits attached to the Reply Declaration of John C. Browne filed herewith ("Browne Reply Decl."). "Def. Br." and "Def. Ex." refer to Defendants' opposition brief and attached exhibits, respectively.  ECF Nos. 88, 88-1-13.  Unless otherwise noted, capitalized terms are as defined in the Motion, emphasis is added, and internal citations, quotations, and alterations are omitted.

(N.D. Ga. July 17, 2019) (collecting cases). Eagle's representative testified unequivocally that Eagle received "no material nonpublic information," "made its purchase decisions concerning Mohawk stock based on public information," and had "no knowledge of a fraud at Mohawk" during the Class Period. *See* Pl. Ex. E. Defendants offer nothing to counter this determinative evidence, confirming that the facts here are like those in *FleetCor*, where Judge May rejected the same argument "because Defendants failed to demonstrate that Plaintiff received material non-public information" from the defendant. *See FleetCor*, 2019 WL 3449671, at *5.[2] Nor could they: sharing material nonpublic information with Eagle would have violated state and federal law as well as Mohawk's own code of conduct.[3]

Defendants' cited cases are not on point. *See* Def. Br. 6-8. For example, the *HealthSouth* plaintiffs were former company employees and "aware of the very facts" allegedly concealed. *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 459-60 (N.D. Ala. 2003). And in *Beach v. Healthways, Inc.*, 2009 WL 3245393, at *4-5 (M.D. Tenn. Oct. 5, 2009) the investment manager—unlike Eagle—acquired

---

[2] Defendants do not even suggest that Plaintiff's other three investment advisors had access to material nonpublic information—separately dooming their argument. *E.g.*, *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *6 (N.D. Cal. Dec. 22, 2016) (plaintiff typical where only certain managers presented potential typicality concerns); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 46 (S.D.N.Y. 2012) (same).

[3] *See* Pl. Ex. F; *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *5 (D. Minn. July 28, 2016) (rejecting same argument on same grounds).

material, nonpublic information.[4]

Second, Defendants contend that MissPERS is "atypical" because its investment advisors continued to purchase Mohawk stock on its behalf after corrective disclosures. *See* Def. Br. 9-13. Not so. It is a "rule" in this Circuit that purchases made "after the stock price has been 'corrected' by the market's assimilation of the new information" do not defeat typicality. *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). This logic applies equally to class period purchases made after partial corrective disclosures because, at each moment, lead plaintiff and other investors were "in the same factual position." *FleetCor*, 2019 WL 3449671, at \*5 (investor typical where it made purchases after partial corrective disclosures).[5]

---

[4] Defendants' remaining cases further undermine their argument. *See Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at \*7-8 (S.D.N.Y. June 13, 2018) (even evidence "strongly suggest[ing]" that investment manager would have invested regardless of fraud showed no atypicality); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) (plaintiff who had access "available to other[s]" found <u>typical</u>); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 168-69 & n.1 (D. Mass. 1989) (finding one plaintiff typical because there was "no evidence" he received material, nonpublic information, and inferring another received "special information" based on unusual trading absent here); *Anderson v. Bank of the S., N.A.*, 118 F.R.D. 136, 146-48 (M.D. Fla. 1987) (in "undeveloped market setting," four investors typical where they relied on public information, while one investor atypical due to unique "extensive personal investigation" into concealed issues).

[5] Defendants' cases in no way justify deviating from this rule. Unlike here, in *Luczak v. Nat'l Beverage Corp.*, 548 F. Supp. 3d 1256, 1266 (S.D. Fla. 2021), the plaintiff sold out <u>before</u> corrective disclosures and so had a "distinct and separate" loss

Third, Defendants erroneously argue that Eagle's positive views of Mohawk after the first two corrective disclosures "directly contradict the" Complaint's allegations.  Def. Br. 10 & n.10.  But there is no contradiction.  The Complaint alleges that Defendants misled investors after each of the first two corrective disclosures by falsely claiming that the issues revealed were "temporary" and "behind us."  ¶¶243-44, 250-52.  That Eagle "continu[ed] to like the long-term story" and thought the stock "would get back on track soon" after the first disclosure, and was "considering becoming an even larger holder" after the second (Def. Br. 11-12), is entirely <u>consistent</u> with such allegations.

