# Exhibit C

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
404-881-7000 | Fax: 404-881-7777

Elizabeth Gingold Clark                Direct Dial:  404-881-7132                Email:  elizabeth.clark@alston.com

March 8, 2022

*VIA EMAIL*

Mr. Jonathan D. Uslaner
Bernstein Litowitz Berger & Grossmann LLP
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
*JonathanU@blbglaw.com*

> Re:   *Public Employees' Retirement System of Mississippi v. Mohawk*
> *Industries, Inc*., No. 4:20-cv-00005-ELR

Dear Counsel:

I am writing on behalf of Defendants in the above-captioned matter in light of the parties' February 22, 2022 meet-and-confer and Lead Plaintiff Public Employees' Retirement System of Mississippi's ("Lead Plaintiff") February 4, 2022, February 22, 2022, and March 3, 2022 letters.

## I.   Initial Disclosures

In addition to the 17 custodians offered by Defendants, Lead Plaintiff continues to assert that Defendants should be required to search the custodial data of Messrs. Brunk, Sommers, Tatum, and Ms. Haynes on the basis that they are identified in Defendants' Initial Disclosures.  As explained in Defendants' February 18, 2022 letter, Defendants' Initial Disclosures clearly identify "individuals who may have discoverable information that Defendants may use to support their defenses."  Defendants are aware of no case law or applicable rule that requires a party to designate every person who "may have discoverable information" as a custodian.  Lead Plaintiff has provided Defendants with no such authority since receipt of that letter.

Lead Plaintiff also misstates Defendants' position with respect to whether Defendants will take the deposition of, or rely upon testimony from, anyone on Mohawk's Initial Disclosures who is not a document custodian.  As explained in the parties' February 22, 2022 meet-and-confer, Defendants are not currently intending to rely upon the deposition or testimony from anyone on Mohawk's Initial Disclosures who is not identified as a custodian.  However, Defendants reserve the right to seek depositions and testimony of  certain  non-custodians  that  Lead  Plaintiff  has  placed  at  issue,  including  of  the

Alston & Bird LLP                                                                                       www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Fort Worth | London | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

March 8, 2022
Page 2

confidential witnesses identified in the Amended Complaint concerning their relationship with and the information they provided to Lead Plaintiff before Lead Plaintiff filed the Amended Complaint, which would not require a review of their custodial data.

## II.   **Custodians and Search Terms**

Notwithstanding that Defendants have agreed to a broad scope of discovery across a three-year period, including the addition of eight (8) custodians requested by Lead Plaintiff, Lead Plaintiff continues to press for more.  Lead Plaintiff has insisted that Defendants add five (5) new custodians and that Defendants review the additional custodial data of these five (5) new custodians in advance of the April 8, 2022 substantial completion deadline.  That is unreasonable and not proportionate to the needs of the case in the context of Defendants' agreement to date to review more than 90,000 documents in addition to the more than 80,000 documents that Defendants have produced.  *In re Arby's Rest. Grp. Inc. Litig*., 2018 U.S. Dist. LEXIS 233650, at \*14 (N.D. Ga. Aug. 16, 2018) ("the traditionally liberal limits on discovery must be juxtaposed against proportionality considerations in a given case and the Court's obligation to determine, on a case-specific basis, the appropriate scope of discovery.").  Lead Plaintiff must uphold its part of the parties' joint responsibility to ensure discovery is proportional to the needs of the case.  Fed. R. Civ. P. 26(b) Advisory Committee's Notes, 2015 Amendments, ¶ 10 (noting parties' "collective responsibility to consider the proportionality . . . in resolving discovery disputes"); *Marsh v. Bloomberg Inc*., Case No. 16-cv-02647-MEJ, 2017 WL 2224250, at \* 1 (N.D. Cal. May 22, 2017) ("[T]here is a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts.").

In the interest of compromise and to reach final agreement regarding search terms and custodians, however, Defendants respond as follows.

