# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

PUBLIC EMPLOYEES'
RETIREMENT SYSTEM OF
MISSISSIPPI, individually and on
behalf of all others similarly situated,

       Plaintiff,

    v.

MOHAWK INDUSTRIES, INC. and
JEFFREY S. LORBERBAUM,

       Defendants.

Civ. A. No. 4:20-cv-00005-VMC

# LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ISSUANCE OF LETTER ROGATORY TO THE BELGIAN COURT OF FIRST INSTANCE OF ORIENTAL FLANDERS, DIVISION GHENT

## INTRODUCTION

Recognizing the obvious relevance of the testimony Lead Plaintiff seeks, Defendants resort to a false narrative about Lead Plaintiff's supposed lack of diligence in pursuing Mr. Vergote's deposition.  But Lead Plaintiff's Motion was timely filed well before the end of fact discovery, and Defendants omit the central role they played in creating the very circumstances that dissuaded Lead Plaintiff from filing the Motion earlier—including by dramatically understating Mr. Vergote's role in overseeing Mohawk's North American LVT production to Lead Plaintiff, as they did to the Court in their Opposition.  Because Lead Plaintiff's Motion was timely and Mr. Vergote's deposition was diligently pursued, this Court should issue the Letter Rogatory.

## BACKGROUND

On September 29, 2021, Judge Ross denied in substantial part Defendants' Motion to Dismiss the Complaint.  *See* ECF No. 60.  After the Court granted Defendants' requested extension of time to answer the Complaint (*see* ECF No. 62), in November 2021, the parties filed a proposed discovery schedule permitting up to 20 depositions per side, with substantial completion of document production by early April 2022 and fact discovery closing in August 2022.  *See* ECF No. 65-2.  Judge Ross so-ordered that proposed schedule on November 16, 2022.  *See* ECF No. 66. In April 2022, when it became clear that Defendants would not be able to meet the

previously-ordered substantial completion deadline, the parties agreed to an extension of the discovery deadlines to their current dates, which the Court so-ordered in May 2022. *See* ECF Nos. 87, 98.

In connection with negotiating potential custodians, Lead Plaintiff explained in a February 4, 2022 letter that it had "identified Jan Vergote as an individual whom it may use to support its claims," and expressed a then-present intention to depose him. *See* Ex. A at 2. By letter dated February 18, 2022, Defendants revealed that Mr. Vergote was "the Belgium-based former CEO of IVC Group" and claimed that any relevant materials from his custodial files would be duplicative of those of Paul Murfin, the U.S.-based former President and CEO of Mohawk's IVC US subsidiary, whose materials Defendants had already agreed to search. *See* Ex. B at 3.

During a February 22, 2022 meet-and-confer, Defendants also revealed that Mr. Vergote's "U.S. Mohawk emails" had not been retained by the Company, and, in a March 8, 2022 letter, they stridently asserted that Mr. Vergote was largely irrelevant to this case:

> When Mohawk acquired IVC Group in January 2015, IVC Group became the vinyl sub-segment of Mohawk's Flooring Rest of World (ROW) division. Post-acquisition, Mr. Vergote served as a consultant to Mohawk from December 21, 2015 through July 1, 2019, at which time his contract with Mohawk expired. Mr. Vergote was based in Europe and his primary responsibility was to oversee IVC Group's vinyl business, which operated in markets outside of North America. Because Lead Plaintiff's allegations entirely relate to conduct in Mohawk's Flooring North America division, and have absolutely no

connection to Flooring Rest of World, Mr. Vergote is not a key custodian of relevant data in this case.

Ex. C at 2.

Lead Plaintiff continued to press for relevant documents that were available from other Belgian custodians, as well as for relevant documents from centrally-maintained Belgian files.  For their part, Defendants continued to downplay the importance of Belgian materials to this case, asserting, for example, that Belgian centrally-maintained documents were "substantial[ly] like[ly] . . . not [to] be of importance to Plaintiff's claims which are entirely focused on Flooring NA"—*i.e.*, Mohawk's Flooring North America segment.  *See* Ex. D at 2.



5





Lead Plaintiff promptly began the process of seeking Mr. Vergote's deposition.  On October 5, Lead Plaintiff asked Defendants to provide Mr. Vergote's last known address (to which request Defendants never responded).  Ex. M at 1.  On October 6, Lead Plaintiff reached out to Mr. Vergote by email to request that he appear voluntarily for a deposition.  Ex. N.

The next day, October 7, Mr. Vergote responded to Lead Plaintiff that "[he]

or [his] representative would contact [Lead Plaintiff] in the forthcoming weeks," and Lead Plaintiff responded the same day, requesting that Mr. Vergote or his representative respond by the end of the month.  Ex. O at 1.

