# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF MISSISSIPPI, individually
and on behalf of all others similarly
situated,

               Plaintiff,

    v.

MOHAWK INDUSTRIES, INC. and
JEFFREY S. LORBERBAUM,

               Defendants.

Civ. A. No. 4:20-cv-00005-VMC

# LEAD PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE OF SETTLEMENT

## **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT .................................................................1

II.  SUMMARY OF THE LITIGATION.......................................................5

    A.   The Filing of the Action and the Appointment of Lead
        Plaintiff and Lead Counsel ...........................................................5

    B.   The Filing of the Complaint and the Briefing of
        Defendants' Motion to Dismiss ....................................................5

    C.   The Parties Conduct Substantial Discovery ..............................6

    D.   Lead Plaintiff's Class Certification Motion ...............................7

    E.   The Settlement Negotiations ........................................................7

III. THE PROPOSED SETTLEMENT ...........................................................8

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
    APPROVAL .................................................................................................9

    A.   Standards Governing Approval of Class Action
        Settlements ......................................................................................9

    B.   The Court "Will Likely Be Able To" Approve the
        Proposed Settlement Under Rule 23(e)(2) .................................11

        1.   "Procedural" Aspects of the Settlement Satisfy
            Rule 23(e)(2).........................................................................11

        2.   The Settlement's Terms Are Adequate and
            Equitable ...............................................................................13

            (a)   The Settlement Provides Substantial Relief,
                Especially in Light of the Costs, Risks, and Delay
                of Further Litigation ......................................................14

            (b)   The Proposed Settlement Does Not Unjustly Favor
                Any Class Member ........................................................19

(c) The Anticipated Request for Attorneys' Fees Is Reasonable .......................................................21

(d) Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement ......................21

V. THE PROPOSED FORM AND METHOD OF NOTICE ARE APPROPRIATE AND SHOULD BE APPROVED ....................................22

VI. CONCLUSION.............................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnone v. Camden Cnty., Ga.*,
  2019 WL 1368634 (S.D. Ga. Mar. 26, 2019) ....................................................10

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ..........................................................................11

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ..................................................14

*In re Checking Acct. Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .............................................................14

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) ......................................................................22

*In re Equifax Inc. Sec. Litig.*,
  No. 1:17-cv-03463-TWT ...............................................................................3, 24

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ........................................................................21

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ..................................................14

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) ............................................................................9

*Lunsford v. Woodforest Nat'l Bank*,
  2014 WL 12740375 (N.D. Ga. May 19, 2014)...................................................12

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988) ....................................................................9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007) .....................................19

*Parker v. Stoneledge Furniture, LLC*,
   2022 WL 738591 (M.D. Fla. Feb. 17, 2022)........................................................13

*In re Piedmont Off. Realty Trust Inc. Sec. Litig.*,
   2013 WL 12205636 (N.D. Ga. Apr. 18, 2013)....................................................25

*In re Piedmont Off. Realty Trust Inc. Sec. Litig.*,
   2013 WL 12205681 (N.D. Ga. Jan. 2, 2013)......................................................25

*Public Employees' Retirement System of Mississippi v. Mohawk*
   *Industries, Inc., et al.*,
   Civil Action 4:20-cv-00005 (N.D. Ga.).................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020)...............................................20, 22

*Smith v. Wm. Wrigley Jr. Co.*,
   2010 WL 2401149 (S.D. Fla. June 15, 2010)....................................................10

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005) ......................................................................14

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) .................................19

*Thorpe v. Walter Inv. Mgmt. Corp*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ..................................................20

**Statutes**

15 U.S.C. § 78u-4(e) ............................................................................................5, 20

28 U.S.C. § 1715....................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................*passim*

## I.     PRELIMINARY STATEMENT

Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS" or "Lead Plaintiff") is pleased to report that it has reached an agreement to settle this securities class action (the "Action") in exchange for a cash payment of $60 million for the benefit of the Class (the "Settlement"), subject to the Court's approval. Lead Plaintiff now seeks preliminary approval of the Settlement pursuant to Rule 23(e)(1).[1]

Approval of the Settlement is a two-step process. *See* Fed. R. Civ. P. 23(e)(1), (2). At this initial stage, the Court considers whether to grant preliminary approval of the Settlement. If granted, this would begin the process of considering the proposed Settlement by: (1) allowing notice to be sent to potential Class Members, and (2) scheduling the proposed final approval hearing (the "Settlement Hearing"). At the Settlement Hearing at the final approval stage, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed motion papers submitted in support of the proposed Settlement prior to that hearing.

