1

The following is the PDF of an official transcript.  Official transcripts may be filed in CM/ECF only by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days.  You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PUBLIC EMPLOYEES' RETIREMENT      )
SYSTEM OF MISSISSIPPI,            )
                                 )
            Plaintiff,           )
        v.                       )   CIVIL ACTION
                                 )   FILE NO. 4:20-CV-00005-VMC
MOHAWK INDUSTRIES, INC. and      )
JEFFREY S. LORBERBAUM,           )
                                 )
            Defendants.          )   TELEPHONE CONFERENCE
_____)

-------------------------------------------------------------

BEFORE THE HONORABLE VICTORIA M. CALVERT

TRANSCRIPT OF PROCEEDINGS

JANUARY 27, 2023

-------------------------------------------------------------

*Proceedings recorded by mechanical stenography*
*and computer-aided transcript produced by*

WYNETTE C. BLATHERS, RMR, CRR
Official Court Reporter
1714 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, Georgia  30303
(404) 215-1547

APPEARANCES:

For the Plaintiff:          JOHN C. BROWNE, ESQ.
                            Bernstein Litowitz Berger
                            & Grossmann, LLP
                            1251 Avenue of the Americas
                            New York, New York  10020

                            JONATHAN D. USLANER, ESQ.
                            Bernstein Litowitz Berger
                            & Grossmann, LLP
                            2121 Avenue of the Stars
                            Los Angeles, California  90067

                            AMANDA K. SEALS, ESQ.
                            Bondurant Mixson & Elmore, LLP
                            1201 West Peachtree Street NW
                            Suite 3900
                            Atlanta, Georgia  30309

For the Defendants:         ELIZABETH G. CLARK, ESQ.
                            ROBERT R. LONG IV, ESQ.
                            Alston & Bird LLP
                            One Atlantic Center
                            1201 West Peachtree Street
                            Suite 4900
                            Atlanta, Georgia  30309

                            SCOTT E. ZWEIGEL, ESQ.
                            Parker, Hudson, Rainer & Dobbs LLP
                            303 Peachtree Street NE
                            Suite 3600
                            Atlanta, Georgia  30308

Friday Morning Session

January 27, 2023

10:00 a.m.

- - -

P R O C E E D I N G S

THE COURT:  Good morning, everyone.  This is Victoria Calvert.  I appreciate you all being available.  This is just a call to discuss the motion for an order preliminarily approving class action settlement.  I know there are a lot of people who are on the call, so I think I'm going to leave it to lead counsel for lead plaintiff in the class to introduce themselves and anyone else who you'd like to be recognized.  And then I'll move on to liaison counsel for lead plaintiff and then counsel for the defendants.  So go ahead -- is it Mr. Brown?  Go ahead.

MR. USLANER:  Thank you, your Honor.  This is Jonathan Uslaner from lead counsel, Bernstein Litowitz Berger & Grossmann for lead plaintiff in the class.  Along with me is my partner, John Browne, from Bernstein Litowitz Berger & Grossmann, as well as the liaison counsel, the Bondurant firm, Ms. Amanda Seals.  Thank you to your Honor and your staff for making the time for us on this Friday morning.

THE COURT:  Sure.  You're welcome.  And is there anyone on for counsel for the defendants?

MR. LONG:  Your Honor, this is Robert -- I'm sorry.

Go ahead, Elizabeth.

MS. CLARK:  Yes, your Honor.  This is Elizabeth Clark and Robert Long from Alston & Bird on behalf of Defendant Mohawk Industries.

MR. ZWEIGEL:  Good morning, Judge Calvert.  This is Scott Zweigel on behalf of Defendant Jeffrey Lorberbaum.  It's a pleasure to appear before you this morning.

THE COURT:  All right.  Thank you.  Good morning to everyone.  So I have a few questions or maybe several questions about the notice, and I am anticipating that lead counsel for lead plaintiff, Mr. Uslaner, would be --

MR. USLANER:  That's correct, your Honor.

THE COURT:  Okay.  Thank you -- would be answering a lot of them, but I just figured everyone should be invited. So I'm just going to run down my list of questions.

The first is related to the notice.  My reading of the PSLRA is that there should be kind of a summary page, a one-page document that kind of has bullet points that kind of summarize what's going to be in the notice, and I did not see that in the proposed documents that were filed.  Are you all planning to draft something like that?

