**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>    v.<br><br>MOHAWK INDUSTRIES, INC. and JEFFREY S. LORBERBAUM,<br><br>        Defendants. | Civ. A. No. 4:20-cv-00005-VMC |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   ARGUMENT.................................................................................................4

    A.    The Appropriate Method For Awarding Attorneys' Fees Is Based on a Reasonable Percentage of the Recovery................................ 4

    B.    The Requested Fee of 25% is Fair and Reasonable ................................. 5

    C.    Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval.......................................................................................... 7

    D.    The Relevant Factors Confirm That the Requested Fee is Fair and Reasonable ..................................................................................... 7

        1.    The Time and Labor Required....................................................8

        2.    The Novelty and Difficulty of the Issues.................................11

        3.    The Skill, Experience, Reputation and Ability of the Attorneys.................................................................................15

        4.    The Preclusion of Other Employment ......................................16

        5.    The Customary and Contingent Nature of the Fee ...................17

        6.    The Amount Involved and Results Achieved............................18

        7.    The Undesirability of the Case .................................................19

        8.    Awards in Similar Cases...........................................................20

        9.    The Time Required to Reach Settlement...................................21

        10.   The Reaction of the Class ........................................................21

i

    E.    Lead Counsel's Request for Reimbursement of Litigation Expenses is Fair and Reasonable ................................................................ 22

    F.    Lead Plaintiff's Request for Payment of Costs Directly Related to Its Representation of the Class Is Fair and Reasonable ..................... 23

III.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec.*
*Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014) ...............................................................24

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .....................................18

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.
1990) ...................................................................................................17

*Billitteri v. Sec. Am., Inc.*,
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) .......................................6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................4

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ....................................................passim

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
587 F. Supp. 2d 1266 (N.D. Ga. 2008)...............................................22

*In re Carter's, Inc. Sec. Litig.*,
2012 WL 12877943 (N.D. Ga. May 31, 2012).......................................7

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011)...............................................17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2012 WL 12540344 (N.D. Ga. Oct. 26, 2016) .........................6, 11, 16

*David v. Am. Suzuki Motor Corp.*,
2010 WL 1628362 (S.D. Fla. Apr. 15, 2010).....................................15

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................4

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in
    part by* 999 F.3d 1247 (11th Cir. 2021)................................................5, 11, 17, 23

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) .............................................................4, 5, 8, 20

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......................................................10

*In re Flowers Foods, Inc. Sec. Litig.*,
    2019 WL 6771749 (M.D. Ga. Dec. 11, 2019).......................................................24

*In re Friedman's, Inc. Sec. Litig.*,
    2009 WL 1456698 (N.D. Ga. May 22, 2009)....................................................17, 18

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) .........................................................................11

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...........................................................................8, 25

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. Sept. 17, 2020) ...........................................................25

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions
    Fin. Corp.*,
    2015 WL 5626414 (N.D. Ala. Sept. 14, 2015).......................................................5

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).......................................................24

*Maz Partners LP v. First Choice Healthcare Sols., Inc.*,
    Case No. 6:19-cv-00619-PGB-LRH (M.D. Fla. Aug. 2, 2021),
    ECF No. 81 .........................................................................................................25

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
    2012 WL 12903758 (D. Minn. Nov. 8, 2012)........................................................6

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)................................................................................10

*Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*,
   MDL No. 2036) 2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar.
   18, 2013) .................................................................................................6

*In re NetBank, Inc. Sec. Litig.*,
   2011 WL 13353222 (N.D. Ga. Nov. 9, 2011)................................11, 22

*Norman v. Hous. Auth. of City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) .............................................................17

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................19

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007)...................................................11

*In re Rayonier Inc. Sec. Litig.*,
   2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) .......................................5, 6

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ..............................................11, 17, 20

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .............................................................18

*In re Synovus Fin. Corp.*,
   2014 WL 12756149 (N.D. Ga. Nov. 18, 2014).....................................24

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 14, 2016) ................................19, 20

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ...........................................................5, 10