Defendants have failed to identify any unique defense against MissPERS that would threaten to become "the focus of the litigation" and could defeat typicality. *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007).[6]

---

causation theory from the class.  *George v. China Automotive Systems, Inc.*, 2013 WL 3357170 (S.D.N.Y. July 3, 2013), and *Berwecky v. Bear, Sterns & Co.*, 197 F.R.D. 65 (S.D.N.Y. 2000) (Def. Br. 11), contradict controlling Eleventh Circuit authority.  *See Tile Shop*, 2016 WL 4098741, at *4 (contrasting *George* with Fifth Circuit's approach in *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 138 (5th Cir. 2005)); *Regions*, 762 F.3d at 1260 (adopting *Feder* approach).

[6] Defendants also assert potential "unique defenses" to "materiality" and "loss causation" (Def. Br. 9)—but it is settled Supreme Court law that "materiality" and "loss causation" are common, objective questions and <u>cannot</u> give rise to "unique" defenses.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (materiality); *Regions*, 762 F.3d at 1254 (same); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-12 (2011) (loss causation).

## II.   COMMON ISSUES PREDOMINATE

Plaintiff has shown that common issues predominate over individual ones. *See* Mot. 16-23.  Defendants' attempts at a "battle of the experts" fail because the facts and well-established law confirm both that Mohawk stock traded in an efficient market and that Defendants' misrepresentations and omissions impacted Mohawk's stock price.

### A.   Mohawk Stock Traded In An Efficient Market

The opening report of Plaintiff's expert, Dr. Hartzmark, showed that the eight factors courts use to examine market efficiency provide overwhelming evidence that the market for Mohawk stock was efficient.  *See* ECF No. 78-2 ("Hartzmark Rep.") ¶10.  Critically, neither Defendants nor their expert contend that the market for Mohawk stock was *not* efficient—nor could they.  Mohawk was a Fortune 500 company and traded on the NYSE, the world's most efficient stock market.  Instead, Defendants pick nits with two tests Dr. Hartzmark performed relating to just *one* of the eight factors.  Those challenges would be insufficient even if they were correct, and they are not.

*Autocorrelation Test*. Applying well-accepted methods, Dr. Hartzmark found no systematic or persistent autocorrelation during the class period.  *See* Hartzmark Rep. ¶¶69-75.   Defendants insist, without authority, that Dr. Hartzmark's methodology was flawed because, in one analysis, he excluded two anomalous dates,

while in another, he divided the Class Period to test whether any stable autocorrelation pattern persisted from the first to the second half. *See* Def. Br. 15. These challenges are unavailing.

First, courts have consistently credited dividing the Class Period into sub-periods to test whether autocorrelation is persistent. *See, e.g.*, *In re Teva Sec. Litig.*, 2021 WL 872156, at \*15-16 (D. Conn. Mar. 9, 2021) (defendants' challenge to market efficiency defied "common sense" where expert—a "well respected" colleague of Defendants' expert here—found inconsistent autocorrelation across sub-periods); *Cosby v. KPMG, LLP*, 2020 WL 3548379, at \*21-22 (E.D. Tenn. June 29, 2020) (same).[7] Second, Dr. Hartzmark explains why analyzing sub-periods and removing anomalous dates is appropriate for testing whether autocorrelation is systematic or outlier-driven. Pl. Ex. G ("Hartzmark Rbt.") ¶¶64-124. Finally, even if Dr. Hartzmark's autocorrelation conclusion were (wrongly) disregarded, courts—including this one—consistently hold that systematic autocorrelation is alone "insufficient to demonstrate" market inefficiency. *E.g.*, *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 675 (N.D. Ga. 2009); *Smilovits v. First Solar, Inc.*, 295

---

[7] Defendants also try to challenge Dr. Hartzmark's analysis as not scientifically reliable based on the speculation of their expert, Lucy Allen, as to Dr. Hartzmark's motives. Def. Br. 15; Pl. Ex. H at 104:22-116:7. Ms. Allen's criticisms are incorrect. *See* Hartzmark Rbt. ¶¶107-24. Regardless, Defendants fail to even suggest (let alone establish) that the market for Mohawk stock was inefficient—the ultimate question at issue. At best, this presents a "battle of the experts" that cannot be resolved now.