*Jan Vergote*: When Mohawk acquired IVC Group in January 2015, IVC Group became the vinyl sub-segment of Mohawk's Flooring Rest of World (ROW) division. Post-acquisition, Mr. Vergote served as a consultant to Mohawk from December 21, 2015 through July 1, 2019, at which time his contract with Mohawk expired.  Mr. Vergote was based in Europe and his primary responsibility was to oversee IVC Group's vinyl business, which operated in markets outside of North America.  Because Lead Plaintiff's allegations entirely relate to conduct in Mohawk's Flooring North America division, and have absolutely no connection to Flooring Rest of World, Mr. Vergote is not a key custodian of relevant data in this case.

Moreover, as Defendants explained in the parties' February 22, 2022 meet-and-confer, in accordance with Mohawk's document retention policy, Mr. Vergote's U.S. Mohawk emails were not retained more than six (6) months past July 1, 2019, which preceded the initiation of this action.  Nevertheless, in order to finalize the Parties' agreement on custodians, Defendants would be willing to conduct the following search during the Relevant Time Period, which requires Defendants to review 2,247 additional documents:

March 8, 2022
Page 3

- **Sender/Recipient:** Emails to/from/cc/bcc all known email addresses that appear to have been used by Mr. Vergote including Mr. Vergote's Exchange Server Addresses;
- **Terms**: lvt* or "luxury vinyl tile" or IVC.

This population is *in addition to* the searches to which Defendants have already agreed and does not include any documents that would have been reviewed in those searches.[1] Defendants believe this should resolve the Parties' disputes on custodians.

*James Brunk*: Lead Plaintiff asserts that Defendants should be required to search Mr. Brunk's custodial data on the basis that Mr. Brunk certified the accuracy of certain of Mohawk's financial statements and received an email about reserves for LVT inventory. Defendants have already identified numerous custodians, including Jeff Lorberbaum, Mr. Boykin, and Glenn Landau, Mohawk's Chief Executive Officer and former Chief Financial Officers, respectively, who certified the accuracy of certain of Mohawk's financial statements. Likewise, Defendants have identified numerous custodians other than Mr. Brunk, including Brent Emore, Chief Financial Officer (FNA) and Mr. Boykin, who were involved with Mohawk's finance and accounting functions. Accordingly, adding Mr. Brunk as a custodian is not proportionate to the needs of the case given the additional burden imposed.

*John Sommers*: Lead Plaintiff asserts that Defendants should be required to search Mr. Sommers' custodial data on the basis that Mr. Sommers certified the accuracy of certain of Mohawk's financial statements and was copied on emails concerning LVT storage and inventory. As described above, Defendants have already identified numerous custodians who certified the accuracy of certain of Mohawk's financial statements as custodians. Moreover, with respect to LVT storage and inventory, Defendants have already agreed to produce documents from numerous custodians who had closer oversight responsibilities and more direct knowledge of these topics, including Dan Flowers, Vice President of Logistics, David Toney, former Senior Vice President of Supply Chain for FNA, Mathew Witte, former Vice President of Warehouse and Delivery Operations, and Paul Murfin, former Senior Vice President of Distribution. The custodians Defendants have already identified and agreed to produce are better suited to address these topics. Accordingly, adding Mr. Sommers as a custodian is not proportionate to the needs of the case given the additional burden imposed.

*Jeremy Tatum:* Lead Plaintiff asserts that Defendants should be required to search Mr. Tatum's custodial data on the basis that one of the purported former employees referenced in the Amended Complaint allegedly reported to Mr. Tatum and because Mr. Tatum was involved in discussions related to customer concerns about LVT quality. As an initial matter, it is not evident the purported fact that Mr. Tatum supervised one of the former employees referenced in the Amended Complaint renders him a necessary custodian. Lead Plaintiff provides no support or explanation for that assertion. Further, Lead Plaintiff has not explained why Mr. Tatum is a necessary custodian with respect to documents concerning LVT quality. Defendants have already agreed to produce documents from numerous custodians with knowledge of Mohawk's domestic LVT

---

[1] This search is referred to hereinafter as the "Vergote Search."

March 8, 2022
Page 4

production, including Brian Carson, former President of FNA, Gary Lanser, former Chief Operating Officer of FNA, and Mr. Murfin, former President of IVC U.S. and Mohawk Resilient.  Accordingly, adding Mr. Tatum as a custodian is not proportionate to the needs of the case given the additional burden imposed.