On October 24, Lead Plaintiff again contacted Mr. Vergote, requesting a response that week.  Ex. P at 1.  On October 27, Lead Plaintiff contacted Defendants, explaining that it intended to seek issuance of a letter rogatory in order to depose Mr. Vergote, given that he had not indicated whether he would sit for a voluntary deposition, and asking Defendants whether they would oppose the motion, and (again) to provide Mr. Vergote's last known address.  Ex. Q.  Defendants once again did not respond.  The following day, counsel from Dechert LLP, whom Mr. Vergote retained to represent him, informed Lead Plaintiff that Mr. Vergote would not voluntarily appear for a deposition in this case.  Ex. R.

Lead Plaintiff immediately began the process of finalizing its request for issuance of a letter rogatory, including by retaining esteemed Belgian counsel (*see* ECF No. 108-1 at 15) to advise on Belgian legal issues (and determine Mr. Vergote's address, which Defendants repeatedly refused to provide) and, consistent with Belgian legal practice, finalizing its selection of exhibits and drafting a targeted set of deposition questions.  Lead Plaintiff filed the Motion and associated papers two weeks after Mr. Vergote first communicated his refusal to appear voluntarily.

## ARGUMENT

## I.    Lead Plaintiff Diligently Sought Issuance of a Letter Rogatory

Defendants' core argument—that Lead Plaintiff was "not diligent in starting the letter rogatory process" (Opp. 11)—is simply wrong.  As Defendants' own authority counsels, "[a] party's diligence can be determined by its attempts to gather relevant information during discovery, the timing of when that information became available, and how soon the party moved . . . after discovering the information." *Snadon v. Sew-Eurodrive, Inc.*, 859 F. App'x 896, 897 (11th Cir. 2021) (quoted at Opp. 11).  Under this standard, Lead Plaintiff exhibited diligence.

To start, while Defendants attempt to make much out of the fact that Lead Plaintiff expressed an interest in deposing Mr. Vergote in February 2022, they ignore that, afterwards, they informed Lead Plaintiff that Mr. Vergote was a former employee based in Belgium and that his custodial documents had not been retained. Defendants also ignore that they repeatedly asserted that Mr. Vergote, other Belgian personnel, and Belgian discovery materials were only marginally relevant to the U.S. LVT issues at the core of this litigation, and contended that, in any event, Mr. Vergote was duplicative of other, U.S.-based Mohawk personnel that could be (and have been) deposed in this case through ordinary U.S. court processes.  Particularly in light of its role as a representative for a class and the 20-deposition limit, Lead

Plaintiff appropriately and prudently reconsidered its initial approach of seeking Mr. Vergote's deposition given Defendants' representations.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Lead Plaintiff promptly made attempts to seek Mr. Vergote's deposition, including by seeking necessary information from Defendants, reaching out to Mr. Vergote to request that he sit for a voluntary deposition, and retaining Belgian counsel to both obtain information Defendants refused to provide and to advise on Belgian deposition process issues that Lead Plaintiff needed to understand in order to appropriately structure and format the proposed Letter Rogatory.

Under circumstances like these, courts routinely grant motions seeking issuance of letters rogatory, notwithstanding that the discovery sought through them might be obtained after the fact discovery deadline. *See, e.g.*, *Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, 2021 WL 942736, at \*3 (S.D.N.Y. Mar. 12, 2021) (rejecting argument that motion for issuance of letter rogatory brought 1.5 months before close of fact discovery was untimely because it was filed within weeks of party's receipt of information demonstrating necessity of the discovery sought); *Brey*

9

*Corp. v. LQ Mgmt., L.L.C.*, 2012 WL 3127023, at *3-4 (D. Md. July 26, 2012) (granting motion for letter rogatory filed two days before close of discovery because seeking party "had good cause to research this issue and retain Canadian counsel before filing the instant motion" and had "taken steps to avoid the delay typically associated with the letters rogatory process by retaining Canadian counsel").