---

[1]As used herein, (i) capitalized terms have their meaning as defined in the Stipulation and Agreement of Settlement dated January 13, 2023 (the "Stipulation"), attached as Exhibit 1 to this motion; (ii) references to "¶__" refer to paragraphs of the Stipulation; and (iii) all internal citations and punctuation are omitted.

At this preliminary approval stage, the Court considers whether it "will likely be able to" finally approve the Settlement. Fed. R. Civ. P. 23(e)(1)(B). As detailed further herein, the Settlement satisfies all the standards for preliminary approval. Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. The Settlement is the result of Lead Plaintiff's vigorous prosecution of this Action for almost three years. Among other things, Lead Counsel obtained and reviewed over 800,000 pages of documents produced by Defendants and non-parties and deposed twelve current and former Mohawk employees.

The Settlement was negotiated at arms'-length by parties that were represented by experienced and able counsel. The settlement negotiations took place through a formal mediation process overseen by a well-experienced mediator, former United States District Judge Layn R. Phillips. This process included the exchange of detailed mediation statements and a full-day mediation session, followed by continued discussions throughout discovery with the assistance and oversight of Judge Phillips. The Settlement—which is particularly favorable when weighed against the risks and delay to recovery that continued litigation would have entailed—was ultimately based on a mediator's recommendation by Judge Phillips, which the Parties accepted on a double-blind basis.

For all the reasons discussed in this motion, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order submitted herewith. The Preliminary Approval Order will, among other things: (1) preliminarily approve the Settlement set forth in the Parties' Stipulation of Settlement; (2) approve the form and method for providing notice of the Settlement to the Class, which mirrors the form of notice routinely approved by courts in this Circuit and across the country in securities class action settlements (*see, e.g.*, *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT); and (3) schedule the Settlement Hearing, at which the Court will consider a motion for final approval of the Settlement and the proposed plan for allocation of the net Settlement proceeds (the "Plan of Allocation"), and rule on Lead Counsel's forthcoming motion for attorneys' fees and expenses.

Lead Plaintiff respectfully proposes a schedule for proceeding with final approval of the Settlement that is the same (or close to) the schedule set forth below. As reflected in the below proposed schedule, Lead Plaintiff requests a final Settlement Hearing to occur 110 days from the date of entry of the Preliminary Approval Order to accommodate the 100 days required by the Class Act Fairness Act ("CAFA") to mail the CAFA notice and enter the judgment finally approving the Settlement. The illustrative schedule provided below assumes that the Court enters

the Preliminary Approval Order by January 27, 2023 and schedules the Settlement

Hearing for May 17, 2023, or at the Court's earliest convenience thereafter.[2]

| Event | Proposed Timing | Example Date |
|---|---|---|
| Deadline for mailing the Notice and Claim Form to Class Members (which date shall be the "Notice Date") | No later than 20 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶5(b)) | February 27, 2023 |
| Deadline for publishing the Summary Notice | No later than 10 business days after the Notice Date (Preliminary Approval Order ¶5(d)) | March 13, 2023 |
| Deadline for filing papers in support of final approval of Settlement and Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing (Preliminary Approval Order ¶25) | April 12, 2023 |
| Deadline for receipt of requests for exclusion or objections | 21 calendar days before the Settlement Hearing (Preliminary Approval Order ¶¶12, 16) | April 26, 2023 |
| Deadline for filing reply papers | 7 calendar days before the Settlement Hearing (Preliminary Approval Order ¶25) | May 10, 2023 |
| Settlement Hearing | 110 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶3) | May 17, 2023 |
| Postmark deadline for submitting Claim Forms | 120 calendar days after the Notice Date (Preliminary Approval Order ¶9) | June 27, 2023 |

[2] The Court need only enter the date of the Settlement Hearing at ¶3 of the proposed Preliminary Approval Order, as all other dates/deadlines referenced below will be set based on either (a) the date of entry of the Preliminary Approval Order or (b) the date chosen by the Court for the Settlement Hearing.