MR. USLANER:  So, your Honor, I'll start by saying the notice here is consistent with the notices that are sent out in most securities class actions, including the Equifax and Fleetcor class actions in the district.  The notice here

consists of two types of notice.  One is a summary notice, which contains the basic details with respect to the notice, and that is included in the materials submitted to your Honor that's Exhibit 3 to the proposed order, which I believe is what your Honor may be referring to, as well as there's a long form notice which gets sent out to the individual class members.  And that's the long form notice, which is Exhibit 1.

And Exhibit 1 on page 6 contains the summary of the contents of the long form notice, which we will, when it's finalized, include the page numbers to direct potential class members to the appropriate sections of the long form notice to address any answers that they may have.

THE COURT:  All right.  What I was envisioning and what I've seen -- and just so you all know, this is my first class action settlement, so I went to the FJC's website.  And so they kind of have these sort of one-page cover pages that are just to the point, and that's what I was envisioning. What we'll do is we can email them -- email you the examples that we were looking at just so you can see.  I understand you're saying it's consistent with what has been done.  I just was looking for something that was a little bit more brief in the explanation because without knowing who is going to receive these documents, it was pretty dense.

MR. USLANER:  Absolutely, your Honor.  We'd be happy to include on the long form notice a brief in a summary page

outlining the contents and the nature of the notice in the matter at hand if your Honor would like.

THE COURT:  All right.  Well, we'll send you the examples afterwards, and then you all can look at it.

The other thing was in terms of the settlement, it looks like it says that it's going to be 60 million, but then it doesn't have it broken down sort of per share, which seems to be something that is included.  So it would say a settlement will provide 60 million and then maybe in parentheses 94 cents per share.  That seems to be in some of the other notices that we found.

MR. USLANER:  Absolutely, your Honor.  The information with respect to the per share recovery is contained in the notice, but it is not set forth in the earlier pages, and we'd be happy to add that to some of the earlier pages.

THE COURT:  Great.  And I think the same is done with respect to the attorney's fees, maybe something that says that it could be -- what is it?  25 cents per share?  At least 25 cents per share?

MR. USLANER:  It's an approximation of 25 cents per share, your Honor.

THE COURT:  Right.

MR. USLANER:  And we'd be happy as well to include that in the earlier pages of the notice so it's up front for

the reader.

THE COURT:  Thank you.  With respect to the envelopes that will be sent out, will they say anything on the outside of the envelope to alert the reader that you could get a payment?

MR. USLANER:  It will, your Honor.

THE COURT:  Okay.  All right.  And then with respect to the class members, is it correct that you're relying on Mohawk to provide that?

MR. USLANER:  That's a great question, your Honor.  So Mohawk will be providing us with a list of the record holders.  The reality is that most of the shares are held in what's called street name, meaning that it's not evident from the records of Mohawk who the individual shareholder is.

So as a result, in addition to sending notice out to the record holders, we threw up the claims administrator will send notices to the brokers and nominees, including, for example, the likes of Wells Fargo and other major banks.  And they will identify for us potential settlement class members, and then we will as well send notices to those potential class members alerting them to the settlement and how to proceed with submitting their claim form and getting us the necessary information so that they can get their money.

THE COURT:  And is there any mechanism or controls on the brokers if -- to make sure that they do a good job trying

to identify who these people are?

MR. USLANER:  Absolutely, your Honor.  In terms of the controls, the preliminary order requires the brokers to provide that information as well as the claims administrator is highly involved in the process subject to our oversight to ensure that they provide us with the necessary information.

And then in addition to that form of notice, we also provide notice through a PR newswire as well as a Wall Street Journal article announcing the settlement and alerting class members to how they go about getting the necessary documentation to submit their claim information.

THE COURT:  All right.  Thank you.  Is there any thought about using email notice at some point or is it just going to be mail and publication?

MR. USLANER:  With respect to securities class actions, they have traditionally been done through the mail and notice through publication, as well as our firm's website and the website put out by the claims administrator.  It's not done through email.

THE COURT:  Okay.  And is it the claims administrator who's going to be keeping records of the notice that was provided --

MR. USLANER:  Yes, your Honor, and --

THE COURT:  -- who --

MR. USLANER:  I'm so sorry.  I didn't mean to

interrupt you.

THE COURT:  No, you go ahead.  Go ahead.