**STATUTES**

15 U.S.C. § 78u-4.................................................................................23, 25

Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully submits this memorandum of law in support of its motion, on behalf of Plaintiff's Counsel, for an award of attorneys' fees in the amount of 25% of the Settlement Fund, net of Court-approved Litigation Expenses. Lead Counsel also seeks payment of $691,551.66 for Litigation Expenses incurred by Plaintiff's Counsel and $32,450.00 for costs incurred by Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") directly related to its representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement provides for a cash payment of $60,000,000.00 in exchange for the resolution of all claims in the Action and represents an excellent result for the Class. As noted in the accompanying Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated January 13, 2023 (the "Stipulation") (ECF No. 119-1), or in the Declaration of John C. Browne in Support of (i) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (ii) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Browne Declaration" or "Browne Decl."), filed herewith. Citations to "¶ _" in this memorandum refer to paragraphs in the Browne Declaration and citations to "Ex. _" refer to exhibits in the Browne Declaration.

of Allocation, this Settlement, if approved, would be the fifth largest securities class action recovery in Georgia's history. This recovery was achieved after extensive, highly-contested litigation, including significant document and deposition discovery, against highly skilled defense counsel. Working on a fully contingent basis, Plaintiff's Counsel faced numerous challenges to proving liability, loss causation, and damages that raised serious risks that there would be no recovery or a significantly lesser recovery than the Settlement.

The litigation's prosecution and settlement required extensive efforts on the part of Plaintiff's Counsel. Among other things, Plaintiff's Counsel: conducted a comprehensive investigation into the alleged fraud and prepared a detailed, 193-page amended complaint based on it; successfully opposed Defendants' motion to dismiss; obtained class certification through a contested class certification motion, which included the exchange of detailed expert reports; conducted robust document discovery, including the review of nearly a million pages of documents produced by Defendants and third parties; took or defended seventeen depositions of current and former Mohawk executives, Lead Plaintiff representatives, and experts regarding loss causation, damages, and market efficiency; and engaged in extensive settlement negotiations, including a full-day mediation session and months of follow-up

2

discussions, under the guidance of a highly experienced and respected mediator, former U.S. District Court Judge Layn R. Phillips.[2]

As compensation for Plaintiff's Counsel's considerable efforts on behalf of the Class on a fully contingent basis, Lead Counsel seeks attorneys' fees in the amount of 25% of the net Settlement Fund. This is consistent with the "25% benchmark" that the Eleventh Circuit has established as presumptively reasonable and with fee percentages that courts in this Circuit have awarded in similar securities and other complex class actions. The requested fee also represents a multiplier of just 1.01 on Plaintiff's Counsel's lodestar, which is at the low end of the range of multipliers typically awarded in class actions with significant contingency risks such as this one. In addition, the expenses for which Plaintiff's Counsel seek payment were reasonable and necessary for the Action's successful prosecution.

Lead Counsel's application has the support of Lead Plaintiff. Lead Plaintiff is a sophisticated institutional investor that actively supervised the Action and has endorsed the requested fee as fair and reasonable in light of the result achieved, the

---

[2] The Browne Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for detailed descriptions of, *inter alia*: the history, prosecution, and settlement of the Action (¶¶ 11-57); the risks and uncertainties of continued litigation of Action (¶¶ 58-86); and the services Plaintiff's Counsel provided for the benefit of the Settlement Class (¶¶ 4, 11-14, 23, 31-33, 36-41, 43-45, 47, 49, 55, 56, 96, 109).

quality of the work counsel performed, and the litigation's risks. *See* Declaration of Tricia Beale on behalf of MissPERS (Ex. 1), at ¶ 10.

For the reasons discussed below and in the Browne Declaration, Lead Counsel respectfully submits that the requested fees and expenses are fair and reasonable.

## II.    ARGUMENT

### A.    The Appropriate Method For Awarding Attorneys' Fees Is Based on a Reasonable Percentage of the Recovery

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to compensation for their services, and that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993) (fees are awarded "to compensate successful attorneys" for the "benefits they have achieved . . . the risks . . . taken in prosecuting a long and complex case," and "the hours and expenses . . . invested in the case.").