F.R.D. 423, 437 (D. Ariz. 2013) (same); *Villella*, 333 F.R.D. at 55 (same).[8]

***Cause-and-Effect Test***. Similarly, Dr. Hartzmark detailed how he conducted a standard "cause-and-effect" test by comparing (i) the proportion of earnings release days on which Mohawk stock exhibited statistically significant excess returns to (ii) the proportion of other days in the Class Period on which Mohawk stock exhibited statistically significant excess returns. *See* Hartzmark Rep. ¶¶63-68. This approach is standard, as multiple courts have expressly acknowledged, and has been utilized regularly in securities class actions for years. *E.g.*, *Monroe Cty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 385 (N.D. Ga. 2019) (collecting cases); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 208 (D. Minn. 2020) (crediting similar analysis by Dr. Hartzmark).

Defendants insist Dr. Hartzmark's analysis is "unreliable" because he selected as the relevant "news" days ten earnings days, which Ms. Allen contends was too few.[9]  But Courts routinely certify classes based on event studies with similar or fewer event days. *E.g.*, *S. Co.*, 332 F.R.D. at 385-86 (seven news dates); *In re Myriad Genetics, Inc. Sec. Litig.*, 2021 WL 5882259, at *9 (D. Utah Dec. 13, 2021)

---

[8] Defendants' own expert acknowledged that there is "not only one correct way" to test for autocorrelation and a stock could still trade in an efficient market even if it showed "evidence of inefficiency on some factor." Pl. Ex. H at 93:5-24.

[9] Defendants mistakenly argue "555 days in the Class Period were not assessed," Def. Br. 16, but those days were included in the analysis. *See* Hartzmark Rep. ¶64.

(eleven news dates); *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at \*4 (N.D. Ill. Mar. 5, 2015) (two event dates).  In any event, as Dr. Hartzmark explains in his rebuttal report, Defendants' challenges to his analysis are incorrect.[10]

**B.      Defendants Fail To Show A Complete Absence Of Price Impact And Thereby Fail To Rebut The Presumption Of Reliance**

Defendants also fail to show an absence of "price impact," which they must "prove . . . by a preponderance of the evidence."  *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958 (2021).  To meet that burden, Defendants must "seve[r] the link between a misrepresentation and the price" plaintiff paid, *id.* at 1962, an undertaking courts in this Circuit and elsewhere have described as a "tall order" and a "daunting task."  *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, at \*13 (S.D. Fla. March 16, 2016); *S. Co.*, 332 F.R.D. at 393.  Defendants must fully sever the link for ***all*** corrective disclosures, and a failure to do so "dooms" any attempt to rebut the *Basic* presumption.  *S. Co.*, 332 F.R.D. at 393, 395.

---

[10] Ms. Allen's contention that there are too few events in Dr. Hartzmark's event study rests solely on a misreading of one of Dr. Hartzmark's papers.  *See* Hartzmark Rbt. ¶¶127-31.  Ms. Allen also claims that including the corrective disclosure dates biases the analysis (*see* Allen Rep. ¶78), but the dates were selected objectively and the author of Ms. Allen's source on the matter has largely retracted claims that including corrective disclosure dates introduces bias.  *See* Hartzmark Rbt. ¶¶135-39; *Willis v. Big Lots, Inc.*, 2017 WL 1074048, at \*4 (S.D. Ohio Mar. 17, 2017) ("That the objective criterion incorporated corrective disclosure dates does not undermine the reliability of the methodology employed in the event study."); *S. Co.*, 332 F.R.D. at 385-86.  Regardless, the test results are the same—and support market efficiency—if corrective disclosure dates are excluded.  *See* Hartzmark Rbt. ¶133.

Defendants have not met—and cannot meet—their burden.