*Amanda Clear Haynes*: Lead Plaintiff asserts that Defendants should be required to search Ms. Haynes' data on the basis that two of the former employees named in the Amended Complaint purportedly reported to Ms. Haynes and because Ms. Haynes was copied on a document that referred to selling Mohawk products at the end of the third quarter of 2017.  As described above, Lead Plaintiff has not explained why, nor provided any authority for, the assertion of the fact that Ms. Haynes purportedly supervised two of the former employees referenced in the Amended Complaint renders her a necessary custodian.  Further, Lead Plaintiff provides no explanation for why Ms. Haynes' receipt of an email about Mohawk selling product at the end of a quarter renders her a necessary custodian, particularly given Defendants have already agreed to search the custodial data of Mr. Murfin, the President and CEO of IVC U.S., and Mohawk's senior leadership in finance, including Mr. Emore, Chief Financial Officer (Flooring North America) and Messrs. Boykin and Landau, Mohawk's former Chief Financial Officers.

Accordingly, in the interest of a final and good faith compromise, Defendants will agree to review the documents identified by running the search terms in Exhibit 1, which accepts all the edits requested by Lead Plaintiff in its March 3, 2022 letter over seventeen (17) custodians.  Additionally, Defendants will agree to review the documents identified by running the above-described Vergote Search.  These searches are in addition to the review of 46,578 additional documents identified by running the forty-five (45) search terms used to identify the documents produced by Mohawk on December 30, 2021 over the eight (8) custodians requested by Lead Plaintiff.  In total, this will require Defendants to review more than 100,000 documents in addition to the more than 80,000 documents from the Government Productions[2] that Defendants produced on December 30, 2021.  Please confirm Lead Plaintiff's agreement that this proposal will resolve the parties' outstanding disputes regarding search parameters by March 11, 2022.  Any additional search terms or custodians will require the Parties to revisit the agreed-upon case schedule.

Finally, and for avoidance of any doubt, while Defendants have agreed to run the following search requested by Lead Plaintiff, Defendants do not agree to produce documents concerning carpet quality other than documents concerning purported impacts on carpet quality resulting from carpet allegedly sitting in warehouses.  Defendants will not produce documents concerning other carpet quality issues, which are outside the scope of the Amended Complaint.

- (defect* OR flaw* OR unaccept* OR disast* OR damage* OR horribl* OR terribl* OR crap* OR suck* OR garbage OR embaras* OR insan* OR fiasco OR "not sellable" OR "not salable" OR unsalable OR unsellable OR shit) W/15 (carpet)

---

[2] The term "Government Productions" has the meaning described in Defendants' March 2, 2022 letter to Lead Plaintiff.

March 8, 2022
Page 5

Sincerely,

Elizabeth Gingold Clark

cc:      Counsel of Record

**Exhibit 1: Defendants' Search Terms as Modified by Lead Plaintiff's March 3, 2022 Letter Applied to Seventeen Custodians**

| Term | Review Population |
|---|---:|
| "HR Review" | 183 |
| "inventory health" W/50 (LVT* OR "luxury vinyl tile" OR IVC* OR carpet) | 90 |
| "IVC Quality Report" | 10 |
| "SMOG" W/3 (review OR report OR snap) | 273 |
| ("52 weeks" OR 52wks OR "52 wks" OR "26 weeks" OR "26wks" OR "26 wks" OR "26-52 weeks" OR "26-52 wks" OR "26-52wks") W/10 (LVT* OR "luxury vinyl tile" OR IVC*) | 51 |
| ("Aging Report" OR DBSR OR "Aging detail") W/15 (lvt* OR luxury vinyl tile OR IVC*) | 951 |
| ("days in inventory" OR DII OR "days on hand" OR DOH OR "weeks on hand" OR WOH OR "inventory day*") W/10 (carpet OR LVT* OR "luxury vinyl tile" OR IVC*) | 693 |
| ("finished goods" OR "inventories") W/20 ("carrying value" OR report* OR "snap shot" OR "snap-shot") | 2,732 |
| ("finished goods" W/12 (LVT* OR carpet OR "hard surface")) AND (policy OR policies) | 116 |
| ("IVC US Daily Report" OR "IVC U.S. Daily Report") AND (LVT* OR "luxury vinyl tile") | 3,161 |