Indeed, many of Defendants' cases on this point (*see* Opp. 12-14) support the appropriateness of Lead Plaintiff's request, either directly or through their analysis of relevant facts.  To start, in *Roc Nation LLC v. HCC International Insurance Co., PLC*, the court explained that the ***request*** for letters rogatory "needed to occur, at the latest, before" the date set for the ***close of deposition discovery***, and denied the request because it was made a month after that deadline had passed.  *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 3170886, at *1 (S.D.N.Y. June 15, 2020). Similarly, in *Cardiovascular Systems, Inc. v. Cardio Flow, Inc.*, the court criticized a party for seeking issuance of a letter rogatory "nearly two months after the . . . fact discovery deadline," observing that it "could have easily pursued [the] deposition prior to the fact discovery deadline" and suggesting that, even if the party learned of the relevance of the deposition in the weeks before the discovery deadline, it could have appropriately sought relief at that time.  *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 2020 WL 6262378, at *2-3 (D. Minn. May 6, 2020).  Here, Lead

Plaintiff's request—which was filed well before the close of fact discovery—*conforms* to the rule endorsed by those courts.

In addition, the courts in each of *Roc Nation LLC*, *Cardiovascular Systems, Inc.*, *Exegi Pharma, LLC v. Roberto Pacifici,* and *Cordeiro v. Alves* focused on the fact that the parties seeking issuance of letters rogatory had clearly known—either from the beginning of discovery or close to it—that they would need to seek such relief, but failed to do so. For example, in *Roc Nation LLC*, the party seeking issuance of the letters rogatory had "fronted for the Court" the need for such international discovery at the initial pretrial conference, but waited until after the close of fact discovery to request letters rogatory. 2020 WL 3170886, at *1. In *Cardiovascular Systems, Inc.*, the court observed that the "value as a witness" of the individual whose deposition was being sought via letter rogatory "should have been clear" to the seeking party long before the close of discovery because the individual was "the only person who was a party to both of the contracts at issue in this litigation." 2020 WL 6262378, at *3. In *Exegi Pharma, LLC v. Roberto Pacifici*, the court set a nine-month discovery period *precisely because* a party "told the Court that . . . [it] . . . needed time to pursue international discovery that would take, in [its] own view, 'often in excess of six months'"—and yet that party waited to seek issuance of a letter request until only 4.5 months remained in the discovery period, failed to "explain[] how or whether" the requested discovery was relevant, and

11

submitted a proposed letter request that was inappropriate in form.  No. 1:21-cv-2134-TWT, ECF No. 57, at 2-3 (N.D. Ga. Nov. 15, 2022).  And in *Cordeiro v. Alves*, the defendant admitted to having been aware of the email it sought to obtain via letter rogatory since almost the beginning of the discovery period, and to being aware that the email would be difficult to obtain elsewhere, yet inexplicably waited until one month remained in the discovery period before seeking a letter rogatory.  *See* 2017 WL 3099086, at *1 (S.D. Fla. Apr. 7, 2017) (denying reconsideration).  Here, as set forth above, Lead Plaintiff's sought issuance of the Letter Rogatory shortly after ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

And in *Seoul Semiconductor Co. v. Nichia Corp.*, the court's decision focused on the irrelevance of the information sought.  In that case, which involved alleged infringement of a ***U.S.*** patent, the defendants sought to depose a French attorney by means of a letter rogatory in connection with the prosecution of a ***French*** patent, despite having "indicated that they [would] also depose . . . the lead attorney prosecuting the [U.S.] patent" actually at issue in the case.  590 F. Supp. 2d 832, 835 (E.D. Tex. 2008).  The court found that "[t]here is no showing that the information to be provided by [the French attorney] may be critical or compelling" given that "[i]nformation directly related to the prosecution of the [U.S.] patent [could] come

from" the U.S. attorney the defendants planned to depose. *Id.* ███████████

███████████████████████████████████

████████████████████[1]

## II.   Mr. Vergote's Testimony Is Relevant And Important To This Case

Throughout the Opposition, Defendants repeatedly err in suggesting that Lead Plaintiff's supposed delay, and the nature of the questions Lead Plaintiff seeks to propound to Mr. Vergote, suggest that his testimony is unimportant to this case. *See* Opp. 10-12, 15.   Not so: ██████████████████