## II.    SUMMARY OF THE LITIGATION

### A.    The Filing of the Action and the
###         Appointment of Lead Plaintiff and Lead Counsel

On January 3, 2020, MissPERS filed a class action complaint, styled *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc., et al.*, Civil Action 4:20-cv-00005 (N.D. Ga.), asserting violations of federal securities laws against Mohawk and certain of its senior executives. (ECF No. 1.) In accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, notice to the public was issued stating the deadline by which putative class members could move the Court for appointment as lead plaintiff.

On March 3, 2020, MissPERS moved for appointment as Lead Plaintiff of this action. (ECF No. 15.) On March 18, 2020, the Court entered an Order appointing MissPERS as Lead Plaintiff, and approving Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel. (ECF No. 18.)

### B.    The Filing of the Complaint and the
###         Briefing of Defendants' Motion to Dismiss

On June 29, 2020, Lead Plaintiff filed and served the Complaint (ECF No. 37) asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Lorberbaum under Section 20(a) of the Exchange Act.

- 5 -

On October 27, 2020, Defendants filed and served a motion to dismiss the Complaint ("Motion to Dismiss") (ECF No. 54), which was fully briefed by January 27, 2021. (ECF Nos. 56, 57.) On September 29, 2021, the Court entered an Order largely denying the Motion to Dismiss. (ECF No. 60.)

On November 12, 2021, Defendants served and filed their Answers, Defenses, and Affirmative Defenses to the Complaint. (ECF No. 64.)

### C.    The Parties Conduct Substantial Discovery

Discovery in the Action commenced in November 2021. The Parties prepared and served initial disclosures, requests for production of documents, and interrogatories, exchanged correspondence concerning discovery issues, and document subpoenas to third parties. Defendants and third parties produced a total of over 800,000 pages of documents to Lead Plaintiff, and Lead Plaintiff produced over 100,000 pages of documents to Defendants.

The Parties conducted seventeen depositions. Lead Plaintiff deposed twelve current and former Mohawk employees and Defendants' expert witness. Defendants deposed two representatives for Lead Plaintiff, two of Lead Plaintiff's investment managers, and Lead Plaintiff's expert witness.

### D.     Lead Plaintiff's Class Certification Motion

On January 26, 2022, Lead Plaintiff filed its motion for class certification (the "Class Certification Motion"). (ECF No. 78.) The Class Certification Motion was accompanied by a report from Lead Plaintiff's expert, Dr. Michael L. Hartzmark, Ph.D., who opined that Mohawk's common stock traded in an efficient market during the Class Period and that per-share damages could be measured for all Class Members using a common methodology. Lead Plaintiff's Class Certification Motion was fully briefed by June 8, 2022. (ECF Nos. 88, 100.)

On November 28, 2022, the Court granted the Class Certification Motion, certifying the Class, appointing Lead Plaintiff as Class Representative, and appointing Lead Counsel as Class Counsel. (ECF No. 113.)

### E.     The Settlement Negotiations

On June 8, 2022, following the submission of written position statements and supporting exhibits, the Parties participated in an in-person, all-day mediation before the mediator, Judge Phillips. At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Judge Phillips but were unable to agree upon the terms of a settlement.

Six months later, following continued discussions with the Parties, Judge Phillips issued a mediator's recommendation that the Parties settle the Action for

$60 million, which the Parties accepted on December 13, 2022. Thereafter, the Parties negotiated and executed the Stipulation, which sets forth the terms and conditions of the Settlement.

## III.   THE PROPOSED SETTLEMENT

The Settlement provides that Defendants will cause $60 million in cash to be paid into an interest-bearing escrow account. If the Settlement is approved, the Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes (the "Net Settlement Fund"), will be distributed among Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Class will receive the full benefit of the $60 million payment, net of Court-approved fees and expenses. There will be no reversion of funds to Defendants or their insurers once the Settlement becomes final. *See* ¶12.

The Settlement applies to the same Class that was certified by the Court in its November 28, 2022 Order. (ECF No. 113.) The Class includes all persons or entities who purchased or otherwise acquired publicly traded common stock of Mohawk during the period from April 28, 2017 through July 25, 2019, inclusive (the "Class Period"), and who were damaged thereby. *See* ¶1(h). Prior to final approval,

- 8 -

members of the Class will be provided the opportunity to object to the Settlement or request exclusion from the Class.

In exchange for the payment of the Settlement Amount, Class Members will release the "Released Plaintiff's Claims." ¶1(pp). The Settlement's release provision is tailored to the Class's claims. Specifically, the release is limited to (1) the actual claims asserted in Complaint; or (2) unasserted claims that could have been brought if they "arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint" and "relate to the purchase or acquisition of publicly traded Mohawk common stock during the Class Period." *Id.*

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

Courts, including the Eleventh Circuit and district courts in it, have long recognized a strong policy and presumption in favor of class action settlements. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). This policy consideration applies especially to securities fraud class actions. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc*., 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("[S]ecurities fraud class actions readily lend themselves to settlement.").

Rule 23(e) requires judicial approval of a compromise of claims brought on a class-wide basis. *See* Fed. R. Civ. P. 23(e). Judicial approval of a class action settlement is a two-step process—*first*, the Court performs a preliminary review of the terms to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice and a hearing, the Court determines whether to grant final approval, *see* Fed. R. Civ. P. 23(e)(2).

Courts grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). Preliminary approval should be granted to a proposed settlement "if it is within range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *See, e.g.*, *Agnone v. Camden Cnty., Ga.*, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

In considering *final* approval of the Settlement, Federal Rule 23(e)(2) provides that the Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

- 10 -

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] Each of these factors is satisfied here.

**B.    The Court "Will Likely Be Able To" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment.

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). The Parties have been intensely litigating this Action for almost three years. Lead Plaintiff achieved this Settlement only after, among other things:

- conducting an extensive pre-suit investigation, which included a

---

[3] At final approval the Court will also consider the Eleventh Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

detailed review and analysis of the voluminous public record and interviews of dozens of former Mohawk employees;

- preparing and filing a detailed 194-page amended complaint;

- successfully opposing Defendants' motion to dismiss the Complaint;

- obtaining certification of the Class through a contested class certification motion; and

- conducting robust discovery, including obtaining and reviewing over 800,000 pages of documents produced by Defendants and non-parties, and deposing twelve current and former Mohawk employees and Defendants' expert witness.

As a result of these efforts, Lead Counsel and Lead Plaintiff—both of whom have considerable experience in securities litigation—were fully aware of the strengths and weaknesses of the asserted claims at the time of the Settlement. Lead Counsel and Lead Plaintiff conducted the settlement negotiations seeking to achieve the best possible result for the Class, while accounting for the risks of continued litigation. *See Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) ("The Court should give 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'").

- 12 -

The Parties' settlement negotiations were at arm's-length and facilitated by Judge Phillips, one of the most experienced securities class action mediators in the country. The mediator's efforts culminated in the Parties' agreement to resolve the Action pursuant to a mediator's recommendation for $60 million, which the Parties accepted on a double-blind basis. These facts further support the conclusion that the Settlement is fair and adequate. *Parker v. Stoneledge Furniture, LLC*, 2022 WL 738591, at *2 (M.D. Fla. Feb. 17, 2022) (granting preliminary approval of settlement after finding "no evidence of any fraud or collusion with respect to the parties' settlement . . . [which] was obtained after an arm's length negotiation with an experienced and well-respected mediator").

### 2.   The Settlement's Terms Are Adequate and Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Here, the Settlement represents a very favorable result for the Class. Furthermore, the proposed plan for allocating the Settlement treats Class Members equitably.

- 13 -

**(a)      The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation**

In assessing a class action settlement, courts consider the plaintiff's likelihood of success on the merits, balanced against the relief offered through the settlement. In making this assessment, the court need not determine whether the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011). Rather, "the Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005).

Here, the proposed Settlement provides for a cash payment of $60 million. The Settlement is an excellent result for Class Members, especially considering the significant risks of continued litigation. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) ("Courts have repeatedly noted that [s]tockholder litigation is notably difficult and notoriously uncertain."); *see also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (M.D. Fla. Mar. 23, 2021) ("[T]here is an inherent risk in any litigation but particularly so in securities class action litigation.").

- 14 -

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the very substantial risks they would face in establishing liability and damages. Lead Plaintiff would have faced risks in establishing the required elements of falsity, scienter, loss causation, and damages as required to survive a motion for summary judgment and prevail at trial.

As to "falsity," Defendants would continue to assert that they never engaged in the alleged misconduct. With respect to Lead Plaintiff's "Saturday Scheme" allegations, Defendants would continue to argue that they did not improperly recognize any revenues associated with products that were not actually delivered to customers, and that their financial results were approved by Mohawk's well-qualified, outside auditor. In addition, Defendants would continue to argue that—even crediting Lead Plaintiff's allegations—the amount of revenue allegedly mis-recognized was too small to materially impact Mohawk's overall financials.

Likewise, as to Lead Plaintiff's LVT-related allegations, Defendants would continue to argue that they promptly and truthfully disclosed Mohawk's technical issues with domestic LVT production throughout the Class Period. Defendants also would argue that Mohawk's LVT sales made up only a small fraction of total Company-wide sales, and so any alleged misstatements concerning Mohawk's domestic LVT production would necessarily be immaterial to investors. Further,

Defendants would continue to argue that Lead Plaintiff's falsity allegations are undermined by the fact that the Company's auditor never required Mohawk to restate any of its financials. If the Court or a jury were to have found that Defendants' statements were not materially false or misleading, it would have reduced or even eliminated any recovery for investors.

As to "scienter," Defendants would continue to argue that they did not act with any fraudulent intent. Defendants would argue, among other things, that any inference of scienter is undermined by the fact Defendant Lorberbaum has been and remains Mohawk's largest shareholder and did not engage in any suspicious insider stock sales during the Class Period. Defendants would also cite Mohawk's announcement of a $500 million stock repurchase program in October 2018 as being inconsistent with Lead Plaintiff's allegations that Mohawk intended to defraud investors. In addition, Defendants would likely point to contemporaneous documents produced during discovery that they contend undermine any inference that Defendant Lorberbaum and Mohawk senior leadership knew of and condoned any fraudulent schemes. If a jury were to accept any of these arguments and find that Defendants did not act with the requisite state of fraudulent intent, investors would recover nothing.

As to "loss causation," Defendants would continue to argue that none of the stock price declines on the alleged corrective disclosure dates can be connected to the fraud alleged in the Complaint. Specifically, Defendants would argue that any impacts attributable to Lead Plaintiff's allegations—*i.e.*, the "Saturday Scheme" and the Company's domestic LVT startup issues—were immaterial in light of Mohawk's overall revenues and thus could not have impacted Mohawk's stock price on the dates of the alleged corrective disclosures. Defendants would also argue that any stock price declines on the corrective disclosure dates were due to the disclosure of negative information unrelated to the alleged fraud, including information concerning the Company's carpet and ceramic businesses and information concerning industry-wide factors such as raw material inflation. If Defendants prevailed on any of these arguments, any recovery in this case would have been significantly reduced or eliminated.

With regard to "damages," Lead Plaintiff and the Class also faced significant challenges. Each of the alleged corrective disclosures was associated with an earnings release, and thus many facts relevant to Mohawk's valuation—including negative facts unrelated to the alleged fraud—were released contemporaneously with the allegedly corrective information. To quantify the impact of the alleged fraud-related disclosures, Lead Plaintiff would need to successfully disaggregate the

stock price declines on the alleged corrective disclosure dates. Any such quantification would have been a hotly contested topic, with Defendants arguing that, at most, only a small fraction of the stock price declines on the alleged corrective disclosure dates were related to the alleged fraud. Resolving these issues would have involved an inherently unpredictable "battle of the experts." If Defendants were to have prevailed in their disaggregation arguments, damages would have been significantly reduced or eliminated altogether.

On all of these issues, Lead Plaintiff would have to prevail at several stages— at summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow—which could take years. The Settlement avoids these risks and provides a prompt and certain benefit to the Class.

Through the Settlement, investors will recover a meaningful amount, and far greater than in most securities class actions. Lead Plaintiff estimates the maximum potential realistic damages in this case—if investors were to prevail on all aspects of their claims and all corrective disclosures at trial, accounting only for issues of loss causation—is approximately $350 million to $500 million.[4] Thus, the $60 million Settlement amount represents approximately 12% to 17% of Lead Plaintiff's

---

[4] Defendants, of course, dispute that Lead Plaintiff or investors were damaged, contest Lead Plaintiff's class-wide damage estimates, and believe Lead Plaintiff and investors are not entitled to recover through this Action.

estimated maximum potential realistic class-wide damages, aggressively assuming that investors prevailed on all of the alleged misstatements during the entire Class Period. This represents an excellent recovery for Class Members, especially when considered in light of the real risk of no-or-lesser recovery and the typical level of recovery in securities class actions. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, at *9 (S.D. Fla. Oct. 14, 2016) (finding $24 million settlement that represented "5.5% of th[e] best-case scenario" was "an excellent recovery, returning more than triple the average settlement in cases of this size"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) ("The [$40.3 million] settlement . . . represents a recovery of approximately 6.25% of estimated damages. This is at the higher end of the range of reasonableness of recovery in class actions securities litigations.").

### (b)    The Proposed Settlement Does Not Unjustly Favor Any Class Member

The Court also will assess the Settlement's effectiveness in equitably distributing relief to members of the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will earn approval. The proposed Plan of Allocation (the "Plan," set forth in full in the Notice) treats Class Members "equitably relative to each other" based on their transactions in publicly traded Mohawk common stock. *See* Fed. R. Civ. P. 23(e)(2)(D).

The Plan of Allocation is consistent with plans of allocation regularly approved by courts in securities class actions. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp*, 2016 WL 10518902, at * 5 (S.D. Fla. Oct. 17, 2016) (approving similar plan of allocation); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *14 (S.D.N.Y. July 21, 2020) (same). The Plan provides for distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in publicly traded Mohawk common stock. The formula to apportion the Net Settlement Fund among Class Members is based on the estimated amount of artificial price inflation in Mohawk common stock during the Class Period that was allegedly caused by Defendants' misconduct.[5] Once the Claims Administrator has processed all submitted claims it will make distributions to eligible Class Members, until additional re-distributions are no longer cost effective. At such time, any remaining balance will be contributed to a non-sectarian, not-for-profit, 501(c)(3) organization approved by the Court.

---

[5] The calculation of "Recognized Loss Amounts" under the Plan will depend on when the claimant purchased and/or sold the shares, whether the claimant held the shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when the claimant purchased, sold, or held them. Under the Plan, a claimant's "Recognized Claim" will be the sum of the claimant's Recognized Loss Amounts, and the Net Settlement Fund will be allocated to Class Members on a *pro rata* basis based on the relative size of their Recognized Claims.

- 20 -

### (c) The Anticipated Request for Attorneys' Fees Is Reasonable

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, plus payment of expenses not to exceed $1,000,000. A 25% fee award is reasonable and supported by case law in this Circuit. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) ("25% is generally recognized as a reasonable fee award in common fund cases.").

By granting preliminary approval, the Court does not in any way pass upon the reasonableness of any subsequent fee or expense application, which will be decided at the Settlement Hearing. Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the schedule set by the Preliminary Approval Order, and Class Members will have an opportunity to file any objections to the fee request before the Settlement Hearing, where the Court will decide what that fee should be.

### (d) Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, the Parties have entered into a confidential Supplemental Agreement regarding requests for exclusion—i.e., "opt-outs." *See* ¶35. The Supplemental Agreement sets forth the conditions under which Mohawk can terminate the Settlement if the opt-outs exceed an agreed-upon threshold. "This

type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *Signet Jewelers*, 2020 WL 4196468, at *13.[6]

## V.   THE PROPOSED FORM AND METHOD OF NOTICE ARE APPROPRIATE AND SHOULD BE APPROVED

Rule 23(c)(2)(B) requires that notice to class members of the pendency of the Action and their right to request exclusion be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1)(B) requires that notice of a class action settlement be directed "in a reasonable manner to all class members who would be bound by the" proposed settlement.

The proposed Notice and the method of disseminating the Notice to potential Class Members satisfy these standards.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) by first-class mail to all

---

[6] The Supplemental Agreement is not being made public solely to avoid incentivizing opt-outs from attempting to leverage the threshold to exact individual settlements. As now-Circuit Judge Carnes observed, in *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, it is unnecessary to make similar agreements public. 258 F.R.D. 545, 560 (N.D. Ga. 2007). The Supplemental Agreement may be disclosed to the Court *in camera*.

Class Members who can be identified with reasonable effort.[7] The Claims Administrator will mail Notices to shareholders identified by Mohawk's record holder list and will also utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice to potential Class Members. In addition, a Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire*.

Lead Counsel will also make copies of the Notice and Claim Form available for download via the website to be established by the Claims Administrator, www.MohawkIndustriesSecuritiesLitigation.com. The website will provide copies of the Complaint, the Stipulation, and other documents related to the Action and proposed Settlement.[8]

The proposed Notice includes all the information required by Rule 23 and the PSLRA. The proposed Notice describes the essential terms of the Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation;

---

[7] Lead Plaintiff requests that the Court approve the retention of JND Legal Administration ("JND") as the Claims Administrator for this case. JND has successfully administered numerous complex securities class action settlements in this Circuit and elsewhere. *See* www.jndla.com/cases/class-action-administration.

[8] The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq. See* ¶19.

(2) the definition of the Class and who is excluded from the Class; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement; (5) the estimated average recovery per damaged share; (6) the Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval; (9) the proposed plan for allocating the Settlement proceeds to the Class; and (10) the date, time, and place of the final settlement hearing. Further, the proposed Notice discusses the rights Class Members have in connection with the Settlement, and states the deadlines for exercising those rights, including: (1) the right to request exclusion from the Class and the method for doing so; (2) Class Members' right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Claim Form.

Courts routinely find that comparable notice procedures meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement at 6-7, *In re Equifax Inc. Sec. Litig.*, No. 1:17-cv-03463-TWT (N.D. Ga. Feb. 25, 2020), ECF No. 163; Final Judgment at 5-6, *In re Equifax Inc. Sec. Litig.*, No. 1:17-CV-03463-TWT (N.D. Ga. June 26, 2020), ECF No. 182 (approving comparable notice

plan); *In re Piedmont Off. Realty Trust Inc. Sec. Litig.*, 2013 WL 12205681, at *2-3 (N.D. Ga. Jan. 2, 2013); *In re Piedmont Off. Realty Trust Inc. Sec. Litig.*, 2013 WL 12205636, at *3 (N.D. Ga. Apr. 18, 2013) (same). Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiff respectfully requests that the Court also approve the proposed form and method of giving notice to the Class.

## VI.   CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the Parties' agreed-upon proposed Preliminary Approval Order submitted herewith, which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of notice to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

Dated: January 20, 2023                    Respectfully submitted,

*/s/ John C. Browne*
John C. Browne (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY  10020
Tel: (212) 554-1400
Fax: (212) 554-1444
JohnB@blbglaw.com

-and-

Jonathan D. Uslaner (admitted *pro hac vice*)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA  90067

- 25 -

Tel: (310) 819-3472
JonathanU@blbglaw.com

*Lead Counsel for Lead Plaintiff and the
Class*

H. Lamar Mixson
Georgia Bar No. 514012
Amanda Kay Seals
Georgia Bar No. 502720
**BONDURANT MIXSON &
ELMORE, LLP**
1201 West Peachtree Street NW,
Suite 3900
Atlanta, GA  30309
Tel: (404) 881-4100
Fax: (404) 881-4111
mixson@bmelaw.com
seals@bmelaw.com

*Liaison Counsel for Lead Plaintiff Public
Employees' Retirement System of Mississippi
and the Class*

John L. Davidson (admitted *pro hac vice*)
**DAVIDSON BOWIE, PLLC**
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, MS  39157
Tel: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public
Employees' Retirement System of Mississippi*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared in

Times New Roman, 14-point font in compliance with Local Rule 5.1(C).

                                        */s/ John C. Browne*
                                        John C. Browne (admitted *pro hac vice*)

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023, I filed the foregoing LEAD PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE OF SETTLEMENT using the Court's CM/ECF system, which will automatically send notification to counsel of record.


*/s/ John C. Browne*
John C. Browne (admitted *pro hac vice*)