MR. USLANER:  Yes, the claims administrator will keep detailed records of who received the notice packets, and we will be engaged with the claims administrator throughout the process.  I typically will have weekly conversations with the claims administrator as well as the settlement department of our firm to ensure that they're executing on the notice program and answering any questions that potential settlement members may have.

THE COURT:  Okay.  How did you all decide to select JNF as the claims administrator?

MR. USLANER:  That's a great question, your Honor. For each of our settlements we engage in a competitive bidding process with respect to claims administrators.  We send out notice of a potential settlement, and typically there's three or four of the major claims administrators who we send out such bidding to.  They respond to us with their bids and how they intend on doing the claims administration, and then we will select from the bidders.

In this case we chose JND, which was also the claims administrator for the Equifax securities class action in the district, which was, I believe, the largest class action settlement in the district.  But we've also chosen, for example, Ethic for the Fleetcor securities class action in the

district, and we've selected other claims administrators in different contexts. But we thought that JND was the appropriate claims administrator for this case based on the competitive bidding process and their qualifications.

THE COURT: All right. And who will keep records of the costs they incur? Are they sending you statements on a periodic basis or is it kind of once it's all done?

MR. USLANER: That's a great question. We will be receiving updated invoices from them throughout the process, and we received an initial estimate of their anticipated costs associated with the distributions of the notice, the audit integrity process and the like, and that estimated cost based on their analysis, which assumes a hundred thousand notices will be mailed and approximately 25,000 claims will be filed was $410,000.

THE COURT: Thank you. Turning back to the notice, there was some language throughout it for when class members are going to submit claims. It says that it must be postmarked and then in parentheses or received by no later than. I thought that language was a little confusing, only if I were reading it, I would think do I need to have it postmarked by X date or do they need to receive it? And I understand that it was written that way because you're thinking postmarked if they mail it, but --

MR. USLANER: Correct.

THE COURT: -- I was just wondering if you all can add some clarifying language to that.

MR. USLANER: Absolutely, your Honor. That's a good point. You know, there are two mechanisms in which the claimant can submit their information. They can mail it as well as they can submit the information electronically, but we'll make sure to clarify that. That's a great point.

THE COURT: And then in terms of additional documentation, I'm looking for the -- I think there's a reference to going to a website to see what sort of additional supporting documentation people can provide. Does the website go into detail about what types of electronic files would be acceptable, such as screenshots or photographs?

MR. USLANER: It will, and it does, your Honor, as well as that language is intended to notify the claimants that they can also receive additional documentation concerning this matter, such as the extent they want to review the complaint, the motion to dismiss decision, class certification decision and the like. It's all there for them to analyze if they so chose.

THE COURT: All right. And will a class member have the opportunity to fix any incomplete or ineffective claim form?

MR. USLANER: Absolutely, your Honor. So how the process works is the claimant submits their claim form. Then

12

after that, the claims administrator will identify any, quote unquote, deficiencies in the submission, and the claims administrator will notify the claimants and work with the claimants in an effort to resolve the perceived deficiencies, whether that includes obtaining additional information, answering any questions and any ambiguities and the like to ensure the most people who are eligible to participate in the settlement receive their funds.

THE COURT:  All right.  And are confirmation postcards mailed to those who submit online as well or will -- people who submit via email will or -- I'm sorry -- online, will they get an email back or is everyone going to be just getting these postcards?

MR. USLANER:  That's a good question.  My understanding, your Honor, is that the folks who submit their information electronically receive an electronic response.

THE COURT:  All right.  And what happens if someone mails it in but doesn't get the confirmation postcard?  Would they be given additional time to resubmit the claim?

MR. USLANER:  In instances such as what your Honor is identifying, we work with the claimants and the claims administrator to resolve any technical issues of those nature so that people are fairly treated and equitably treated and receive funds who are eligible to do so.

THE COURT:  All right.  And for opting out, can a

claimant opt out via the online form or do they have to opt out by mail only?

MR. USLANER:  I think in terms of how it's stated in the notice, it contemplates a mailing.  However, as a practical matter, to the extent that we were to receive an opt-out via email, that would be satisfactory from our perspective, and we can clarify that in the notice to the extent your Honor would like us to.

THE COURT:  Okay.  Yes, I would say go ahead and do that.

MR. USLANER:  We will do that.

THE COURT:  And I think the opt-out language has that same language I mentioned before with received by an X date, and I think submitted or postmarked is probably easier or better knowing how our mail system works.

MR. USLANER:  That makes good sense, your Honor.  I have the same mailman you do, I suppose.  We will make that change as well.

THE COURT:  All right.  And then I believe the -- there's sort of a 10-dollar no payment of claims less than $10, and I just wanted to hear how you all arrived at the 10-dollar amount.

MR. USLANER:  Absolutely, your Honor.  So we've discussed this with the claims administrator in terms of how small the claim would be to where it would not be economically

14

worthwhile for the class to go through the process of providing the claimants with the money associated with their claim which is not economically feasible for the class to support -- not support, that's the wrong term -- to pay and to go through the claims administration process for claims of that size.  It's really just an analysis performed to determine what is economically feasible for the class.  We don't want a situation where a big chunk of the settlement fund goes to paying incredibly small claims.  That's the purpose.

THE COURT:  All right.  Thank you.  And then on the cy pres provision, are there going to be any efforts to redistribute before that provision kicks in so if you don't get as many claimants as you expect?

MR. USLANER:  That's a great question, your Honor, and as a -- to complete the answer is yes.  Once the initial distribution is made, there will be -- well, there typically is a subsequent distribution to allocate any funds based on, for example, if a check isn't cashed or for whatever reason if additional funds are in the settlement fund, there will be most likely as a -- virtually every settlement distribution I've been dealing with a subsequent distribution and the cy pres award would only follow that.

I should note, your Honor, that prior to the distributions we will be submitting to your Honor a

distribution motion authorizing the distribution and setting forth how much remains to be distributed.

At the end of the process, as a practical matter based on experience, there is virtually no money that goes to the cy pres recipient because the distribution is effective either through the first distribution, second distribution, and to the extent there's a third distribution.  And to the extent that any settlement monies remain, it typically is in the magnitude of a few thousand dollars.  And that will go to the cy pres recipient, and we will identify that cy pres recipient to you, your Honor, before we actually distribute the funds to the cy pres recipient.  Typically it's an entity that is associated with securities issues and then ensuring people aren't defrauded.

THE COURT:  All right.  That sounds good.

Just looking back over my notes, I forgot to ask about mail.  If mail is returned as undeliverable to a claimant, what happens then?

MR. USLANER:  That's a good question, your Honor. The claims administrator does their darndest to identify why the mail was not delivered, which includes looking at public information with respect to changes in address and the like. So there is very much an effort to try to track down the potential claimants, the claims administrator, through their efforts and access to databases concerning addresses,

endeavors to do so.

THE COURT:  All right.  Thank you.  Will you all just hold on.  I just want to check my notes again and make sure I didn't forget anything before I let you go.

(Brief Pause.)

THE COURT:  All right.  I have asked all of my questions, and I appreciate all of the information.  We will email you the examples we were talking about and then just give you all -- you all let me know, let us know when you can turn it around, and we'll get the order entered.

MR. USLANER:  Wonderful, your Honor.  And so in terms of next steps, if your Honor would like once we receive the exemplar that you noted, we will modify the notice accordingly, and then we'll, if your Honor permits, we will then resubmit the proposed order with the revised notice addressing all these issues for your Honor's consideration.

Does that make sense?

THE COURT:  Yes, it does.

MR. USLANER:  Perfect.  Well, thank you so much, your Honor.  Do you need any additional information from us or did this address the open items?

THE COURT:  It did address the open items.  I have everything that I need.  Thank you all for being available, everyone on the call, and I hope y'all have a good weekend.

MR. USLANER:  Thank you.  We really do appreciate the

17

insightful questions, and we'll make sure to address the notice.  Have a wonderful weekend.

THE COURT:  You to.  Bye-bye, everyone.

(Whereupon, the proceedings were adjourned at 10:25 a.m.)

- - -

18

REPORTERS CERTIFICATE

I, Wynette C. Blathers, Official Court Reporter for the United States District Court for the Northern District of Georgia, with offices at Atlanta, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on January 27, 2023, in the matter of PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI v. MOHAWK INDUSTRIES, INC. et al., Case No. 4:20-CV-00005-VMC; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript (Pages 1 through 18) is a true and accurate record of the proceedings.

This the 7th day of March, 2023.

_____
/s/ Wynette C. Blathers, RMR, CRR
    Official Court Reporter