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668

4

F.3d 1233, 1242 (11th Cir. 2011); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999).

### B.      The Requested Fee of 25% is Fair and Reasonable

Lead Counsel seeks a fee award of 25% of the Settlement Fund. The Eleventh Circuit has established 25% of the settlement as a "benchmark" and presumptively reasonable fee award in common fund cases. *See Faught*, 668 F.3d at 1243 ("25% is generally recognized as a reasonable fee award in common fund cases"); *Camden I*, 946 F.2d at 774-75 (district courts consider 25% as the "bench mark" percentage fee award in common fund cases); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *31 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part by* 999 F.3d 1247 (11th Cir. 2021) (same) (citing *Camden I*); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *1 (M.D. Fla. Oct. 5, 2017) (same) (citing *Camden I*).

A review of percentage fee awards approved by courts within this Circuit in complex, common fund cases involving comparable recoveries confirms that the 25% fee sought by Lead Counsel is fair, reasonable and, in fact, lower than attorney fee percentages awarded in many other cases. *Cf., e.g., Waters*, 190 F.3d at 1293-98 (affirming award of 33.3% of $40 million settlement); *City of Sunrise Gen. Emps.' Ret. Plan v. Fleetcor Techs. Inc.,* No. 1:17-cv-02207-LMM (N.D. Ga. Apr. 15, 2020), ECF No. 111 (awarding 25% of $50 million settlement); *Local 703, I.B. of T.*

5

*Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement); *Rayonier*, 2017 WL 4542852, at *3 (awarding 30% of $73 million settlement); *Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, at *92 (S.D. Fla. Mar. 18, 2013) (awarding 30% of $62 million settlement); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *8 (N.D. Ga. Oct. 26, 2016) (awarding one-third of $75 million settlement). In addition, the 25% fee request is consistent with fees awarded by courts in other circuits in similarly sized securities class action settlements.[3]

In sum, when judged against the Eleventh Circuit benchmark, and compared to fees awarded in similarly-sized class action settlements in this Circuit and elsewhere, the requested 25% fee is fair and reasonable.

---

[3] *See, e.g.*, *Klein v. Altria Grp., Inc.*, No. 3:20-cv-00075-DJN, at 10 (E.D. Va. Mar. 31, 2022) (ECF 320) (awarding 30% of $90 million settlement); *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, at 2 (D. Del. July 18, 2017), ECF No. 100 (awarding 25% of $74 million settlement); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 2012 WL 12903758, at *1 (D. Minn. Nov. 8, 2012) (awarding 25% of $85 million settlement); *Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538 (JPO) (MHD), at 6 (S.D.N.Y. Oct. 20, 2012), ECF No. 154 (awarding 28% of $79 million settlement); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of $80 million settlement); *In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.*, No. 07-cv-9633 (JSR)(DFE), at 6 (S.D.N.Y. Aug. 21, 2009), ECF No. 272 (awarding 25% of $75 million settlement).

**C.      Lead Plaintiff's Endorsement of the Requested Fee Supports Its Approval**

Lead Plaintiff is a sophisticated institutional investor that took an active role in the litigation and closely supervised Lead Counsel's work. *See* Ex. 1, ¶¶ 6-8. Lead Plaintiff has approved the requested fee as fair and reasonable in light of the work performed, the recovery obtained for the Class, and the risks undertaken by counsel. *Id.* ¶ 10. This supports approval of the fee request. *See In re Carter's, Inc. Sec. Litig.*, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Plaintiff's Counsel are duly earned and not excessive").

**D.      The Relevant Factors Confirm That the Requested Fee Is Fair and Reasonable**

In *Camden I*, the Eleventh Circuit discussed the factors for determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

7

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; [and] (12) awards in similar cases.

946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). A court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Id.* at 775.

Although the Eleventh Circuit has stated that analyzing such factors is necessary only if the fee request exceeds 25%, *see Faught*, 668 F.3d at 1242, these factors provide strong support for approval of a 25% fee award in this case.

### 1.    The Time and Labor Required

The time and diligent effort expended by Plaintiff's Counsel to achieve the Settlement supports the requested fee. The Settlement was achieved during the last week of fact discovery after extensive, highly contested litigation. Throughout the litigation, Lead Counsel committed extensive resources to developing Lead Plaintiff's claims and overcoming Defendants' challenges.

As discussed in greater detail in the Browne Declaration, Lead Counsel, among other things: (i) conducted a comprehensive investigation of the claims at issue in the Action (¶¶ 4, 12-13); (ii) drafted the detailed 193-page Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the

8

"Complaint") (¶¶ 12-14); (iii) successfully defeated Defendants' extensively briefed motion to dismiss (¶¶ 15-28); (iv) obtained Class certification following a contested class certification motion, which included the submission of competing expert reports (¶¶ 46-50); (v) undertook robust fact discovery efforts, including producing over 100,000 pages of documents from Lead Plaintiff in response to defendants' document requests, serving and responding to interrogatories, drafting and serving extensive discovery requests on Defendants and document subpoenas upon over twenty relevant nonparties, engaging in several meet-and-confers with Defendants and third parties regarding the scope of discovery, and reviewing and analyzing nearly 1 million pages of documents produced by Defendants and third parties (¶¶ 30-38); (vi) took or defended seventeen depositions of current and former Mohawk executives, Lead Plaintiff representatives, and experts regarding loss causation, damages, and market efficiency (¶¶ 39-41, 48); (vii) consulted extensively throughout the litigation with multiple experts on issues relating to loss causation, damages, market efficiency, accounting, and the flooring industry (¶¶ 42-45); (viii) engaged in extensive, arm's-length settlement negotiations, including an in-person, all-day mediation session, followed by months of negotiations facilitated by Judge Phillips (¶¶ 51-53); and (ix) drafted and negotiated the Stipulation and related settlement documentation (¶ 54).

9

Through April 21, 2023, Plaintiff's Counsel have expended nearly 28,000 hours of attorney and other professional support time prosecuting the Action. ¶ 112. Plaintiff's Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rate, is $14,605,911.00.[4] Thus, the time and labor expended by Plaintiff's Counsel amply support the requested fee (net of expenses) of approximately $14,819,00.

Indeed, while not required, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 25% award. *See, e.g.*, *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). Here, the lodestar multiplier—which is calculated by dividing the total requested fee award by Plaintiff's Counsel's total lodestar—is just 1.01.[5] In complex, contingent litigation like this, courts regularly award fees representing multiples above the lodestar to reflect the contingency-fee risk and other relevant factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at

---

[4] The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

[5] The actual realized multiplier will decline over time, as Lead Counsel will devote additional attorney time to preparing for the Settlement Hearing, overseeing the processing of Claims by the Claims Administrator, and overseeing the distribution of the Settlement proceeds to Class Members with valid Claims.

*26 (S.D.N.Y. Nov. 8, 2010) ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"). Given that courts commonly award multipliers between two and five in complex class actions with substantial contingency risks, the multiplier requested here confirms the requested fee's reasonableness. *See, e.g.*, *Equifax*, 2020 WL 256132, at *39 (awarding fee representing 2.62 multiplier as "consistent with multipliers approved in other cases"); *Columbus Drywall,* 2012 WL 12540344, at *5 & n.4 (multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (lodestar multipliers "in large and complicated class actions" range from 2.26 to 4.5) (citations omitted); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4).

### 2.    The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is 'notably difficult and notoriously uncertain.'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at * 3 (N.D. Ga. Nov. 9, 2011). This Action was no exception.

11

As further detailed in the Browne Declaration, Lead Plaintiff and their Counsel faced a number of substantial challenges to establishing liability and proving damages. Defendants contested their liability on falsity, materiality, and scienter grounds and raised numerous issues regarding loss causation and damages.

*First*, from the outset of the litigation, Lead Plaintiff faced substantial obstacles in proving that Defendants' alleged misrepresentations were actionable under the federal securities laws. At the motion to dismiss stage, Lead Counsel successfully overcame these obstacles through its robust investigation into the alleged fraud and the preparation of the detailed Amended Complaint. That investigation involved contacting more than 100 former Mohawk employees as potential witnesses, including more than a dozen whose accounts were cited in the Amended Complaint and the Court's motion to dismiss order. ¶¶ 13-14. However, despite Lead Counsel's success at the motion to dismiss stage, in the absence of the Settlement, Defendants would have raised similar arguments at later stages of the case, posing significant risks to the Class achieving any recovery.

For example, Defendants asserted, and would have continued to assert, that they never engaged in the alleged misconduct. With respect to the "Saturday Scheme" alleged in the Complaint, Defendants would have argued that they did not improperly recognize any revenues associated with undelivered products, and that

12

their financial results were approved by a well-qualified outside auditor. ¶ 69. Defendants also would have argued that, even crediting the "Saturday Scheme" allegations, the revenue allegedly mis-recognized was immaterial to Mohawk's overall financials or the price of its publicly-traded securities. *Id.*

Similarly, as to Lead Plaintiff's LVT-related allegations, Defendants would have continued to argue that they promptly and truthfully disclosed any technical issues with Mohawk's domestic LVT production during the Class Period. ¶ 70. Defendants also would have argued that Mohawk's domestic LVT sales made up only a small fraction of total Company-wide sales, and so any alleged misstatements concerning Mohawk's domestic LVT production were necessarily immaterial. *Id.* And Defendants would have continued to argue that Lead Plaintiff's allegations are undermined by the fact that the Company has never restated any financials. ¶ 70-71.

*Second*, Lead Plaintiff faced challenges in proving that Defendants made the alleged false statements with the requisite scienter. Among other things, Defendants would have argued that the facts that Defendant Lorberbaum was (and remains) Mohawk's largest shareholder and did not engage in any suspicious insider stock sales during the Class Period, and that Mohawk announced a $500 million stock repurchase program during the Class Period in October 2018, both undermine any inference that Defendants knew Mohawk's stock price was inflated by the alleged

13

fraud. ¶ 75. In addition, Defendants likely would have pointed to documents produced during discovery to contend that Defendant Lorberbaum and Mohawk senior leadership did not know of or condone any fraudulent schemes.

While Defendants were unsuccessful in making many of these arguments in their motion to dismiss, the Court was required to accept all allegations in the Complaint as true at that stage, and there was a significant possibility that Defendants could have successfully pressed these arguments later in the litigation, when Lead Plaintiff bore the burden of proof. On all these issues, Lead Plaintiff would have needed to prevail at several stages—on an anticipated motion for summary judgment, at trial, and if successful at trial, on the appeals that would likely follow—in order to secure a recovery for the Class.

*Finally*, even assuming that Lead Plaintiff overcame each of the above risks, it would have confronted considerable additional challenges in establishing loss causation and damages. Specifically, Defendants would have argued that any impacts on Mohawk's business or results attributable to Lead Plaintiff's allegations—*i.e.*, the "Saturday Scheme" and the Company's domestic LVT startup issues—were immaterial given the scale of Mohawk's revenues, and thus could not have impacted Mohawk's stock price on the dates of the alleged corrective disclosures. ¶ 81-82. Defendants also would have argued that any stock price

14

declines on the corrective disclosure dates were due, in whole or in part, to the disclosure of negative information unrelated to the alleged fraud, such as information concerning Mohawk's carpet and ceramic businesses and industry-wide factors such as raw material inflation. ¶ 83. These arguments posed significant risks that the Class would not be able to recover at all, or would only recover substantially reduced damages.

Thus, Lead Counsel faced multiple difficult and significant obstacles. However, notwithstanding these obstacles, Lead Counsel achieved an excellent result for the Class, strongly supporting the requested fee award.

### 3. The Skill, Experience, Reputation and Ability of the Attorneys

Courts also may consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

From the Action's inception, Lead Counsel engaged in extensive and skillful efforts to maximize the Class's recovery. This case required an in-depth investigation, a thorough understanding of complicated legal and factual issues, and the skill to respond to a host of legal and factual issues raised by Defendants. Lead

15

Counsel practices extensively in the highly challenging field of complex class action litigation and is one of the nation's leading securities class action litigation firms. *See* ¶ 113 and Ex. 4A-3. Lead Counsel's skills and experience were undoubtedly an important factor in obtaining the Settlement's excellent result.

The Court may also consider "the quality of the opposition" the plaintiff's attorneys faced. *See Columbus Drywall*, 2012 WL 12540344, at *4. Here, Mohawk was represented by Alston & Bird LLP and Defendant Lorberbaum was represented by Morvillo Abramowitz Grand Iason & Anello PC, both nationally prominent firms that vigorously contested the Action. ¶ 114. Lead Counsel's ability to obtain a favorable Settlement despite this formidable opposition confirms the quality of the representation that Lead Counsel provided.

Accordingly, this factor also supports the fee requested.

### 4.    The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—nearly 28,000 hours (¶ 112)—was time that Plaintiff's Counsel could not devote to other matters. Plaintiff's Counsel expended this time and effort without any assurance that they would be successful or would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee.

16

### 5.    The Customary and Contingent Nature of the Fee

The "customary" fee in a class action lawsuit of this nature is a contingency fee because few class members possess a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988).

In assessing requested fee awards in cases like this one, courts give substantial weight to the contingent nature of counsel's fees. *See In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[T]he contingent fee risk is an important factor in determining the fee award."). Courts have consistently recognized that the risk that class counsel could receive no recovery is a major factor in determining the award of attorneys' fees. *See Ressler*, 149 F.R.D. at 654-55 ("The substantial risks of this litigation abundantly justify the fee requested . . . ."). "A contingency fee arrangement often justifies an increase in the award of attorneys' fees," *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "because if the case is lost a lawyer realizes no return for investing time and money in the case." *Equifax*, 2020 WL 256132, at *33.

17

Success in contingent litigation is never assured. In many securities class actions, a complaint is dismissed after an extensive investigation and motion practice, with counsel receiving no compensation for those efforts. In other cases, plaintiffs' counsel have suffered major defeats and received no compensation at all after years of litigation and investing millions of dollars of time.[6] Even a victory at trial is not a guarantee of success.[7] As noted above, Lead Plaintiff's claims faced multiple hurdles that could have precluded or substantially limited any recovery. Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result, and that such a result would be realized, if at all, only after considerable and difficult effort.

### 6.    The Amount Involved and Results Achieved

"It is [also] well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alteration in original).

---

[6] *See*, *e.g.*, *In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865-EMC (N.D. Cal. Feb. 3, 2023), ECF No. 671 (loss at trial for plaintiffs in securities class action, in case where the plaintiffs had previously been granted summary judgment on elements of falsity and scienter).

[7] *See*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning estimated $42 million jury verdict for plaintiff class, and granting judgment as a matter of law to defendants).

Lead Counsel achieved an excellent result on behalf of the Class. The $60 million cash Settlement is the fifth largest securities class action recovery in Georgia's history, and returns to investors approximately 12% to 17% of the maximum potential realistic class-wide damages, aggressively assuming that investors prevailed on all of the alleged misstatements during the entire Class Period. This represents an excellent recovery for Class Members, especially given the genuine risk of no-or-lesser recovery and the typical recovery in securities class actions. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 14, 2016) (finding $24 million settlement, representing "5.5% of th[e] best-case scenario" was "an excellent recovery, returning more than triple the average settlement in cases of this size"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (settlement with recovery of "approximately 9% of the possible damages" was substantially higher than the average securities class action settlement and favored of a higher fee).

### 7.    The Undesirability of the Case

The "undesirability" of a case can further justify a requested fee where, as here, there are risks inherent in financing and prosecuting the litigation.

When Lead Counsel undertook this representation, Lead Plaintiff knew it would have to spend substantial time and money and would face significant risks

without any assurance of being compensation for their efforts. Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms. *See Thorpe,* 2016 WL 10518902, at \*11; *Ressler*, 149 F.R.D. at 655. Indeed, MissPERS filed the initial complaint in this Action and, unlike many similar securities class actions, where multiple investors vigorously compete to lead the litigation, MissPERS's Lead Plaintiff motion was unopposed, likely reflecting that other investors and their counsel perceived the case as having risky and uncertain prospects. Indeed, the opt-out plaintiffs filed their complaints—largely tracking Lead Counsel's class action complaint, some portions nearly verbatim—only after Lead Counsel filed their complaint and detailed the product of its extensive investigation. Thus, the undesirability of the case supports the requested fee here.

### 8.      Awards in Similar Cases

As discussed in Section II.B., above, Lead Counsel's requested 25% fee is consistent with the presumptively fair and reasonable 25% benchmark applied to class action cases in this Circuit. *See Faught*, 668 F.3d at 1242; *Camden I*, 946 F.2d at 774-75. Thus, this factor supports the reasonableness of the requested fee.

20

### 9.      The Time Required to Reach Settlement

This was not a case where the Parties reached an early settlement. To the contrary, the Settlement was achieved only after Plaintiff Counsel's intensive, almost three-year prosecution of this Action—including vigorously opposing Defendants' motion to dismiss, conducting significant discovery, achieving certification of the Class, and engaging in substantial mediation and settlement efforts. ¶¶ 15-27, 30-41, 46-49, 51-54. The significant time expended on the prosecution and settlement of the case further supports the requested fee award.

### 10.      The Reaction of the Class

Through April 25, 2023, 221,509 copies of the Notice have been mailed to potential Class Members and their nominees, and the Summary Notice was published in the *Wall Street Journal* and over the *PR Newswire*. *See* Declaration of Luiggy Segura submitted by the Court-approved Claims Administrator, JND Legal Administration (Ex. 3), at ¶¶ 11, 14. The Notice advised Class Members that Lead Counsel would apply for fees of up to 25% of the Settlement Fund. While the deadline for filing objections is not until May 10, 2023, to date, no objections to the requested fee have been received. ¶ 18.[8]

---

[8] Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed on or before May 24, 2023.

**E.    Lead Counsel's Request for Reimbursement of Litigation Expenses is Fair and Reasonable**

Lead Counsel also requests payment of $691,551.66 for expenses incurred in prosecuting the Action. It is well-established that "class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 13353222, at *4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.'").

The expenses for which Lead Counsel seeks approval are those necessarily incurred in litigation and routinely charged to clients that are billed hourly. These expenses include costs for experts, on-line research, mediation fees, electronic document database costs, court fees, telephone, photocopying, and out-of-town travel. ¶¶ 124-128. These expense items were charged separately by Plaintiff's Counsel, and such charges were not duplicated in the firms' hourly rates.

The Notice informed potential Class Members that Lead Counsel would apply for payment of Litigation Expenses not to exceed $1,000,000. *See* Notice ¶¶ 5, 57. The total Litigation Expenses requested by Lead Counsel is $724,001.66, which includes $691,551.66 for expenses incurred by Plaintiff's Counsel and $32,450.00 for costs incurred by Lead Plaintiff in its representation of the Class, an amount

22

substantially below the figure listed in the Notice. To date, there has been no objection to the request for expenses.

Because Plaintiff's Counsel's expenses are of the type for which payment is routinely ordered in common fund cases and were essential to the successful prosecution and resolution, the Court should approve the requested expenses. *See Equifax*, 2020 WL 256132, at \*40 (awarding expenses for "court reporter fees; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures" and finding such expenses "are reasonable and were necessarily incurred on behalf of the class").

**F.    Lead Plaintiff's Request for Payment of Costs Directly Related to Its Representation of the Class Is Fair and Reasonable**

In connection with its request for payment of Litigation Expenses, Lead Counsel also seeks payment for the costs and expenses incurred directly by MissPERS in its representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, MissPERS seeks an award of $32,450.00 for the time dedicated by Tricia Beale, Special Assistant Attorney General in the Office of the Attorney

23

General of the State of Mississippi (the "OAG"), legal counsel to MissPERS, and others at the OAG and MissPERS, in supervising and participating in the Action. *See* Ex. 1, ¶¶ 11-13. MissPERS took an active role in the litigation, including, among other things: reviewing pleadings and motion papers; searching for and gathering documents for production; preparing and sitting for depositions; consulting with Lead Counsel regarding the action's prosecution and settlement negotiations; and evaluating and approving the Settlement. *Id.* ¶¶ 6-8.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657 to lead plaintiffs); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *2 (M.D. Ga. Dec. 11, 2019) (awarding plaintiffs $10,000 each); *In re Synovus Fin. Corp.*, 2014 WL 12756149, at *1 (N.D. Ga. Nov. 18, 2014) (awarding a total of $15,200 to two institutional lead plaintiffs).

The requested award sought by Lead Plaintiff is reasonable under the PSLRA based on the excellent result generated through its supervision and involvement in

24

the Action, and should be granted.[9]

## III.    CONCLUSION

For the reasons discussed above and in the Browne Declaration, Lead Counsel respectfully request that the Court: (i) award attorneys' fees to Plaintiff's Counsel in the amount of 25% of the Settlement Fund, net of Court-approved expenses; (ii) award $691,551.66 in payment of expenses incurred by Plaintiff's Counsel; and (iii) award $32,450.00 as payment for costs incurred by Lead Plaintiff directly relating to its representation of the Class.

Dated: April 26, 2023                      Respectfully submitted,

                                           */s/ John C. Browne*
                                           John C. Browne (admitted *pro hac vice*)
                                           **BERNSTEIN LITOWITZ BERGER &
                                           GROSSMANN LLP**
                                           1251 Avenue of the Americas
                                           New York, NY  10020

---

[9] A PSLRA award to Lead Plaintiff is appropriate notwithstanding the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244 (11th Cir. Sept. 17, 2020) because the requested award is expressly authorized by statute under the PSLRA, as opposed to a common-law based *incentive award* prohibited under *Johnson.* Indeed, after *Johnson,* courts in the Eleventh Circuit have continued to grant reimbursement to class representatives for their time under the PSLRA. *See Maz Partners LP v. First Choice Healthcare Solutions, Inc.,* Case No. 6:19-cv-00619-PGB-LRH (M.D. Fla. Aug. 2, 2021), ECF No. 81 (granting PSLRA award post-*Johnson*); *Steinberg v. OPKO, Health, Inc.,* Case No. 1:18-cv-23786-MARTINEZ-OTAZO-REYES (S.D. Fla. Apr. 29, 2021), ECF No. 131 (same); *Keippel v. Health Insurance Innovations, Inc.,* Case No. 8:19-CV-00421-WFJ-CPT (M.D. Fla. Mar. 23, 2021), ECF No. 112 (same); *Pritchard v. Apyx Medical Corp.,* Case No. 8:19-cv-00919-SCB-AEP (M.D. Fla. Nov. 18, 2020), ECF No. 76 (same).

Tel: (212) 554-1400
Fax: (212) 554-1444
JohnB@blbglaw.com

-and-

Jonathan D. Uslaner (admitted *pro hac vice*)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA  90067
Tel: (310) 819-3472
JonathanU@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class*

H. Lamar Mixson
Georgia Bar No. 514012
Amanda Kay Seals
Georgia Bar No. 502720
**BONDURANT MIXSON & ELMORE, LLP**
1201 West Peachtree Street NW,
Suite 3900
Atlanta, GA  30309
Tel: (404) 881-4100
Fax: (404) 881-4111
mixson@bmelaw.com
seals@bmelaw.com

*Liaison Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi and the Class*

John L. Davidson (admitted *pro hac vice*)
**DAVIDSON BOWIE, PLLC**
1062 Highland Colony Parkway
200 Concourse, Suite 275
Ridgeland, MS  39157
Tel: (601) 932-0028

26

jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

27

## <u>RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel certifies that this document has been prepared with 14 point Times New Roman, one of the font and point selections approved by the Court in Local Rule 5.1(C).

                                        */s/ John C. Browne*
                                        John C. Browne