First, as to the first two corrective disclosures, Defendants argue only that the revenue amount associated with the Saturday Scheme was immaterial. Def. Br. 17-18. This is wrong. To start, it is well settled that materiality "should not be resolved in deciding whether to certify a proposed class." *Amgen*, 568 U.S. at 465-80. Moreover, the Saturday Scheme was not immaterial: even if it resulted in only $4 million additional revenue per quarter, it would have allowed Mohawk to meet, rather than miss, expectations for the Flooring NA business segment. *See, e.g.*, Pl. Ex. I at 2 (in July 2017, Mohawk beat Flooring NA consensus revenue estimates by $2.3 million). Courts have found amounts "minuscule in comparison" to annual revenues material where, as here, they concealed failure to meet estimates. *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 16 (2d Cir. 2011); *Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 550 (S.D.N.Y. 2017) (same). And Mohawk's emails confirm this reasoning: for example, one month before the first corrective disclosure, a Mohawk executive stated: "It is IMPERATIVE that we pull in next week's orders / full court press on Saturday … Or, you could see the stock price get hammered in a month or so." Pl. Ex. J.

In any event, Defendants have not even challenged price impact as to misrepresentations concerning inventories and LVT production and quality for these two corrective disclosures. Their failure to "rule out price impact" for these

- 9 -

misrepresentations for all disclosures "dooms [their] attempt to rebut" the *Basic* presumption "because the inquiry is whether Defendants have proven a complete lack of price impact . . . , not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage." *S. Co.*, 332 F.R.D. at 395.[11]

Second, Defendants mount a challenge—improper at this stage—to the July 26, 2019 corrective disclosure, arguing that "factors unrelated to the alleged misrepresentations," such as "macroeconomic issues," explain the price decline. Def. Br. 18-19. To the extent Defendants are "merely try[ing] to show that other factors contributed to the price impact," this is insufficient to carry their burden as it fails to "establish that there is <u>no</u> connection between the price decline and the alleged misrepresentation," *Thorpe*, 2016 WL 4006661, at *14. That argument raises only loss causation and damages questions that "are ultimate questions for the trier of fact on the merits." *S. Co.*, 332 F.R.D. at 397.

---

[11] Defendants' silence is understandable, as Mohawk employees and analysts expressly connected the stock price declines in July and October 2018 to those issues. *See, e.g.*, Pl. Ex. K (on July 26, 2018, Mohawk executives noted the "[s]tock price is plummeting" and "[w]e have to solve LVT in particular. . . . We will likely never hit $280 again in the near-term"); Pl. Ex. L (in August 2018, a Mohawk executive stated "a major part of the stock price problem is our failure in the star category in the flooring business"—LVT); Hartzmark Rbt. ¶¶15-18; *S. Co.*, 332 F.R.D. at 396 ("[E]xistence of a price decline and analyst commentary highlighting the negative news is, of course . . . evidence of price impact.").

If Defendants are attempting to suggest that the July 26, 2019 price decline was <u>solely</u> attributable to "macroeconomic factors" (something their expert avoided analyzing) and not LVT manufacturing issues, the evidence contradicts them. Defendants announced negative news related to LVT production, which numerous analysts commented on, including by specifically connecting those revelations to Mohawk's lowered guidance. *See* Hartzmark Rbt. ¶¶29-60.

Critically, and also fatal to Defendants' argument, Ms. Allen performed <u>no</u> empirical analysis demonstrating that fraud-related news had no effect on the stock price, therefore failing to "sever the link." *See Thorpe*, 2016 WL 4006661, at \*14 (rejecting defendants' price impact argument that "relied exclusively on market commentary, and applied no statistical or empirical methodology"); *In re Allstate Corp. Sec. Litig.*, 2020 WL 7490280, at \*5-6 (N.D. Ill. Dec. 21, 2020) (criticizing Ms. Allen's failure to perform such "empirical testing or disaggregation analysis" as "fatal to defendants' attempts to defeat class certification").

## III.   <u>DEFENDANTS' ATTACKS ON ADEQUACY ARE BASELESS</u>

As set forth in the Motion, Plaintiff and Lead Counsel are plainly "adequate" under Rule 23(b)(3). Mot. 11-14. MissPERS is precisely the type of sophisticated institutional investor Congress sought to place in charge of securities class actions by enacting the Private Securities Litigation Reform Act of 1995 (*see* H.R. Rep. No. 104-369, at \*34 (1995) (Conf. Rep.)). Over the past five years alone, at least a dozen

courts in this District and elsewhere have found MissPERS eminently adequate to serve as lead plaintiff or class representative. *See* Browne Reply Decl. ¶15. MissPERS has recovered over $4 billion for investors as a class representative, and it has the resources and commitment necessary to maximize investors' recovery here. As for Bernstein Litowitz, it has recovered over $37 billion for investors, and dozens of courts have found it "adequate" to serve as lead counsel or class counsel in the last five years, with courts and commentators praising the firm for achieving more top settlements than any other law firm in the country. *Id.* ¶16-17. Given these track records, courts across the country have repeatedly rejected the very same adequacy challenges raised here.

First, Defendants lodge unproven and incorrect allegations from an 8-year-old employment dispute with one of Lead Counsel's former attorneys (the "*Bernstein* allegations") that was cited in dicta by a magistrate judge ("*Mednax*"). Defendants omit that the *Bernstein* allegations were <u>voluntarily withdrawn and forsworn</u> by the attorney who made them, and the dicta from *Mednax* has been <u>repeatedly rejected</u>. As the court in *In re Boeing Co. Aircraft Securities Litigation* succinctly explained in appointing MissPERS as lead plaintiff and Bernstein Litowitz as lead counsel:

> The former attorney at Bernstein Litowitz who made these allegations in a complaint subsequently dismissed that complaint and signed a statement, in February 2015, conceding that he had received "information that seriously challenges my claims," and that the information "presents insurmountable factual and legal challenges to

my ability to recover." And since that time, so far as the record presented in this case shows, every court (other than the *Mednax* court) that has been presented with arguments about [MissPERS] and/or Bernstein Litowitz's adequacy on this basis has rejected the challenge.

2019 WL 6052399, at *9 (N.D. Ill. Nov. 15, 2019).

Likewise, in *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, the court rejected a settlement objector's citation to *Bernstein* for identical reasons. 2016 WL 8674608, at *2 (D.N.J. Dec. 23, 2016).  In appointing MissPERS as Lead Plaintiff and Bernstein Litowitz as Lead Counsel in *In re Signet Jewelers Ltd. Securities Litigation*, the court also rejected that the withdrawn employee allegations provided any "evidentiary basis to conclude that MissPERS is not adequate to serve as lead plaintiff."  *See* Pl. Ex. M.  And in *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, the court called the *Bernstein* allegations a "non-issue."  *See* Pl. Ex. N.

Second, Defendants assert that MissPERS is inadequate because, in *Symantec*, a case not involving MissPERS, counsel for an unsuccessful competing lead plaintiff movant raised unfounded speculations about Bernstein Litowitz's hiring of a former employee of *Symantec*'s lead plaintiff.   Defendants omit entirely that the *Symantec* court rejected the unsuccessful movant's request, entrusted Bernstein Litowitz to continue to serve as class counsel for the certified class, and later granted final approval of the $70 million settlement and Bernstein Litowitz's requested attorneys' fee, commenting on the record that Bernstein Litowitz "did a good job, so thank you

- 13 -

for that." *See* Pl. Ex. O.  Courts have repeatedly approved Bernstein Litowitz as lead and class counsel after being apprised of *Symantec*—further reflecting that it simply has no bearing here whatsoever.

Third, Defendants try to challenge MissPERS because it learned of the potential claims here through Bernstein Litowitz, one of several well-qualified and carefully pre-vetted "monitoring" counsel MissPERS relies on in the exercise of its fiduciary duties to its members.  Def. Br. 23.  This attack is dead in the water, as "courts routinely appoint institutional investors with monitoring agreements as lead plaintiffs and class representatives."  *See, e.g.*, *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2013 WL 4778157, at *2 (S.D.N.Y. Sept. 6, 2013) (collecting cases); *FleetCor*, 2019 WL 3449671, at *6.  Once Bernstein Litowitz identified the case, MissPERS was under no obligation to pursue it, and MissPERS did so only after the Mississippi's State Attorney General's office reviewed the merits and decided to proceed.  *See* Pl. Ex. P.[12]

Finally, invoking the PSLRA's "professional plaintiff" provision, Defendants incorrectly assert that Judge Ross erred in appointing MissPERS as the lead plaintiff. Def. Br. 24-25.  In rejecting this identical challenge, courts have explained:

Defendants cite no authority where class certification has been denied

_____

[12] Defendants cite *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization*, where the court "appoint[ed] MissPERS as lead plaintiff and Bernstein Litowitz as lead counsel."  616 F. Supp. 2d 461 (S.D.N.Y. 2009).

> as to an institutional investor on these grounds in a securities class action, and the Court has found none. When considering this issue . . . courts have noted that the . . . rule is discretionary and legislative history suggests that it was not intended to apply to institutional plaintiffs.

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at \*6 (C.D. Cal. Aug. 27, 2010); *see also Emps.' Ret. Sys. of the City of Baton Rouge v. Aaron's, Inc.*, 283 F. Supp. 3d 1348, 1351 (N.D. Ga. 2017).[13]

Both MissPERS and Bernstein Litowitz have diligently confirmed Judge Ross's initial finding of their adequacy and have consistently acted in the Class's best interests. They filed a comprehensive 193-page complaint, successfully overcame Defendants' motion to dismiss, propounded extensive discovery, hired experts, and amassed compelling evidence supporting investors' claims. MissPERS has fully responded to Defendants' document requests and interrogatories and produced two separate Rule 30(b)(6) witnesses who appeared for deposition and testified at length in response to Defendants' questions. There can be no serious dispute that MissPERS is an adequate Class Representative here.

## IV.    **CONCLUSION**

Plaintiff respectfully requests that the Court grant its Motion.

---

[13] In rejecting this argument, courts have said the "accumulated experience of MissPERS in pursuing multiple securities fraud actions seems a benefit more than a detriment." *Iron Workers*, 616 F. Supp. 2d at 467; *Boeing*, 2019 WL 6052399, at \*9.

- 15 -

Dated: June 8, 2022                    Respectfully submitted,


                                       */s/ John C. Browne*
                                       John C. Browne (admitted *pro hac vice*)
                                       Michael M. Mathai (admitted *pro hac vice*)
                                       Alexander T. Payne (admitted *pro hac vice*)
                                       **BERNSTEIN LITOWITZ BERGER
                                         & GROSSMANN LLP**
                                       1251 Avenue of the Americas
                                       New York, New York 10020
                                       Tel: (212) 554-1400
                                       Fax: (212) 554-1444
                                       johnb@blbglaw.com
                                       michael.mathai@blbglaw.com
                                       alex.payne@blbglaw.com


                                       -and-


                                       Jonathan D. Uslaner (admitted *pro hac vice*)
                                       Richard D. Gluck (admitted *pro hac vice*)
                                       Lauren M. Cruz (admitted *pro hac vice*)
                                       2121 Avenue of the Stars, Suite 2575
                                       Los Angeles, California  90067
                                       Tel: (310) 819-3470
                                       jonathanu@blbglaw.com
                                       rich.gluck@blbglaw.com
                                       lauren.cruz@blbglaw.com


                                       *Counsel for Lead Plaintiff Public
                                       Employees' Retirement System of
                                       Mississippi and Lead Counsel for the Class*

                                       /s/ *H. Lamar Mixson*
                                       H. Lamar Mixson
                                       Georgia Bar No. 514012
                                       Amanda Kay Seals
                                       Georgia Bar No. 502720
                                       Jennifer L. Peterson

- 16 -

Georgia Bar No. 601355
**BONDURANT MIXSON &**
 **ELMORE, LLP**
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA  30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
mixson@bmelaw.com
seals@bmelaw.com
peterson@bmelaw.com

*Liaison Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

John L. Davidson (admitted *pro hac vice*)
**DAVIDSON BOWIE, PLLC**
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, Mississippi 39157
Telephone:  (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

- 17 -

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared in

Times New Roman, 14-point font in compliance with Local Rule 5.1(C).

> */s/ John C. Browne*
> John C. Browne (admitted *pro hac vice*)

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2022, I filed the foregoing Lead Plaintiff's Reply in Support of its Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel using the Court's CM/ECF system, which will automatically send notification to counsel of record.

/s/ John C. Browne
John C. Browne (admitted *pro hac vice*)

Certificate of Service