| | |
|---|---:|
| ("off-quality") W/10 (motive* OR hide) | 0 |
| ("per month" OR monthly OR "each month" OR "every month") W/20 (carpet OR LVT*) W/20 ("sqft" OR "sq ft" OR "sqm" OR "sq m" OR "ft2" OR "m2" OR volume OR roll OR lb* OR pound* OR carton* OR pallet) | 135 |
| ("well-accepted" OR competit* OR "on par" OR "subpar" OR wors*) W/10 (LVT* OR "luxury vinyl tile" OR IVC*) | 2,568 |
| (("over-produc*" OR overproduc* OR excess* OR "over-supply" OR surplus OR leftover) W/25 (margin OR inventor* OR obsolete OR unsalable OR unsellable)) AND (inventor* W/25 (defectiv* OR return* OR refund*)) | 396 |
| (((stock OR share*) W/3 price) W/10 (declin* OR drop* OR fell OR fall* OR plummet* OR disaster* OR terribl* OR perform* OR shit* OR crap* OR horrendou* OR bad* OR pathetic* OR investor* OR street)) AND (Mohawk* OR MHK* OR our) | 2,871 |
| ((8k OR 10k OR 10q OR "8-k" OR "10-k" OR "10-q") W/10 (draft* OR review* OR certif* OR publish* OR edit*)) AND (Mohawk OR mhk) | 529 |
| ((accelerat* OR overstat* OR fabricat*) W/25 revenue*) AND (inventor* W/25 (defectiv* OR return* OR refund*)) | 127 |

| | |
|---|---|
| ((complain* OR pissed OR furious OR angry OR anger OR livid OR outraged OR mad OR upset*) W/20 (LVT* OR "luxury vinyl tile" OR IVC*)) | 640 |
| ((complain* OR resist* OR frustrat*) W/20 ("earl*" OR "refus*" OR "closed" OR "reject*" OR Saturday)) W/10 (deliver* OR ship* OR reship* OR attempt*) | 96 |
| ((consensus W/5 (expect* OR estimat*)) AND (((quarter* OR annual OR financial) W/5 result*) OR EPS OR "earnings per share")) AND (mohawk* OR mhk* OR our) | 3,709 |
| ((demand OR forecast OR projection) W/10 (LVT* OR "luxury vinyl tile" OR IVC*)) AND (annual* OR quarter* OR month* OR weekly OR daily) | 5,112 |
| ((earning* W/5 (call OR transcript OR conference OR presentation)) W/20 (draft* OR review* OR prepar* OR participat* OR speak* OR edit*)) | 1,253 |
| ((EOQ* OR "end of quarter" OR "quarter-end" OR Saturday) W/20 ((spike OR increase OR "over-time") AND ((2d OR 2nd OR second OR 3d OR 3rd OR third) W/3 shift))) AND (report OR summary OR analysis OR analyses) | 2 |

| | |
|---|---|
| ((produc* OR manufactur* OR "off the line") W/10 (capacity OR maximum OR max)) W/10 (LVT* OR "luxury vinyl tile" OR IVC*) | 1,744 |
| ((recogn* W/5 revenue) OR "Rev recognition" OR "Rev Rec") W/15 (violat* OR fail* OR compl* OR procedur* OR polic* OR rule* OR standard* OR error* OR weakness* OR deficienc* OR fraud*) | 834 |
| ((rent OR build OR buy) W/10 (warehouse OR rack* OR truck* OR trailer OR container OR space OR storage)) W/10 (LVT* OR "luxury vinyl tile" OR IVC* OR carpet) | 590 |
| ((report*) W/5 (sales OR sold)) AND (Lorberbaum OR Carson OR Boykin OR DeCock OR Wellborn OR director OR CEO OR CFO OR President OR COO) AND (Saturday* OR "end of quarter" OR EOQ) | 244 |
| ((return* OR claim* OR refund*) W/5 (deny* OR denied OR "turn down" OR refuse OR reject*)) AND (LVT* OR "luxury vinyl tile" OR IVC* OR carpet) | 1,177 |
| ((SOX OR sarbanes) W/5 (certif*)) | 183 |
| (audit* OR test*) W/10 (LVT* OR "luxury vinyl tile" OR IVC*) | 4,083 |
| (CEO OR CFO) W/15 (incompetent* OR inadequa* OR derelict* OR deficien* OR liar* OR fraud* OR cheat*) | 305 |

| | |
|---|---:|
| (dead OR "re-inspect*" OR return* OR aged OR downgrad* OR distress*) W/5 (LVT* OR "luxury vinyl tile" OR IVC*) | 1,268 |
| (defect* OR flaw* OR buckl* OR unaccept* OR disast* OR damage* OR horribl* OR terribl* OR crap* OR discontinu* OR suck* OR garbage OR embaras* OR insan* OR fiasco OR "not sellable" OR "not salable" OR unsalable OR unsellable OR shit OR ("not" W/2 uniform)) W/15 (LVT* OR "luxury vinyl tile" OR IVC*) | 2,181 |
| (defect* OR flaw* OR unaccept* OR disast* OR damage* OR horribl* OR terribl* OR crap* OR suck* OR garbage OR embaras* OR insan* OR fiasco OR "not sellable" OR "not salable" OR unsalable OR unsellable OR shit) W/15 (carpet) | 7,219 |
| (EOQ* OR "end of quarter" OR "quarter-end" OR EOY* OR "end of year" OR "year-end" OR YE OR Saturday) W/10 (push* OR pull* OR swamp OR lake OR drain OR "empty racks" OR spik* OR scrambl* OR "whatever it takes" OR pressure* OR (close W/3 gap*)) | 7,738 |
| (excess* OR surplus OR leftover) W/10 (LVT* OR "luxury vinyl tile" OR IVC*) | 766 |

| | |
|---|---|
| (GHB OR Goodwill OR "11th Ave") W/10 (overflow* OR overproduc* OR "over-supply" OR fraud* OR fake OR "no room" OR gills OR hoard* OR buffer OR stuffed) | 2,599 |
| (Holt OR Dave OR David) AND ((sell* OR sale OR sold) W/20 ("do not" OR "don't" OR stop* OR ceas* OR halt) W/20 (LVT* OR "luxury vinyl tile" OR IVC*)) | 144 |
| (Lorberbaum OR Carson OR Boykin OR Flowers OR Witte OR Lanser OR Tatum OR Kearton OR COO) W/15 (fire* OR terminat* OR resign* OR quit* incompetent* OR inadequa* OR derelict* OR deficien* OR liar* OR fraud* OR cheat*) | 2,321 |
| (LVT* OR "luxury vinyl tile" OR IVC* OR carpet) W/10 (overflow* OR "over-run" OR "over-produc*" OR overproduc* OR "over-supply" OR fraud* OR fake OR "no room" OR gills OR hoard* OR buffer OR stuffed) | 1,405 |
| (materials OR inputs OR outputs OR "finished goods") W/20 (excess OR obsolete) | 617 |
| (record W/3 (margin* OR sale* OR revenue* OR quarter* OR result*)) W/20 (drivers OR reasons OR LVT* OR attribute*) | 42 |

| | |
|---|---|
| (reserve* OR "write-off" OR "write-down" OR "bring down" OR accrual* OR "true-up" OR impair* OR "contra-asset" OR "contraasset") W/10 (LVT* OR "luxury vinyl tile" OR IVC* OR carpet) | 3,609 |
| (SMOG OR (mov* W/2 slow*) OR obsole* OR excess* OR dead OR aged OR "E O") W/10 (LVT* OR "luxury vinyl tile" OR IVC*) | 1,434 |
| (valu* OR deliver*) W/20 (inventor* W/25 (defectiv* OR return* OR refund*)) | 388 |
| accounting W/20 (fraud* OR weakness* OR violat* OR aggressiv* OR conservativ*) | 578 |
| dashboard AND (director OR Lorberbaum OR CEO) | 1,902 |

Total Review Population: 56,155