---

[1] Defendants' remaining cases are so factually dissimilar as to be irrelevant. *See Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 246 F. Supp. 2d 285, 289 (S.D.N.Y. 2003) (holding that defendants were "equitably preclude[d] . . . from obtaining new Letters Rogatory at this point" when they had failed "to do all that they could to locate and procure the testimony of" key witness for nearly two years pursuant to *earlier*-issued letters rogatory); *Realty Execs. Int'l Servs. LLC v. Devonshire W. Can. Ltd.*, 2019 U.S. Dist. LEXIS 196422, at *3-4 (D. Ariz. Nov. 13, 2019) (after *granting* request for issuance of letters rogatory to Canada made six weeks prior to previously-extended fact discovery deadline, declining further extension to accommodate Canadian proceedings where (i) previous extension was made with warning "that the Court will not grant additional extensions absent truly extraordinary circumstances" and (ii) the party seeking extension conducted "little discovery . . . during the 10-month [initial] discovery period" and "acknowledged . . . that the letters rogatory process could have been initiated a year ago, and the relevancy of Canadian information has been clear from the start of this case"); *FEC v. Rivera*, 2021 U.S. Dist. LEXIS 258981, at *2 (S.D. Fla. Feb. 25, 2021) (the court had already "extended the fact discovery deadline on three separate occasions" and "two summary judgment motions [had] already been filed and fully briefed"); *John Hancock Life Ins. Co. (USA) v. Andrews*, 2015 WL 9255554, at *1-2 (N.D. Ga. Dec. 17, 2015) (Defendants did not serve discovery requests until after the agreed deadline and "[did] not present any argument that good cause exists to excuse their failure to comply with the Court's Scheduling Order").

███████████████████████████████████████████████

████████████████████████████████████████

In addition, Defendants are wrong to suggest that the questions Lead Plaintiff drafted for the Belgian court imply that the deposition is unimportant. *See* Opp. 10-11, 15. The questions themselves seek information that is plainly relevant and important to the claims at issue here. *See generally* ECF No. 109-1 at 19-23. And in any event, Lead Plaintiff's potential questions for Mr. Vergote are not limited to the written questions included in the Letter Rogatory. Rather, consistent with its understanding of Belgian legal practices, Lead Plaintiff provided specific, document-based questions for the Belgian court to ask while seeking the opportunity to suggest follow-up questions as might be warranted. *See* ECF No. 108-1, at 17 (requesting that the Belgian court conduct the deposition while "allowing counsel for Lead Plaintiff to provide additional questions to the Requested Court as the deposition unfolds").

## III.    Lead Plaintiff Does Not Seek To Delay Proceedings In This Case

Lead Plaintiff is aware that, even if this Court issues the Letter Rogatory, Mr. Vergote's deposition is not guaranteed to occur—and, if it does, it may take some time to complete.[2] Lead Plaintiff does ***not*** seek to delay proceedings in this Court

---

[2] Contrary to Defendants' concern that the letters rogatory process "may take a year or more" according to the U.S. Department of State (Opp. at 8, 9) and must be

until processes associated with Mr. Vergote's potential deposition reach their conclusion. Rather, Lead Plaintiff seeks permission to pursue Mr. Vergote's deposition and to later seek leave to include his testimony, if obtained, in the record for summary judgment or trial, depending on when the deposition occurs.

## CONCLUSION

For the reasons set forth above and in the Motion, Lead Plaintiff respectfully requests that the Court grant the Motion and provide the relief requested therein.

Dated: December 2, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ H. Lamar Mixson*
H. Lamar Mixson
Georgia Bar No. 514012
Amanda Kay Seals
Georgia Bar No. 502720
**BONDURANT MIXSON & ELMORE, LLP**
1201 West Peachtree Street NW, Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
mixson@bmelaw.com

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (admitted *pro hac vice*)
Richard D. Gluck (admitted *pro hac vice*)
Lauren M. Cruz (admitted *pro hac vice*)
2121 Avenue of the Stars
Los Angeles, California 90067
Tel: (310) 819-3470
jonathanu@blbglaw.com
rich.gluck@blbglaw.com
lauren.cruz@blbglaw.com

-and-

"delivered to the U.S. State Department by mail" (*id*. at 7), Lead Plaintiff understands that the Letter Rogatory may be transmitted by its Belgian Counsel directly to the Belgian Minister of Justice for authorization and thereafter to the appropriate judicial authority without needing to go through the U.S. Department of State's diplomatic channels.

15

seals@bmelaw.com

*Liaison Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

John L. Davidson (admitted *pro hac vice*)
**DAVIDSON BOWIE, PLLC**
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, Mississippi 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

John C. Browne (admitted *pro hac vice*)
Michael M. Mathai (admitted *pro hac vice*)
Robert F. Kravetz (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
johnb@blbglaw.com
michael.mathai@blbglaw.com
robert.kravetz@blbglaw.com
alex.payne@blbglaw.com

*Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

16

# LOCAL RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared in

Times New Roman, 14-point font in compliance with Local Rule 5.1(C).

> /s/ Jonathan D. Uslaner
> Jonathan D. Uslaner (admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, I filed the foregoing Lead Plaintiff's Reply In Further Support Of Its Motion For Issuance Of Letter Rogatory To The Belgian Court Of First Instance Of Oriental Flanders, Division Ghent using the Court's CM/ECF system, which will automatically send notification to all counsel of record.

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner
